IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Shirley Williams,

        **Plaintiff,**

v.                              Case No. 03-2200-JWL

Sprint/United Management Company,

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated asserting that her age was a determining factor in defendant's decision to terminate her employment during a reduction-in-force (RIF). This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and the parties are presently engaged in discovery concerning the merits of plaintiff's pattern and practice allegations.

This matter is presently before the court on defendant's motion to set aside and/or modify and objections to the magistrate judge's June 22, 2005 order requiring Sprint to produce to plaintiff the following categories of documents: (a) candidate selection worksheets and spreadsheets; (b) realignment selection worksheets and spreadsheets; (c) all other worksheets and spreadsheets regarding or relating to the RIF; (d) human resources (HR) notes, minutes and agendas regarding the RIF; (e) all other HR notes or documents regarding RIF decisions; (f) all e-mails transmitting spreadsheets; (g) all e-mails about RIF decisions; (h) all e-mails transmitting RIF instructions or guidelines; (i) all RIF instructions or guidelines; (j) all e-mails transmitting

or discussing RIF timetables or updates; (k) all summary documents regarding RIF reduction numbers by divisions, department or other organizational nature; (l) all documents regarding or relating in any way to the reason defendant made the decision to do a RIF; (m) all documents received by defendant in 2001, 2002 and/or 2003 from any financial consultant, investment banker, or investment service recommending a RIF; (n) all documents regarding or relating in any way to any alternatives considered other than a RIF; (o) all documents regarding or relating in any way to discussions, determinations, and/or decisions regarding the number of employees to RIF and/or amount/percentage of budget to be cut; (p) all before, during and after RIF organizational charts; (q) all documents prepared by or on behalf of defendant for any management (executives, presidents, vice presidents, directors and/or managers) in connection with the RIF during 2001, 2002 and/or 2003; (r) all documents prepared by or on behalf of defendant for any management (executives, presidents, vice presidents, directors and/or managers) describing any selection criteria for termination of employees in connection with the RIF during 2001, 2002 and/or 2003; (s) all documents prepared by or on behalf of defendant for any management (executives, presidents, vice presidents, directors and/or managers) and/or reviewed by any management which refer or relate in any way to positions eliminated or to be eliminated during 2001, 2002 and/or 2003; (t) all documents and/or computerized databases containing data used in any fashion in connection with the RIF in 2001, 2002 and/or 2003; (u) all documents relating to any computerized record-keeping and/or report writing program for information concerning the RIF in 2001, 2002 and/or 2003.

Defendant objects to each of the twenty-one categories of documents that it has been

ordered to produce. As set forth in more detail below, defendant's motion is granted in part and denied in part.

*Applicable Standard*

Magistrate judges may issue orders as to non-dispositive pretrial matters and district courts review such orders under a "clearly erroneous or contrary to law" standard of review. *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard applies to factual findings, *see* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069, at 355 (2d ed.1997) (and cases cited therein), and requires that the district court affirm unless it is left with the "definite and firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The standard of review applicable to defendant's motion here, however, is somewhat modified for two reasons. First, the court, at a hearing on April 26, 2005, made various rulings concerning the concept of "individualized" or "plaintiff-specific" discovery and advised the parties that any subsequent disputes concerning rulings made at that hearing would be heard by the court as opposed to the magistrate judge. Defendant's objections concerning these issues, then, have not been presented to the magistrate judge in the first instance and the court reviews those objections de novo. Second, the magistrate judge's ruling that is memorialized in the June 22, 2005 written order was initially made orally on June 16, 2005 in an expedited fashion whereby defendant did

not have the opportunity to advance several of the objections that are advanced here.[1] Those objections, then, are also reviewed de novo by the court.

*The April 26, 2005 Hearing*

Defendant's primary objection to the magistrate judge's order of June 22, 2005 is that many of the discovery requests reflected in the order "exceed the parameters of discovery" established by the court during a motion hearing and status conference held on April 26, 2005. By way of background, the court held a motion hearing on April 26, 2005 with respect to a motion to review an order entered by the magistrate judge in which he denied plaintiff's motion to compel defendant's responses to several sets of requests for production of documents propounded by individual plaintiffs. The magistrate judge denied the motion based on his belief that this court had previously held that any "individualized" discovery (or discovery of information specific to individual plaintiffs) would not be permitted at this stage of the litigation. As the court clarified at the April 26, 2005 hearing, however, some plaintiff-specific information is relevant and discoverable for purposes of plaintiff's pattern and practice claim. By way of example, the court and the parties discussed at the hearing (in the context of opt-in plaintiff Ken Cromley's discovery requests) that various requests concerning younger employees who were retained or transferred

---

[1]The court is in no way criticizing the magistrate judge for his expedited review of plaintiff's discovery requests. Indeed, as the court and the parties agree, an expedited process for the resolution of discovery disputes in this case–a case that has approximately 1700 opt-in plaintiffs and is highly document intensive–is critical to keeping this case moving toward an ultimate resolution.

compared to an individual plaintiff; requests concerning positions for which the individual plaintiff had applied; and information concerning the individual plaintiff's alpha review, or performance rating, would be appropriate categories of information for discovery at this stage (subject to any objections defendant might assert other than "plaintiff-specific discovery is not relevant at this stage of the litigation").

That being said, however, the court expressly rejected plaintiff's proposal to seek that type of information for 200 individual plaintiffs, as that number was arbitrarily selected by plaintiff. Rather, the court limited plaintiff to propounding such requests on behalf of 20 individual plaintiffs and advised plaintiff that she would have to provide an affidavit from an expert indicating the necessity to gather additional information in order to offer a reliable opinion or otherwise perform an appropriate analysis to support a request for plaintiff-specific discovery on a greater number of individual plaintiffs (unless plaintiff could obtain defendant's agreement as to some number higher than 20). At the conclusion of the hearing, then, plaintiff received the green light to propound plaintiff-specific discovery requests on behalf of 20 individual plaintiffs of her choosing with the understanding that she would need to seek permission from the court, based on defendant's agreement or otherwise supported by expert testimony, before she sought plaintiff-specific discovery on a larger number of individual plaintiffs. Thus, while the court concluded that plaintiff-specific discovery was not, by definition, foreclosed at this stage of the litigation, it limited such discovery, in the absence of further evidence from plaintiff or agreement of the parties, to 20 individual plaintiffs. To date, plaintiff has not sought permission from the court to expand her plaintiff-specific discovery efforts beyond 20 individual plaintiffs.

5

With that framework in mind, the court turns to the specific categories of information that the magistrate judge ordered defendant to produce and that defendant contends exceed the parameters of discovery established by the court on April 26, 2005. Subparagraph (c) of the order requires defendant to produce "all other worksheets/spreadsheets regarding or relating to the RIF." Defendant asserts that plaintiff's counsel has advised that this request includes documents regarding individual termination decisions on all employees terminated in the RIF (or series of RIFs) at issue in this case. According to defendant, then, the request, as clarified by plaintiff's counsel in discussions with defense counsel, exceeds the parameters of discovery established by the court at the April 26, 2005 hearing.[2] In her response, plaintiff suggests that this request does not seek any discovery which could be considered "individual" discovery. Indeed, the request, on its face, suggests that plaintiff is only seeking those worksheets or spreadsheets relating to the overall RIF itself including, for example, the decision to conduct the RIF (or series of RIFs) at issue in this case and/or the implementation of the RIF itself, including the total number of individuals targeted for termination in the RIF and whether certain positions (as opposed to

---

[2]Defendant also objects to this request on the grounds that it is overly broad because it lacks temporal limitations. This objection is overruled. While the request does not contain an express temporal limitation, a limitation is inherent in the nature of the request. The request is expressly limited to "the RIF" which can only mean the RIF or series of RIFs at issue in this case, a RIF that was implemented beginning in October 2001 and ending in March 2003. Presumably, then, documents responsive to the request would date back to the time period leading up to October 2001 (to the extent responsive worksheets or spreadsheets were generated in preparation for the first wave of layoffs) and just beyond March 2003 (to the extent responsive worksheets or spreadsheets were generated after the last wave of layoffs). Defendant asserts this same objection to many of the requests set forth in the June 22, 2005 order and each of those "temporal limitation" objections are overruled.

6

individuals) were specifically targeted for elimination in the RIF. To that extent, defendant's objection is overruled and it is required to produce the information. To the extent, however, that plaintiff does seek to discover worksheets and spreadsheets that might reflect information about individual termination decisions or other information that relates not to the overall RIF but to specific plaintiffs, the objection is sustained as that request would clearly exceed the scope of discovery described at the April 26, 2005 hearing and defendant is not required to produce that information.

In subparagraph (d), defendant is required to produce "HR notes, minutes, agendas regarding the RIF." Defendant objects on the grounds that the request could be interpreted to include HR notes regarding "each individual RIF decision" and, to that extent, the request exceeds the scope of discovery contemplated by the court on April 26, 2005. In her response, plaintiff clarifies that she is, in fact, seeking HR notes, minutes and agendas regarding "each RIF decision" and she urges that such information is discoverable. To the extent plaintiff is suggesting that she is entitled to discover HR notes, minutes and agendas that relate to the individual termination decisions of any of the 14,700 employees terminated in the RIF, the court disagrees. Such discovery would reach far beyond the limits of discovery authorized by the court at the April 26, 2005 hearing. More importantly, the request would defeat the purpose of having a collective action and is entirely inconsistent–at least at this phase–with a pattern and practice case. As the Tenth Circuit explained in *Thiessen*, the "initial focus in a pattern-or-practice case is not on individual employment decisions, 'but on a pattern of discriminatory decisionmaking.'" *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1006 (10th Cir. 2001) (quoting *Cooper v. Fed. Reserve Bank of*

*Richmond*, 467 U.S. 867, 876 (1984)). Plaintiff has not alleged that discovery of all HR materials concerning 14,700 individual termination decisions is necessary to enable her to establish a pattern and practice of discrimination. *See Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request).

Thus, defendant's objection to subparagraph (d) is sustained to the extent plaintiff is seeking HR notes, agendas and minutes regarding individual termination decisions and defendant is not required to produce documents responsive to that request. However, defendant is required to produce HR notes, minutes and agendas relating to the overall RIF itself including, for example, the overarching decision to conduct the RIF (or series of RIFs) at issue in this case, the total number of individuals targeted for termination in the RIF, whether certain positions (as opposed to individuals) were specifically targeted for elimination in the RIF, general guidelines concerning the implementation of the RIF and the consideration of any selection criteria for the RIF.

Subparagraphs (e) and (g) of the June 22, 2005 order require defendant to produce "all other HR notes or documents regarding RIF decisions" and "all e-mails about RIF decisions." According to defendant, the express reference to "RIF decisions" suggests that plaintiff is seeking the production of any e-mail (drafted by any Sprint employee) or any HR document concerning any of the nearly 14,700 separate RIF-related termination decisions that occurred during the relevant time frame. While plaintiff states in her response that she is not seeking plaintiff-specific discovery but only "basic RIF documents related to the core pattern and practice issues in this

case," and while her counsel emphasized at the hearing before Judge Waxse that her request for "e-mails about RIF decisions" was not intended to seek documents about individual decisions but only "documents about the RIF," the requests on their face are as broad as defendant suggests. In fact, the requests are even broader than defendant suggests as the requests would include not only documents regarding 14,700 termination decisions, but also documents regarding thousands and thousands of retention decisions.

The court agrees with defendant that these requests, to the extent that they would include all e-mails and all HR notes or documents regarding the individual termination decisions of any of the 14,700 employees terminated in the RIF, reach far beyond the limits of discovery authorized by the court at the April 26, 2005 hearing. Moreover, as explained above, the requests defeat the purpose of having a collective action and are inconsistent with the phased framework of a pattern and practice case. Plaintiff has not alleged that the nature and volume of the information requested in subparagraphs (e) and (g) are necessary to enable her to establish a pattern and practice of discrimination. In fact, as explained above, her response and her counsel's argument at the hearing before Judge Waxse suggest that the requests do not even seek information about individual decisions.

Thus, defendant's objections to subparagraphs (e) and (g) are sustained and defendant is not required to respond to the requests. Plaintiff may resubmit to defendant revised requests that are narrowly tailored to those items that she actually intends to discover. Those requests would presumably be limited to notes or documents drafted by defendant's HR employees or e-mails drafted by any Sprint employee concerning, for example, the overarching decision to conduct the

9

RIF (or series of RIFs) at issue in this case, the total number of individuals targeted for termination in the RIF, whether certain positions (as opposed to individuals) were specifically targeted for elimination in the RIF, general guidelines concerning the implementation of the RIF and the consideration of any selection criteria for the RIF.

In subparagraphs (h) and (i) of the June 22, 2005 order, defendant is required to produce "all e-mails transmitting RIF instructions or guidelines" and "all RIF instructions or guidelines." According to defendant, plaintiff's counsel has advised defendant that the requests were intended to include not only global instructions or guidelines to management but also any instructions or guidance of any kind to management regarding individual RIF-related decisions. Defendant asserts, then, that the requests exceed the parameters of discovery established by the court at the April 26, 2005 hearing. While it is not entirely clear from her response, plaintiff suggests that, in fact, she is only seeking global, overarching instructions and guidelines relating to the RIF and not instructions or guidance relating to individual termination decisions. A plain reading of the requests reflects that plaintiff is seeking global instructions or guidelines regarding implementation of the RIF. To that extent, defendant's objection is overruled and it is required to produce the information. To the extent the requests seek to discover instructions or guidance about individual termination decisions, retention decisions or anything other than "global" issues, the objection is sustained as those requests would clearly exceed the scope of discovery described at the April 26, 2005 hearing and defendant is not required to produce that information.

Subparagraph (j) of the June 22, 2005 order requires defendant to produce "all e-mails transmitting or discussing RIF timetables or updates." Defendant objects to the request because,

10

as written, it encompasses all e-mail communications relating to the timing of individual separations as well as updates concerning individual separations. Plaintiff's response does not clarify the nature of the documents sought by the request. To the extent the request seeks e-mails transmitting or discussing timetables or updates about the overall RIF, defendant's objection is overruled and it is required to produce any responsive documents. To the extent the request seeks e-mails transmitting or discussing timetables or updates about any individual termination decisions or retention decisions, the objection is sustained as that request would clearly exceed the scope of discovery described at the April 26, 2005 hearing.

Subparagraph (p) of the June 22, 2005 order requires defendant to produce "all before, during, and after RIF organizational charts." While defendant does not object to producing charts demonstrating corporate structure "before, during and after" RIF events (aside from its objection that the request is duplicative of an earlier request, an objection which the court overrules below), defendant does object to producing charts identifying individual employees as that request would reach beyond the scope of discovery authorized by the court on April 26, 2005. Significantly, defendant does not contend that providing organizational charts identifying individual employees, to the extent such charts exist, would be unduly burdensome. The court does not believe that this request, even to the extent it seeks organizational charts identifying individual employees within various organizational units before, during and after the RIF, exceeds the parameters of discovery authorized by the court in April. Presumably, "organizational charts" would not reflect the reasons underlying 14,700 individual termination decisions or the reasons underlying defendant's retention decisions but would reflect only the bigger picture of which employees were retained, which

11

employees were transferred and which employees were terminated in the RIF. To the extent such charts exist, then, they would not constitute "plaintiff-specific" information. Defendant's objection is overruled.

Subparagraphs (q), (r) and (s) of the June 22, 2005 order require defendant to produce all documents prepared by or on behalf of defendant for any management in connection with the RIF during 2001, 2002 and/or 2003 including documents describing any selection criteria for termination of employees and documents relating to positions eliminated or scheduled to be eliminated during 2001, 2002 and/or 2003. Defendant asserts that these requests exceed the boundaries of permissible discovery at this stage of the litigation. To the extent the requests seek documents relating to general selection criteria and positions scheduled for elimination, the objection is overruled as such discovery is simply not the type of "plaintiff-specific" discovery limited by the court at the April 26, 2005 hearing. However, plaintiff's broader request for "all documents prepared by or on behalf of defendant for any management in connection with the RIF" could be construed to include documents relating not only to the overall RIF but also to individual termination decisions or specific employees or plaintiffs. To the extent the request seeks such information, defendant's objection is sustained as that request would clearly exceed the scope of discovery described at the April 26, 2005 hearing and defendant is not required to produce that information. The objection is overruled to the extent the request is limited to documents concerning the overall decision to conduct the RIF (or series of RIFs) at issue in this case and/or the implementation of the RIF itself, including the total number of individuals targeted for termination in the RIF, whether certain positions (as opposed to individuals) were specifically

targeted for elimination in the RIF, general guidelines concerning the implementation of the RIF and the consideration of any selection criteria for the RIF.

Finally, in subparagraph (t) of the June 22, 2005 order, the magistrate judge orders defendant to produce "all documents and/or computerized databases containing data used in any fashion in connection with the RIF in 2001, 2002 and/or 2003." Defendant asserts that the request exceeds the bounds of discovery established at the April 26, 2005 hearing because it seeks "entire databases." As explained above, the April hearing addressed only "individualized" discovery or discovery of information specific to individual plaintiffs. Defendant does not suggest that the databases requested by plaintiff would reveal information specific to individual plaintiffs (*e.g.*, information about the reasons for individual termination decisions). The mere fact that the databases might identify various employees by name (and defendant does not even suggest that they do) does not render the information contained in the databases "plaintiff-specific." Defendant's objection, then, is overruled.

*The Waiver Issue*

Defendant next objects to the magistrate judge's order on the grounds that several of plaintiff's requests (*i.e.*, the requests identified in subparagraphs (m), (p), (q), (r), (s), (t) and (u) of the order) are identical to requests appearing in plaintiff's First Request for Production of Documents filed in September 2003. While defendant objected to these requests in November 2003, plaintiff did not timely compel production of the documents and did not timely contest defendant's objections to the requests. Indeed, this court, on February 6, 2004, denied plaintiff's

13

motion to compel production relating to her First Request for Production of Documents on the grounds that the motion was untimely under the local rules of this court. According to defendant, then, plaintiff has waived her right to contest Sprint's objections to these requests.

Plaintiff readily concedes that these requests mirror identical requests made in September 2003 and she further concedes that she did not act timely in response to the objections asserted by defendant in November 2003. According to plaintiff, she is not precluded from propounding these discovery requests at this phase of the litigation, a phase where the case has now been certified and the parties are preparing for a trial on plaintiff's pattern-and-practice allegations, when her September 2003 discovery and defendant's objections thereto occurred in the first stage of this litigation–prior to certification as a collective action. Judge Waxse agreed with plaintiff and rejected defendant's waiver argument at the June 16, 2005 hearing. As explained by Judge Waxse:

> I guess I'm not convinced that we ought to resolve this based on how it was dealt with in the past. My goal is to get the information that's discoverable in a cost efficient and timely manner. And so it appears to me that even though you've pointed out plenty of reasons why this should have been done a long time ago, the more important question is: Is there any reason it shouldn't be done now other than time?

Transcript of June 16, 2005 Hearing at 35.

Defendant has not shown that Judge Waxse's conclusion is clearly erroneous or contrary to law. In fact, this court, in denying plaintiff's motion to compel as untimely in February 2004, specifically contemplated that plaintiff would be entitled to propound the same discovery requests in the pattern-and-practice phase of the litigation. In concluding that plaintiff was not prejudiced

14

by the court's denial of her motion to compel, the court advised the parties that if the case was ultimately certified as a collective action, then "the kind of information that I think the plaintiff sought here, this is well within the scope of information that you ought to receive here," and that "the issues that are addressed in that discovery are subject to being revisited at a later date." *See* Transcript of Feb. 6, 2004 Hearing at 6-7, 28.  Plaintiff's approach with respect to these particular requests and Judge Waxse's handling of the waiver issue are both entirely consistent with what was contemplated by the court back in February 2004.  Defendant's objection is overruled.

*Requests About Which No Real Dispute Exists*

A review of the parties' briefs reveals that no real dispute exists about several of the requests made by plaintiff.  For example, subparagraphs (a) and (b) of Judge Waxse's June 22, 2005 order direct defendant to produce candidate selection worksheets/spreadsheets and realignment selection worksheets/spreadsheets.  In its motion, defendant asserts that it has "fully responded" to previous, similar requests from plaintiff and that no further response should be required.  The previous requests, however, were limited to candidate selection worksheets containing the job position and/or name of any of the opt-in plaintiffs.  The request set forth in Judge Waxse's order is not limited to opt-in plaintiffs but seeks candidate selection and realignment worksheets including the names of all individuals impacted by the RIF (or series of RIFs extending from October 2001 through March 2003) at issue in this case.  While defendant notes that it has already produced "RIF-related due diligence spreadsheets prepared by Sprint's HR organization" and that these documents are responsive to the requests set forth in Judge Waxse's

15

order, the requests are not limited to "due diligence" spreadsheets and are not limited to documents prepared by defendant's human resources organization. It is unclear, then, whether defendant has in its possession other documents that are responsive to the requests or whether defendant is asserting that the documents already produced are the only responsive documents in its possession. Thus, Sprint must produce any additional documents responsive to these requests within 30 days of the date of this order and, at the same time, must certify to plaintiff that all documents in its possession responsive to these requests have been produced and that no additional responsive documents exist in its possession.[3]

With respect to the request identified in subparagraph (m) of Judge Waxse's order (all documents received by defendant in 2001, 2002 and/or 2003 from any financial consultant, investment banker, or investment service recommending a RIF), defendant asserts that no responsive documents exist. Defendant, then, must certify under oath to plaintiff within 30 days of the date of this order that it does not have documents in its possession responsive to this request. With respect to the request identified in subparagraph (f) of Judge Waxse's order (all e-mails transmitting spreadsheets), defendant asserts that the request is overly broad, vague and ambiguous because the request, on its face, seeks any e-mail created by any Sprint employee attaching spreadsheets of any nature at any time. Defendant, however, presumes (correctly, as confirmed by plaintiff) that plaintiff is seeking e-mails transmitting spreadsheets relating to the RIF at issue in this case and, to that end, has agreed to produce and, apparently, is in the process

---

[3]Significantly, defendant does not contend that the requests set forth in subparagraphs (a) and (b) are unduly burdensome.

of producing, e-mails transmitting spreadsheets relating to the RIF at issue in this case. Thus, defendant need only certify under oath to plaintiff within 30 days of the date of this order that all documents responsive to the request, as narrowed by the parties' agreement, have been produced.

The requests identified in subparagraphs (l), (n) and (o) of Judge Waxse's order seek documents relating to the reason defendant made the decision to do a RIF; any other alternatives considered other than a RIF; and discussions, determinations and/or decisions regarding the number of employees to RIF and/or the amount/percentage of budget to cut. Defendant asserts that these requests are vague, ambiguous and overly broad because it is unclear whether plaintiff seeks documents concerning the rationale for individual RIF decisions and "RIFs within small organizations" as opposed to "RIFs including significant numbers of individuals." A plain reading of the requests, however, indicates that the requests do not seek plaintiff-specific information and do not seek information relating to individual RIF decisions (*i.e.*, decisions regarding which employees would be retained and which employees would be terminated and the reasons underlying those decisions). Rather, the requests seek documents relating to the overarching decision to conduct the RIF at issue in this case in which Sprint terminated the employment of nearly 15,000 employees. To that extent, defendant asserts that it has "produced communications and other documents" related to such requests. It is unclear, however, whether Sprint has produced all responsive documents in its possession. Thus, Sprint must produce any additional documents responsive to these requests within 30 days of the date of this order and, at the same time, must certify to plaintiff that all documents in its possession responsive to these requests have been produced and that no additional responsive documents exist in its possession.

*Remaining Requests and Objections Thereto*

In subparagraph (k) of Judge Waxse's June 22, 2005 order, he directs defendant to produce "all summary documents regarding RIF reduction numbers by divisions, department or other organizational nature. These are documents that break down the RIF decisions and the areas affected, as well as the headcount of employees and contractors." Defendant objects to this request on the grounds that it is vague, ambiguous and has no temporal scope. The court readily overrules defendant's temporal scope objection for the reasons set forth above in footnote 2 of this order.

With respect to defendant's assertion that the request is vague and ambiguous, the court disagrees and finds the objection disingenuous. According to defendant, it is unclear whether plaintiff seeks "any document regarding employee and contractor headcount, any documents regarding RIFs, and/or any documents that specifically include information about employee and contractor headcount and RIFs." On its face, the request clearly does not seek any and all documents regarding employee and contractor headcount. It seeks all "summary" documents that reflect the headcount of employees and contractors by division, department or other organizational unit after the execution of the RIF at issue in this case (the RIF that was implemented beginning in October 2001, ending in March 2003 and affecting nearly 15,000 employees). Similarly, the request obviously does not seek any and all documents regarding RIFs. Again, it seeks "summary" documents reflecting by division, department or other organizational nature the numbers of individuals affected by the particular RIF (or series of RIFs) at issue in this case from October 2001 through March 2003.

Defendant also contends that it is unclear whether plaintiff seeks documents which include information about decisionmakers, departments or other organizational structure. This assertion is meritless. A plain reading of the request does not call for any information concerning decisionmakers. It seeks information concerning organizational structure and department only to the extent summary documents exist which break down by department or some other organizational unit the numbers of individuals affected by the RIF at issue in this case. Defendant, then, shall produce the information requested in subparagraph (k).

Subparagraph (u) of the June 22, 2005 order requires defendant to produce "all documents relating to any computerized record-keeping and/or report writing program for information concerning the RIF in 2001, 2002 and/or 2003." Defendant objects to this request on the grounds that it "'lacks particularity" and is overly broad.[4] Defendant, however, fails to explain how the request is overly broad and any alleged overbreadth is not apparent on the face of the request. The court, then, must overrule the objection. *See Williams v. Sprint/United Management Co.*, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005) (a party resisting discovery on the grounds that the request is overly broad is not entitled to prevail on its objection unless that party demonstrates specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is overly broad); *Stoldt v. Centurion Indus., Inc.*, 2005 WL 375667, at *2 (D. Kan. Feb. 3, 2005) (unless a discovery request is overly broad on its face, the party resisting discovery

---

[4]Defendant's only other objection to subparagraph (u) is that plaintiff waived her right to contest defendant's objections by failing to compel a response to this request when it was first propounded back in September 2003. The court, however, has already rejected defendant's waiver argument.

has the burden to support its overbreadth objection).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to set aside and/or modify and objections to the magistrate judge's June 22, 2005 order (doc. 3016) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant, to the extent its objections have been overruled in this order, shall produce documents responsive to the requests within 30 days of the date of this order. If defendant cannot in good faith meet this deadline for production, it shall notify the court within 14 days of the date of this order that it anticipates needing additional time to fulfill its discovery obligations, when it anticipates it will be able to fulfill its obligations, and the reasons that the obligations cannot be met within the 30-day time frame.

**IT IS SO ORDERED.**

Dated this 12th day of August, 2005, at Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge