## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHIRLEY WILLIAMS, et al.,

        Plaintiffs,

v.                            Case No.  03-2200-JWL-DJW

SPRINT/UNITED MANAGEMENT CO.,

        Defendant.

### MEMORANDUM AND ORDER

At the September 1, 2005 status conference, Plaintiffs submitted for the Court's review a document entitled "List of Documents Withheld by Defendant Despite No Involvement of Legal Department or Counsel" (the "List")[1].  In this document, Plaintiffs request the Court compel Defendant to produce the referenced documents.  In support of this request, Plaintiffs assert Defendant fails in its privilege log to establish the elements required to invoke the attorney-client privilege or the work product doctrine for the referenced documents.

During the conference, the Court ultimately construed the "List" as a Motion to  Compel (doc. 3203) and ordered Defendant to explain the basis for its objections to producing the documents at issue.[2]  The parties subsequently briefed the issues[3] and, upon careful review of the pleadings and evidence submitted by counsel, as well as the applicable law, the Court is now ready to rule.  For the reasons set forth below, Plaintiffs' motion will be granted in part and denied in part.

---

[1]The List is attached as Exhibit 1 to the September 6, 2005 Court Order (doc. 3203).

[2]*See* September 6, 2005 Court Order at ¶6 (doc. 3203).

[3]*See* Defendant's initial brief (doc. 3335), Plaintiffs' responsive brief (doc. 3453) and Defendant's sur-reply (doc. 3522).

**Discussion**

In their briefing, the parties group the privilege log documents at issue into the following five (5) discrete categories:

- Communications between Human Resources management and Janet Larson, an individual within the Human Resources department who was asked by Sprint's Law Department to assist in collecting documents responsive to Plaintiffs' requests;

- Correspondence between non-lawyer members of management communicating legal advice from Sprint's Law Department;

- Document containing handwritten notes taken by Sprint managers during meetings with counsel; and

- Documents containing adverse impact analyses that Judge Lungstrum allegedly ruled were not discoverable in this matter.

- Documents that have been, or will be, produced by Defendant with or without redactions.

Based on these groupings, the Court first will address the attorney-client privilege as it applies to each of the five (5) categories of documents. The Court then will address whether each of the five (5) categories of documents is protected from disclosure by the work product doctrine.

**A.     The Attorney-Client Privilege**

**1.     Attorney-Client Privilege: The Legal Standard**

Plaintiffs argue that without a showing of involvement by legal counsel, the documents on the List cannot be protected by the attorney-client privilege.  In response, Defendant maintains it adequately has shown the documents on the List to be related to Sprint's Legal Department.  Given this dispute, the first issue to be determined by the Court is the extent to which legal counsel must be involved in a communication in order to establish the elements required to invoke the attorney-client privilege.

2

Because this action arises under a federal statutory scheme, federal law provides the rule of decision as to application of the attorney-client privilege.[4]  Under federal common law, the essential elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.[5]

Notably, and relevant to the dispute between the parties here, the Court finds the essential elements of the privilege as defined above do not require an attorney to have either authored or received the document at issue in order to maintain the privilege.  The Court further finds that "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[6]  In support of these findings, the Court relies on Proposed Rule of Evidence 503 and the resulting development of federal common law with regard to the attorney-client privilege issue.

In 1972, the Chief Justice of the United States Supreme Court proposed to Congress various Rules of Evidence for federal courts ("Proposed Rules").[7]  The Proposed Rules were drafted by the Judicial Conference Advisory Committee on Rules of Evidence and approved by the Judicial

---

[4]*See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368-69 (10th Cir. 1997) (federal privilege law applies to federal claims).  The Court notes no real conflict between federal and Kansas law regarding the attorney-client privilege exists.  *See Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998).

[5]*Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *5 (D. Kan. Jan. 6, 1998) (quoting *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 n. 4 (D. Kan. 1993)).

[6]*United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

[7]Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183 (1972).

Conference of the United States and by the Supreme Court.[8] The Proposed Rules contained nine specific testimonial privileges, one of which specifically defined the attorney-client privilege:[9]

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) *between representatives of the client or between the client and a representative of the client*, or (5) between lawyers representing the client.[10]

Proposed Rule 503(b) expressly recognizes that the attorney-client privilege protects confidential communications made both *by* the client and *to* the client. Moreover, Proposed Rule 503(b) clarifies that the attorney-client privilege protects confidential communications not only between lawyer and client, but also among various other individuals who need to know the content of the confidential communications to further the rendition of legal services to the client.[11]

Proposed Rule 503 ultimately was rejected by Congress in favor of the more general language within Fed. R. Evid. 501 to "provide the courts with the flexibility to develop rules of privilege on a case-by-case basis," and "to leave the door open to change."[12] "Although Congress did not adopt this rule, courts have relied upon Proposed Rule 503(b) as an accurate definition of the federal

---

[8]*Jaffee v. Redmond*, 518 U.S. 1, 9 n.7 (1996) (citation omitted).

[9]*Id.* (citing Proposed Rules 501-513, 56 F.R.D. 183, 230-261 (1972)).

[10]Proposed Rule 503(b), 56 F.R.D. at 236 (emphasis added).

[11]*Id.*

[12]*Trammel v. United States*, 445 U.S. 40, 47 (1980) (quoting 120 Cong. Rec. 40891 (1974) (statement of Rep. Hungate); *see also Jaffee*, 518 U.S. at 8 (citing S. Rep. No. 93-1277, at 13 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7059)).

common law of attorney-client privilege."[13] Numerous courts have observed that Proposed Rule 503 is "'a useful starting place' for an examination of the federal common law of attorney-client privilege."'[14] As one treatise has observed, "[Proposed Rule 503] restates, rather than modifies, the common-law lawyer-client privilege. Thus, it has considerable utility as a guide to the federal common law."[15]

One of the first cases citing to Proposed Rule 503 as part of an examination into the federal common law of attorney-client privilege was *Eutectic Corporation v. Metco, Inc.*[16] In *Eutectic*, the plaintiffs challenged the validity of the defendant's patents and moved to compel the defendant to produce certain documents. The communications the defendant sought to withhold involved five persons: the two co-inventors of the patents in question, the attorney retained by the defendant, a vice-president of the company who was a patent liaison to the attorney, and his assistant liaison. Since the attorney did not send any of the communications and was not the original recipient of them, the plaintiffs contended that the documents were merely intracorporate communications and thus outside the scope of the attorney-client privilege.

---

[13]*United States v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987) (citing 2 J. Weinstein, Evidence ¶ 503(2) at 503-17 (1975) ("[D]espite the failure of Congress to enact a detailed article on privileges, Standard 503 should be referred to by the Courts.")).

[14] *Subpoena Duces Tecum*, 112 F.3d 910, 915 (8th Cir. 1997) (quoting *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994)).

[15]3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.02 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997); *see also id.* at § 501.02 (noting that the proposed evidence rules concerning privilege were the culmination of seven years of work done by judges, lawyers, and academics and that the rules were approved by the Supreme Court by a vote of eight to one).

[16]61 F.R.D. 35 (E.D.N.Y. 1973).

Although the court found no explicit request from the attorney for the information, the court ultimately did find the documents to be protected by the attorney-client privilege in that the defendants provided sufficient proof to establish that the documents contained confidential information gathered for the dominant purpose of facilitating the attorney's efforts to provide services to the client.[17]

This Court subscribes to the view of the court in *Eutectic*.[18] Organizational clients and business entities often are personified by a number of employees. In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts. With regard to the attorney-client privilege, the United States Supreme Court specifically acknowledges that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client."[19] The Court goes on to say that "[t]he lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."[20]

---

[17]61 F.R.D. at 40.

[18]Notably, this Court previously issued an unpublished opinion consistent with the holding in *Eutectic. See Lintz v. American Gen. Finance, Inc.,* Civ. 98-2213-JWL, 1999 WL 450197, at *4 (D. Kan. June 24, 1999) (holding that although written communication between management employees of defendant is not necessarily protected by the attorney-client privilege, defendant successfully demonstrated applicability of privilege by establishing that written communication was confidential in nature and contained legal advice obtained from counsel for defendants).

[19]*Upjohn Co. v. United States*, 449 U.S. 383 (1981) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)).

[20]*Id.*

For all of these reasons, the Court finds that although written communication between corporate management employees is not necessarily protected by the attorney-client privilege, a party may be able to successfully demonstrate applicability of privilege by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice.[21]  In order to do so, however, the party asserting the privilege must be able to establish the other elements of the privilege.  For example, no privilege will attach for documents designed merely to communicate non-privileged business data or for documents where the element of confidentiality is lacking.

With these parameters in mind, the Court now will address whether the attorney-client privilege protects from disclosure any of the privilege log documents grouped into the five (5) categories described above.

### 2.      Attorney-Client Privilege:  *Category One* Documents

In support of its attorney-client privilege argument, Defendant begins by asserting the *Category One* documents listed in the privilege log (1) are not relevant to Plaintiffs' claims because they were created after this case was filed; and (2) are not responsive to any discovery request made by Plaintiffs. Upon consideration of these assertions, the Court finds them immaterial to the issue presented in this motion to compel: whether the attorney-client privilege protects from disclosure

---

[21]*See Lintz,*1999 WL 450197 at *4; *see also United States v. Chevrontexaco Corp.*, 241 F.Supp.2d 1065, 1077 (N.D. Cal. 2002); *In re Grand Jury Proceedings*, M-11-189, 2001 WL 1167497, at *24 (S.D.N.Y. Oct. 3, 2001); *Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc.*, No. 97-5194, 1999 WL 1293348 (E.D. Pa. Dec. 30, 1999); *First Chicago Intern. v. United Exchange Co. Ltd.*, 125 F.R.D. 55, 58 (S.D.N.Y. 1989); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988); *United States v. American Tel. & Tel. Co.*, 86 F.R.D. 603, 619 (D.D.C. 1979); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 39 (D. Md. 1974); *Eutectic*, 61 F.R.D at 40; *Danisch v. Guardian Life Insur. Co. of Am.*, 18 F.R.D. 77, 80 (S.D.N.Y. 1955).

any of the *Category One* privilege log documents.  Accordingly, the Court finds Defendant's first assertions not relevant to the issues before the Court.

Next, Defendant argues that the *Category One* documents listed in the privilege log are protected from disclosure by the attorney-client privilege on grounds that the documents represent communications between Human Resources management and Janet Larson, an individual within the Human Resources department who was asked by Sprint's Law Department to assist in collecting documents responsive to Plaintiffs' document requests.  The Court disagrees.

First, the Court finds Defendant's characterization of the documents in its pleadings to be wholly inconsistent with the detailed privilege log provided by Defendant prior to briefing this issue. And even if the privilege log did describe the documents as written internal requests for production of documents made at the direction of an attorney, this general description – without any further detail – fails to establish the elements required to invoke the attorney-client privilege. Simply put, Defendant's blanket claim as to the applicability of the privilege fails to assert – let alone establish – that the documents are confidential substantive communications that involve requesting or providing legal advice.

As opposed to a blanket claim of privilege, Fed. R. Civ. P. 26(b)(5) requires a party withholding otherwise discoverable information on the basis of privilege or other protection to make the claim expressly and to describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the privileged or protected information, will enable the other parties to assess the applicability of the privilege or protection. Normally, this is accomplished by objecting and providing a privilege log for documents, communications, or things not produced.

The party asserting the privilege bears the burden of establishing its existence.[22]  The asserting party must make a "clear showing" that the asserted objection applies.[23]  To carry that burden, the asserting party must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery.[24]  In addition, the asserting party must provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied; a "blanket claim" as to the applicability of the privilege does not satisfy the burden of proof.[25]  Defendant's failure to meet this burden when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[26]

In rejecting Defendant's blanket claim of privilege, the Court now turns to the detailed privilege log submitted by Defendant in this case.  Upon review of the privilege log, the Court finds, with the exception of three (3) documents, that the information provided by Defendant for *Category One* documents is inadequate to meet the burden of proof with regard to a claim of protection based on the attorney-client privilege.

---

[22]*Id.*

[23]*Ali v. Douglas Cable Comm., Ltd. Partnership*, 890 F. Supp. 993, 994 (D. Kan. 1995).

[24]*McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000) (citing *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994)).

[25]*Id.* (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995) and *Kelling v Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D. Kan. 1994)).

[26]*Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

As a preliminary matter, the privilege log indicates that only one (1) of the 154 *Category One* documents was authored or received by a member of Defendant's Legal Department. Notwithstanding identification of an attorney as the recipient of this communication, the rather generic description of this document as an "email re: presentation" ultimately fails to demonstrate the more critical element of the privilege: that the communication was made in confidence for the primary purpose of obtaining legal advice or services. Notably, "not all communications between attorney and client are privileged; rather, they must relate to legal advice."[27]

The privilege log further indicates that the remaining 153 *Category One* documents are written materials authored by an unknown individual or an employee in Human Resources and sent to either another unknown individual or another Human Resources employee. Although this fact initially weighs against a conclusion that the documents were created to give or request legal advice, the Court has found, *supra*, that identification of the author and recipient as non-lawyers is not determinative of the privilege issue. Again, the central inquiry is whether the communication was made in confidence for the primary purpose of obtaining legal advice or services.

Of the 154 *Category One* documents, the Court finds that only three (3) document descriptions in the privilege log include references to an attorney, lawyer or legal advice:

| Bates | Type | Date | Author | Recipient | Subject | Privilege |
|-------|------|------|--------|-----------|---------|-----------|
| 30985-30986 | email | 8/17/04 - 8/18/04 | HR employee(s) | HR employee(s) | email including legal advice re: calibration data | A/C, WP |
| 163678-163679 | email | 11/10/02 | PCS employee(s) | HR, PCS employee(s) | email re: results of first legal review 11/5/02 | A/C, WP |

---

[27]*Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 496-97 (D. Kan. 1997) (citations omitted).

| 181540-181541 | ????? | unknown | unknown | unknown | workforce realignment & selection process transmitting legal advice re: demographic analysis | A/C |
|---|---|---|---|---|---|---|

The Court finds that with respect to the documents bearing bate stamps 30985-30986 and 163678-163679, Defendant has met the burden of proof with regard to a claim of protection based on the attorney-client privilege: the privilege log adequately describes the documents at issue as communications made in confidence for the primary purpose of obtaining legal advice or services. Defendant has failed, however, to meet the burden of proof with regard to a claim of protection based on the attorney-client privilege for documents bearing bate stamps 181540-181541. Although the document is summarily described as one that includes legal advice, Defendant fails to identify either an author or a recipient for the communication. Because both the author and recipient of this document are designated as unknown, the Court is not persuaded that the information regarding the workforce realignment and selection process involved the requesting or giving of legal advice.

For these reasons, and with the exception of the documents bearing bate stamps 30985-30986 and 163678-163679, the Court finds the information provided by Defendant in its privilege log for *Category One* documents is inadequate to meet the burden of proof with regard to a claim of protection based on the attorney-client privilege. Again, it is the party asserting the privilege that must make a "clear showing" that the asserted objection applies.[28] To carry that burden, the asserting party must provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied.[29] It is well settled that *Defendant's failure to meet its burden when the court is asked to rule upon the existence of the privilege is not excused because the document is*

---

[28]*Ali*, 890 F. Supp. at 994.

[29]*McCoo*, 192 F.R.D. at 680 (citing *Jones*, 163 F.R.D. at 17).

*later shown to be one that would have been privileged if a timely showing had been made.*[30]

### 3.    Attorney-Client Privilege: *Category Two* Documents

Defendant argues the *Category Two* documents listed in the privilege log are protected from disclosure by the attorney-client privilege because such documents represent the communication of legal advice between non-lawyer members of Defendant's management team.

As in the preceding subsection, the Court finds Defendant's characterization in the pleadings of *Category Two* documents to be inconsistent with the detailed privilege log provided by Defendant prior to briefing this issue.   The Court finds that documents bearing bate stamps 7618-7619, 44511-55512 [sic][31], 20513-20516, 20517-20541, 26010-26011, 35300-35302 are adequately described as legal advice communicated between non-lawyer members of Defendant's management team.   This description is consistent with a finding that the documents were confidential and communicated to non-lawyers to further the rendition of legal services to the client, which the Court has found, *supra*, to be a communication protected by the attorney-client privilege.

The rest of the documents in *Category Two* can be grouped into the following subcategories:

- ethics help line reports drafted by an unknown person and communicated to no one;

- case reports regarding investigations of various employees that were drafted by an unknown person and communicated to no one; and

- emails within the human resources department regarding human resource meetings and issues related to human resources.

The Court finds the information provided by Defendant in its privilege log for these

---

[30]*Peat, Marwick, Mitchell & Co.*, 748 F.2d at 542.

[31]This document is erroneously listed as 44511-55512, when the privilege log actually identifies the document as 44511-44512.

subcategories of documents is inadequate to meet the burden of proof with regard to a claim of protection based on the attorney-client privilege. Again, Defendant has failed to include information in the privilege log for these documents from the Court could find that documents qualify as communications made in confidence for the primary purpose of obtaining legal advice or services.

### 4.    Attorney-Client Privilege: *Category Three* Documents

Defendant argues the *Category Three* documents listed in the privilege log are protected from disclosure by the attorney-client privilege because each of the documents contains handwritten notes taken by Defendants' managers during meetings with counsel. The Court rejects this blanket argument. "Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[32]  "The focal point of the protection afforded by the attorney-client privilege lies with 'communications' between attorneys and their clients" – although the privilege protects disclosure of substantive communication between attorney and client, "it does not protect disclosure of the underlying facts by those who communicated with the attorney."[33]

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.[34]

---

[32]*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 175 F.R.D. 321, 327 (D. Kan. 1997) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995)).

[33]*IMC Chemicals, Inc. v. Niro, Inc.*, No: 98-2348-JTM, 2000 WL 1466495, at *8-9 (D. Kan. July 19, 2000) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

[34]*Id.*

13

Accordingly,  if relevant facts are incorporated into an otherwise attorney-client protected document, the document still will be subject to disclosure after redaction of the privileged material.[35] In other words, a party cannot shield documents and/or facts from disclosure by combining them or interlacing them with privileged material;  nonprivileged underlying factual information must be disclosed and the log must be specific enough for the Court and the opposing party to determine into which category the information falls.

Based on its review of Defendant's privilege log for the *Category Three* documents, the Court finds the following documents are protected from disclosure by the attorney-client privilege:

- the handwritten portion of the documents bearing bates stamps 22230-22245, described in the privilege log as "email with handwritten notes including references to legal issues associated with RIF"; and

- the handwritten portion of the documents bearing bates stamps 46294-46298, described in the privilege logs as "handwritten notes by Marvin Motley (HR) re: adverse impact"

This finding is based on the fact that the handwritten notes are adequately described in the log as legal advice communicated between non-lawyer agents employed within the human resources department of Defendant.  With that said, however, there is no indication in the privilege log that the documents upon which the handwritten notes appear are anything but nonprivileged underlying factual information interlaced with privileged materials; accordingly, the underlying email and documents are not protected from disclosure.

With regard to the remainder of the *Category Three* documents, Defendant has failed to meet its burden of proof with regard to a claim of protection based on the attorney-client privilege. Although  many  of  the  documents  are  summarily  described  as  communications  involving

---

[35]*Burton.*, 177 F.R.D. at 499-500.

conversations with or about legal counsel, Defendant fails to identify either an author or a recipient for the communication.  Because both the author and the recipient of this document are designated as unknown, the Court simply is not persuaded that the handwritten notes involve the requesting or giving of legal advice.  Moreover, although the descriptions include references to conversations with legal counsel, Defendant has not established that the notes reflect communications made to further the rendition of legal services to the client.  Again, "[n]ot every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[36]

### 5.   __Attorney-Client Privilege: *Category Four* Documents__

Defendant identifies this category as documents containing confidential and privileged adverse impact analyses that Judge Lungstrum previously ruled were not discoverable in this matter.  Plaintiffs disagree on two levels.  First, Plaintiffs maintain that many of the documents identified as adverse impact analyses by Defendant in the pleadings are not described as such in the privilege log.  Second, Plaintiffs argue that Judge Lungstrum's ruling was applicable only to the two particular adverse impact documents involved in his *in camera* review, and not to every document that contains adverse impact information.

The appropriate starting place for this discussion is Judge Lungstrum's previous rulings on the issue, which has been transcribed as follows:

---

[36]*Burton*, 175 F.R.D. at 327 (citing *Fisher*, 425 U.S. at 403; *Olano*, 62 F.3d at 1180).

15

> [A]lthough my earlier ruling was limited to certain documents specifically that I reviewed and said these are clearly within the ambit of attorney/client privilege, I have seen nothing that leads me to believe that age impact documents generated as a specific request in connection with a specific RIF by the legal department of the defendant would be anything other than attorney/client privileged documents …. It appears to me that this case in that sense is garden variety, and so therefore if all there is are documents – no matter how helpful or interesting they would be if I were the plaintiff in this case – that were generated in response to defendant's lawyers saying, We would like to look at this so that we can give you some advice about what you ought to do in connection with that RIF, that's just not something the plaintiffs are going to be able to get to.[37]

With Judge Lungstrum's ruling in mind, and upon a review of the privilege log documents identified within *Category Four*, the Court finds Defendant has met its burden of proof with regard to a claim of protection based on the attorney-client privilege for the following *Category Four* documents from the privilege log, which can be separated into the following subgroups:

- Documents identified in the "Type of Document" column as
    - "impact ratio analysis" documents
    - "adverse impact analysis" documents
    - "adverse impact" documents

- Documents identified as "spreadsheets" in the "Type of Document" column described as
    - "adverse impact"
    - "impact ratio analysis"
    - "due diligence matrix"

- Documents identified as "emails" in the "Type of Document" column and described as including and/or attaching for transmittal
    - adverse impact information
    - impact ratio analysis
    - legal advice re IT directors

Eliminating these documents, the Court finds only the following twenty-five (25) *Category 4* privilege log documents remain for a determination regarding the attorney-client privilege:

---

[37]March 31, 2005 Transcript of Proceedings before the Honorable John W. Lungstrum, Ex. C to Defendant's Index of Exhibits (doc. 3419) at pp. 11-12.

| 54563-74 | email | 2/19/02 | HR | HR | email re 2002-CC Corp Com & BD-alpha ratings E-grades with attached alpha ratings spreadsheet | AC, WP |
|---|---|---|---|---|---|---|
| 54627-28 | email | 2/25/02 | HR | HR | email re 2002-CC-Finance- re: alpha changes | AC |
| 54629 | email | 2/22/02 | HR | HR | email re 2002-CC-Finance- re: attorney-client privileged doc | AC |
| 54630 | email | 3/1/02 | HR | HR | email re 2002-CC-Finance-re" EEO analysis - managers and professionals | AC |
| 54769 | email | 2/24-2/25/02 | HR | HR | email re alpha changes | AC |
| 54874 | email | 3/2/02-8/26/04 | HR | HR CA 04-LT | email re finance-Krause directs EEO alpha analysis | AC |
| 57214 | email | 2/22/02 | HR | HR | email re attorney-client privileged document | AC, WP |
| 57215 | email | 3/1/02 | HR | HR | email re EEO analysis - manager and professionals | AC |
| 57236-48 | email | 2/18/02 | HR | HR | email re client ratings 2-18-02 | AC |
| 57305-26 | email | 3/11/02 | HR | HR | email re 2002 - CC - Finance - PF A B and C | AC, WP |
| 57327-28 | email | 2/24-2/25/02 | HR | HR and Finance | email re alpha changes | AC |
| 57329 | email | 2/22/02 | HR | HR | email re attorney-client privileged document | AC |
| 57330 | email | 3/1/02 | HR | HR | email re EEO analysis - managers and professionals | AC |
| 57383-84 | email | 2/24-2/25/04 | HR | HR | email re alpha changes | AC |
| 57429-71 | email | 3/2/02 | HR | HR | email re Krause directs EEO alpha analysis | AC |
| 57136-47 | email | 2/19/02 | HR | HR | email re 2002 CC - corp com & BD - alpha ratings E-grades | AC |
| 57212-13 | email | 2/24/02-2/25/02 | HR | HR | email re alpha changes | AC, WP |
| 57168-89 | email | 3/11/02 | HR | HR | email re 2002 CC - Finance - PF D, E and F | AC |
| 153456-58 | email | 2/24/03 2/25/03 | HR | HR | E-Mail re ntwk svcs demographics | AC, WP |
| 153915-17 | email | 2/24/03 | HR | HR | E-Mail re ntwk svcs demographics with attached demographics | AC, WP |
| 153918-19 | email | 12/30/02 | HR | IT/ Network | E-Mail re summary of Monday's discussion | AC |
| 153955-4001 | email | 12/27/02 | HR | HR | E-Mail re network services director selection master | AC |
| 154084-95 | email | 12/30/02 | HR | HR | E-Mail re summary of Monday's discussion  with attached director priority list | AC, WP |

17

| 163528-31 | email | 11/5/02-11/8/02 | PCS | HR | emails to John Shannon (HR) re Davis Al, Batt Al and prep for reductions | AC, WP |
| 163667-68 | email | 11/14/02 | HR | HR, PCS | email re realignment worksheets | AC |

Upon review of the descriptions for these twenty-eight (28) emails, the Court finds Defendant has failed to meet its burden of proof with regard to a claim of protection based on the attorney-client privilege. As a preliminary matter, descriptions designating documents as "attorney-client privileged" with no other information are insufficient to properly make a claim of privilege. As previously stated, Fed. R. Civ. P. 26(b)(5) requires a party withholding otherwise discoverable information on the basis of privilege to make the claim expressly and to describe the nature of the documents not produced in a manner that, without revealing the privileged information, will enable the other parties to assess the applicability of the privilege or protection.

Simply put, the privilege log fails to include a description establishing the referenced communications were made in confidence for the primary purpose of obtaining legal advice or to include a description establishing that the documents were, in Judge Lungstrum's words, "generated in response to defendant's lawyers saying, 'We would like to look at this so that we can give you some advice about what you ought to do in connection with that RIF.'" Thus, Defendant has failed to meet its burden of proof with regard to a claim of protection based on the attorney-client privilege for these twenty-eight (28) documents.

### 6.    Attorney-Client Privilege: *Category Five* Documents

Defendant argues the *Category Five* privilege log documents for which it claims protection based on the attorney-client privilege listed below are documents that have been, or will be, produced with or without redactions.

18

| 20456-20460 | email | 3/08/02 | HR | HR | email transmitting adverse impact analysis | AC, WP |
|---|---|---|---|---|---|---|
| 22228-22229 | email | 10/8/02-10/9/02 | HR | HR | email transmitting memorandum regarding WARN issues | AC |
| 44366-44367 | Ethics Help line Report | 3/25/02 | unknown | NA | ethics help line report re management practices/property rights of others | AC, WP |
| 46425-46426 | email | 8/16/02 | GMG | HR | email re business stack ranking | AC |
| 54550-54562 | email | 2/18/02 | HR | HR | email re 2002-CC- client ratings 2/18/02 with attached alpha ratings spreadsheet | AC, WP |
| 54770-54776 | email | 3/2/02-3/25/02 | HR | HR | email re alpha exceptions and stub grants incl atty work product from Ned Holland | AC, WP |
| 183392 | email | 3/14/02 | Mgr Tech. Lab | HR, Dir Adv. Ntwk Sys Dev. | email re CMR LINK rating/merit discussion with Carol Kippes | AC |
| 181374 | handwritten note | unknown | unknown | unknown | handwritten note re email file | AC |
| 181636 | handwritten notes | unknown | unknown | NA | handwritten notes re RIF file | AC |
| 179372 | email | 6/11/04 | HR | HR | email re action required: November 2003 employee travel and expense report | AC |
| 179373 | email | 6/11/04 | HR | HR | email re 2003 LINK ratings | AC |
| 182105 | email | 10/23/03-10/24/03 | PCS, HR | HR, PCS, Bus Indirect Acct Mgr | email re open position - test engineer I | AC |

In response, Plaintiffs claim that many of these documents are not protected by the attorney-client privilege and should be produced in their entirety without redaction.  Upon review of the descriptions provided in the privilege log, the Court finds that Defendant shall be permitted to produce redacted versions of documents bearing bates stamp numbers 20456-60 and 22228-29 with regard to adverse impact analyses and advice regarding WARN.  The Court finds the remainder must be produced without redaction as the description provided fails to establish the referenced communications were made in confidence for the primary purpose of obtaining legal advice.

**B.**     <u>**Work Product Protection**</u>

    **1.**     <u>**Work Product: The Legal Standard**</u>

With regard to those documents identified in the privilege log as attorney work product, Plaintiffs argue again that, without a showing of involvement by legal counsel, the documents at issue cannot be protected by the work product doctrine.

To establish work product protection, a party must show that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[38]  Because there does not appear to be a dispute that the materials sought are documents or that they were prepared by or for Defendant or a representative of Defendant, the Court will address only the pivotal issue presented: whether the documents were prepared in anticipation of litigation.

The work product doctrine, which is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, developed for or in anticipation of litigation or trial.[39]  The purpose of the doctrine is to permit attorneys to prepare for litigation with a "certain degree of privacy," and without undue interference or fear of intrusion or exploitation of one's work by an adversary.[40]  In other words, the doctrine is not intended to protect investigative work unless done so under the supervision of an attorney in preparation for the real and imminent threat of litigation or trial; thus, work prepared in the ordinary course of business and inserted into a protected document may still be

---

[38]*Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (citations omitted).

[39]Fed. R. Civ. P. 26(b)(3).

[40]*Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947).

subject to disclosure after redaction of any privileged material.  The Advisory Committee Notes to the federal rule establishing work product protection also recognize this need: "In enforcing [the Rule 26(b)(3) protection of work product material], the courts will sometimes find it necessary to order disclosure of a document but with portions deleted."[41]

Thus, the work product doctrine only applies to those documents and tangible things prepared in anticipation of litigation, and in order for the discovery limitation to apply, there must be a substantial probability that litigation will ensue at the time the documents were drafted.[42]  "Certainly by implication the . . . rule precludes any idea of extending the work product doctrine to reports or statements, even if written, obtained by the client or his investigators which are not prepared under the supervision of an attorney in preparation for trial."[43]

The issue of whether documents were prepared in anticipation was extensively analyzed by Judge Rushfelt in *Marten v. Yellow Freight System, Inc.*[44]  The court stated:

> The work product standard has two components.   The first is what may be called the "causation" requirement.  This is the basic requirement of the Rule that the document in question be produced because of the anticipation of litigation, i.e., to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation.   Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.
>
> The court looks to the primary motivating purpose behind the creation of the document

---

[41]Fed. R. Civ. P. 26 advisory committee's note, subdivision (b)(3) (1970).

[42]*Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 427, 997 P.2d 681 (2000); *Alseike v. Miller*, 196 Kan. 547, 558, 412 P.2d 1007 (1966).

[43]*Alseike*, 196 Kan. at 558.

[44] No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998).

21

to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even the likely chance of litigation, does not give rise to work product. To justify work product protection, the threat of litigation must be "real and imminent." To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation.[45]

## 2. Work Product: *Category One* Documents

As noted above, Defendant asserts *Category One* documents consist of communications between Human Resources management and Janet Larson, an individual within the Human Resources department who was asked by Sprint's Law Department to assist in collecting documents responsive to Plaintiffs' requests. Defendant further asserts that the following *Category One* documents are protected from disclosure by the work product doctrine:

| Bates No. | Type | Date | Author | Recipient | Subject | Priv |
|-----------|------|------|--------|-----------|---------|------|
| 30985-30986 | email | 8/17 - 8/18/04 | HR | HR | email including legal advice re: calibration data | A/C, WP |
| 46356-46357 | alpha summary | 1/15/03 | HR | NA | alpha summary of Bob McCuller w/ vision statement | WP |
| 46360-46361 | alpha summary | 1/15/03 | HR | NA | alpha summary of Bob McCuller w/ vision statement | WP |
| 46365-46389 | alpha rating tool | 2/26/03 | HR | NA | alpha ration tool distribution summary | WP |
| 47784-47800 | spread sheet | 10/23/04 | HR | NA | Honolulu operator center final list 11-02 | WP |
| 47801-47817 | spread sheet | 10/23/04 | HR | NA | Honolulu operator center final list 11-02 | WP |
| 53882-53895 | email | 2/19/02 | HR | HR | email re: E-Grade rating info with attached TS E-Grade spreadsheets | A/C, WP |
| 54767 | email | 8/25 - 8/26/02 | HR | HR CA04-LT | email re: 2002 CC calibration | A/C, WP |

---

[45]*Id.* at *10 (citations and quotations omitted).

| 55408 | email | 8/22 - 8/30/04 | HR | HR CA04-LT | email re: confidential year end ratings | A/C, WP |
| 55537 | email | 8/22 - 8/30/04 | HR | HR CA04-LT | email re: confidential year end ratings | A/C, WP |
| 55666-55667 | email | 8/30/04 | HR | HR CA04-LT | email re: confidential/calibration LTD CSO 2002 yr end ratings | A/C, WP |
| 55797 | email | 8/27 - 8/30/04 | HR | HR CA04-LT | email re: 2002 yr end ratings | A/C, WP |
| 55968 | email | 8/27 - 8/30/04 | HR | HR CA04-LT | email re: 2002 yr end ratings | A/C, WP |
| 163678-163679 | email | 11/10/02 | PCS | HR, PCS | email re: results of first legal review 11/5/02 | A/C, WP |

As a preliminary matter, the Court already has deemed the documents identified in the first and the last lines of the table (bearing bates stamps 30985-30986 and 163678 - 163679) as protected from disclosure by the attorney-client privilege; thus, it is unnecessary to determine whether the work product doctrine protects the documents from disclosure as well.

As to the rest of the documents in this table, the Court finds the descriptions provided ("lists," "summaries," "calibrations," and "ratings") are insufficient to establish work product protection. There is nothing in the descriptions to persuade the Court that these written materials were created, collected or considered in any context other than the normal course of business.

### 3.    Work Product:  *Category Two* Documents

Defendant argues the following *Category Two* documents listed in the privilege log are protected from disclosure by the work product doctrine because such documents represent the communication of legal advice between non-lawyer members of Defendant's management team:

| 7618-7619 | email | 11/14/02 | HR | HR | LINK calibration communicating legal advice from Donna Crosswhite (SL) and Jill Ferrel (SL) to clients | A/C, WP |

| 44474-44475 | proprietary information | unknown | unknown | NA | corporate security investigations of Jerry Batt (PCS) & executives | WP |
|---|---|---|---|---|---|---|
| 44509-44510 | spreadsheet | unknown | unknown | NA | case number key 3-38/00001 | WP |
| 44511-44512 | Case Report | 01/02/03 | unknown | NA | Case report for 3-38-00001 including legal advice | AC, WP |
| 44552-44553 | case report | 4/30 - 8/30/02 | unknown | NA | investigation re: emails from Judy Fox to Mark Greenly | A/C, WP |
| 44554 | case report | 6/15 - 6/17/02 | unknown | NA | investigation re: email from concerned person sent to Ron LeMay | A/C, WP |
| 44555 | case report | 7/15/02 | unknown | NA | investigation re: email from Rick Wilcox to ethics help line and Len Lauer | A/C, WP |
| 44559 | case report | 11/5/02 | unknown | NA | investigation of Jerry Batt (PCS) | A/C, WP |
| 44560-44561 | case report | 9/30 - 10/11/02 | unknown | NA | investigation re: Mike Miller, Tom O'Dea (PCS) and Cloene Davis (PCS) | A/C, WP |
| 154188-154197 | email | 1/9/03 | HR | HR, PCS | email re: follow-up with attached retirement tools and questions from the HR Network | A/C, WP |
| 154259-154268 | email | 1/9/03 | HR | HR, PCS | email re: follow-up with attached transition team conference call | A/C, WP |

In section (A)(3), *supra*, the Court determined the documents bearing bates stamps 7618-7619 and 44511-44512 are protected from disclosure by the attorney-client privilege; accordingly, the Court will not address whether these documents are also protected by the work product doctrine.

The rest of the documents in *Category Two* can be grouped into the following two subcategories:

- case reports regarding investigations of various employees that were drafted by an unknown person and communicated to no one; and

- emails within the human resources department regarding retirement tools and a transition team conference call.

With regard to these remaining documents, the Court finds the information provided by Defendant in its privilege log is inadequate to meet the burden of proof with regard to a claim of

protection based on the work product doctrine.   Defendant has failed to include information in the privilege log for these documents from which the Court could find that documents were prepared under the supervision of an attorney in preparation for litigation.   Again, there is nothing in the descriptions to persuade the Court that these written materials were created, collected or considered in any context other than the normal course of business.

### 4.      Work Product:  *Category Three* Documents

Defendant claims protection by the work product doctrine for only one *Category Three* document within the privilege log:

| 46294-46298 | handwritten notes | 2/12/03 | HR | NA | handwritten notes by Marvin Motley (HR) re: adverse impact | A/C, WP |
|---|---|---|---|---|---|---|

Because the Court already deemed this document to be protected from disclosure by the attorney-client privilege in the preceding section, it is unnecessary to determine whether the work product doctrine protects the document from disclosure as well.

### 5.      Work Product: *Category Four* Documents

Defendant identifies the documents in *Category Four* as documents containing adverse impact analyses that Judge Lungstrum previously ruled were not discoverable in this matter.  Given the number of documents within this category, the Court finds it helpful to group the documents into the following two subcategories: (a) documents for which Defendant claims protection by both the attorney-client privilege and the work product doctrine; and (b) documents for which Defendant claims protection by only the work product doctrine.

a.    *Subcategory (a): Category Four Documents for which Defendant Claims Protection by both the Attorney-Client Privilege and the Work Product Doctrine*

Excluding those documents the Court deemed to be protected by the attorney-client privilege in the preceding section, only the following eight (8) *Category Four* documents remain for decision by the Court with respect to work product protection:

| | | | | | | |
|---|---|---|---|---|---|---|
| 54563-54574 | email | 2/19/02 | HR | HR | email re 2002-CC Corp Com & BD-alpha ratings E-grades with attached alpha ratings spreadsheet | AC, WP |
| 57214 | email | 2/22/02 | HR | HR | email re attorney-client privileged document | AC, WP |
| 57305-57326 | email | 3/11/02 | HR | HR | email re 2002 - CC - Finance - PF A B and C | AC, WP |
| 57212-57213 | email | 2/24/02-2/25/02 | HR | HR | email re alpha changes | AC, WP |
| 153456-153458 | email | 2/24/03 2/25/03 | HR | HR | E-Mail re ntwk svcs demographics | AC, WP |
| 153915-153917 | email | 2/24/03 | HR | HR | E-Mail re ntwk svcs demographics with attached demographics | AC, WP |
| 154084-154095 | email | 12/30/02 | HR | HR | E-Mail re summary of Monday's discussion with attached director priority list | AC, WP |
| 163528-163531 | email | 11/5/02-11/8/02 | PCS | HR | emails to John Shannon (HR) re Davis Al, Batt Al and prep for reductions | AC, WP |

Upon review of the descriptions for these eight (8) emails, the Court finds Defendant has failed to meet its burden of proof with regard to a claim of protection based on work product.  As noted in the preceding section, descriptions designating documents as "attorney-client privileged" with no other information are insufficient to properly make a claim of privilege.  Defendant has failed to include information in the privilege log for these eight (8) documents from which the Court could find that documents were prepared under the supervision of an attorney in preparation for litigation and, again, there is nothing in the descriptions to persuade the Court that these written materials were created,

26

collected or considered in any context other than the normal course of business.

      b.      **_Subcategory (b): Category Four Documents for which Defendant Claims_**
              **_Protection by the Work Product Doctrine Only_**

Upon review of the *Category Four* documents for which Defendant claims protection by the work product doctrine only, the Court finds Defendant has met its burden of proof with regard to a claim of protection based on the work product doctrine for the following documents:

- Documents identified in the "Type of Document" column as

  - "impact ratio analysis" documents
  - "adverse impact analysis" documents
  - "impact analysis" documents

- Documents identified as "spreadsheets" in the "Type of Document" column and described as

  - "adverse impact"
  - "impact ratio analysis"
  - "due diligence matrix"

- Documents identified as "emails" in the "Type of Document" column and described as communicating information regarding "adverse impact"

- Documents identified as "Job Aid" in the "Type of Document" column and described as "adverse impact analysis."

More specifically, and based on Judge Lungstrum's prior ruling as set forth in the preceding section, the Court finds Defendant has included sufficient information in the privilege log for these documents from which the Court could find that such documents were prepared under the supervision of an attorney in preparation for litigation.

Eliminating these documents from the dispute, the Court finds only the following seven (7) *Category 4* privilege log documents remain for determination regarding protection by the work product doctrine:

| 154097-154098 | Spreadsheet | unknown | unknown | NA | Demographics spreadsheet | WP |
|---|---|---|---|---|---|---|
| 154099-154100 | Spreadsheet | unknown | unknown | NA | Demographics spreadsheet | WP |
| 154101-154110 | Spreadsheet | unknown | unknown | NA | Networks services demographics attachment | WP |
| 181746 | RIF list | unknown | unknown | NA | riffed list by gender | WP |
| 181747 | RIF list | unknown | unknown | NA | riffed list by ethnicity | WP |
| 181748 | RIF list | unknown | unknown | NA | riffed list by age | WP |
| 181749 | RIF list | unknown | unknown | NA | riffed list by age | WP |

The Court finds nothing in the descriptions to persuade it that these written materials were created, collected or considered in any context other than the normal course of business. Although the information within these documents may have been used by Defendant in ultimately analyzing adverse impact, the documents are described as "lists" and "demographic spreadsheets" – descriptions that the Court finds are consistent with underlying factual information. Accordingly, the Court finds Defendant has failed to bear its burden to establish that these seven (7) documents were prepared under the supervision of an attorney in preparation for litigation.

### 6.    Work Product: *Category Five* Documents

Defendant argues the *Category Five* privilege log documents for which it claims work product protection listed below are documents that have been, or will be, produced with or without redactions.

| 44366-44367 | Ethics Help line Report | 3/25/02 | unknown | NA | ethics help line report re management practices/property rights of others | AC, WP |
|---|---|---|---|---|---|---|
| 54487-54492 | spreadsheet | unknown | HR | NA | CS over 40 'L' rated employees | WP |
| 54493-54498 | spreadsheet | unknown | HR | NA | CS over 40 M H V for consideration | WP |
| 54500-54503 | spreadsheet | unknown | HR | NA | Min with H rating | WP |
| 54505-54508 | spreadsheet | unknown | HR | NA | link ratings - 71-76 pc h minorities | WP |
| 54509-54518 | spreadsheet | unknown | HR | NA | link ratings | WP |
| 55123-55128 | spreadsheet | 9/18/02 | HR | NA | RIF data | WP |

| 55259-55282 | spreadsheet | unknown | unknown | NA | MMO sales and service matrix | WP |
| 55283-55284 | spreadsheet | 7/10/02 | HR | NA | supervisor development matrix - final version | WP |

In response, Plaintiffs maintain that many of these documents are not protected by the work product doctrine and should be produced in their entirety without redaction. Upon review of the descriptions provided, the Court finds all of these documents must be produced without redaction, as the descriptions provided for these documents fail to establish that such documents were prepared under the supervision of an attorney in preparation for litigation.

### Conclusion

Pursuant to the discussion above, Plaintiffs' Motion to Compel (doc. 3203) is granted in part and denied in part as specifically set forth below:

(1)   *Category One*

    (a)   The Court finds documents bearing bate stamps 30985-30986 and 163678-163679 are protected from disclosure by the attorney-client privilege;

    (b)   The Court finds all other documents within *Category One* for which a claim of attorney-client privilege was made are not protected from disclosure by such privilege and thus shall be produced within five (5) days from the date of this Memorandum and Order; and

    (c)   The Court finds all documents within Category One for which a claim of work product protection was made are not protected from disclosure under the doctrine and, unless alternatively protected by the attorney-client privilege, must be produced within five (5) days from the date of this Memorandum and Order.

(2) *Category Two*

    (a)    The Court finds documents bearing bate stamps 7618-7619, 44511-55512 [sic][46], 20513-20516, 20517-20541, 26010-26011, 35300-35302 are protected from disclosure by the attorney-client privilege;

    (b)    The Court finds all other documents within *Category Two* for which a claim of attorney-client privilege was made are not protected from disclosure by such privilege and thus shall be produced within five (5) days from the date of this Memorandum and Order; and

    (c)    The Court finds all documents within Category Two for which a claim of work product protection was made are not protected from disclosure under the doctrine and , unless alternatively protected by the attorney-client privilege, must be produced within five (5) days from the date of this Memorandum and Order.

(3) *Category Three*

    (a)    The Court finds handwritten portion of those documents bearing bates stamps 22230-22245 and 46294-46298 are protected from disclosure by the attorney-client privilege;

    (b)    The Court finds the non-handwritten portion of those documents bearing bates stamps 22230-22245 and 46294-46298 are not protected from disclosure by the attorney-client privilege and thus shall be produced within five (5) days from the date of this Memorandum and Order; and

    (c)    The Court finds all other documents within *Category Three* for which a claim of attorney-client privilege was made are not protected from disclosure by such privilege and , unless alternatively protected by the attorney-client privilege, must be produced within five (5) days from the date of this Memorandum and Order;

---

[46]This document is erroneously listed as 44511-55512, when the privilege log actually identifies the document as 44511-44512.

(4)    *Category Four*

(a)    Documents identified in the "Type of Document" column as "impact ratio analysis" documents, "adverse impact analysis" documents and "adverse impact" documents are protected from disclosure by the attorney-client privilege and the work product doctrine;

(b)    Documents identified as "spreadsheets" in the "Type of Document" column and described as "adverse impact," "impact ratio analysis" and "due diligence matrix" are protected from disclosure by the attorney-client privilege and the work product doctrine;

(c)    Documents identified as "emails" in the "Type of Document" column and described as documents including and/or attaching for transmittal adverse impact information, impact ratio analysis and legal advice re IT directors are protected from disclosure by the attorney-client privilege and the work product doctrine;

(d)    Documents identified as "Job Aid" in the "Type of Document" column and described as "adverse impact analysis" are protected from disclosure by the work product doctrine;

(e)    Documents bearing bates stamps 54563-74, 54627-28, 54629, 54630, 54769, 54874, 57214, 57215, 57236-48, 57305-26, 57327-28, 57329, 57330, 57383-84, 57429-71, 57136-47, 57212-13, 57168-89,153456-58, 153915-17, 153918-19, 153955-4001, 154084-95, 163528-31, 163667-68 are not protected from disclosure by the attorney-client privilege and thus shall be produced within five (5) days from the date of this Memorandum and Order;

(f)    Documents bearing bates stamps 54563-54574, 57214, 57305-57326, 57212-57213, 153456-153458, 153915-153917, 154084-154095, 163528-163531, 154097-154098, 154099-154100, 154101-154110, 181746, 181747, 181748, 181749 are not protected from disclosure by the work product doctrine and , unless alternatively protected by the attorney-client privilege, must be produced within five (5) days from the date of this Memorandum and Order.

31

    (5)    *Category Five*

        (a)    The Court shall permit Defendant to produce redacted versions of documents bearing bates stamp numbers 20456-60 and 22228-29 with regard to adverse impact analyses and advice regarding WARN; and

        (b)    The Court finds the remainder must be produced without redaction and Defendant shall do so within five (5) days from the date of this Memorandum and Order.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 1st day of February, 2006.


                         s/ David J. Waxse
                         David J. Waxse
                         United States Magistrate Judge

cc:    All counsel and *pro se* parties