IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**SHIRLEY WILLIAMS, et al.,**

       **Plaintiffs,**         **CIVIL ACTION**

v.                   No.  03-2200-JWL-DJW

**SPRINT/UNITED MANAGEMENT COMPANY,**

       **Defendant.**

### MEMORANDUM AND ORDER

  Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated, asserting that her age was a determining factor in Defendant's decision to terminate her employment during a reduction-in-force (RIF).  This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and the parties are presently engaged in discovery concerning the merits of Plaintiffs' pattern and practice allegations.  This matter is presently before the Court on the Motion to Intervene for the Limited Purpose of Seeking to Modify Protective Order (doc. 3270) filed by Mary Pat Cavanaugh, Richard Brothers, Cecil Wilson, Jasper Tyson, and all the opt-in plaintiffs in a civil action pending in the Northern District of Georgia, styled *Cavanaugh v. Sprint/United Management Co.*[1] (hereinafter the "Cavanaugh plaintiffs").  For the reasons set forth below, the motion is granted.

**I.  Summary of Relief Sought and Arguments in Opposition to the Motion**

---

[1] Civil Action No. 04-3418-BBM (N.D. Ga.).

The Cavanaugh plaintiffs seek to intervene in this matter for the purpose of modifying the Stipulated Protective Order in order to allow them access to confidential discovery information and materials produced by Defendant in this case. The Cavanaugh plaintiffs are presently pursuing a representative opt-in collective age discrimination action against Defendant Sprint/United Management in the Northern District of Georgia (hereinafter the "Cavanaugh litigation"). The Cavanaugh plaintiffs seek a modification of the current protective order in this case "only to the extent of permitting the Plaintiffs in this case (and their counsel) to exchange information which has been produced by Defendant and under the premise that any confidential information exchanged as a result will be covered under the protections of the Protective Order in the Cavanaugh litigation."[2] Defendant opposes the motion to intervene. It argues that allowing the Cavanaugh plaintiffs to intervene in order to modify the protective order would unduly delay and prejudice the adjudication of the original parties to this action, would permit the Cavanaugh plaintiffs to circumvent the rules of discovery, and would frustrate judicial management of both cases. Defendant further argues that discovery in this case is not relevant to the claims in the Cavanaugh litiation and that the Cavanaugh plaintiffs will not be burdened if intervention is denied.

## II. Discussion

### A. Standing to Intervene

The Tenth Circuit has recognized permissive intervention under Federal Rule of Civil Procedure 24(b) as a proper method for a non-party to challenge a confidentiality agreement or protective order by

---

[2]Mot. to Intervene (doc. 3270) p. 2.

2

limited intervention for discovery purposes.[3] Federal Rule of Civil Procedure 24(b) governs permissive intervention. It provides, in relevant part, that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common."[4] Rule 24(b) further provides that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[5] Permissive intervention is a matter within the sound discretion of the district court.[6]

In their motion, the Cavanaugh plaintiffs contend that they have a question of fact in common with Plaintiffs in this case. They claim that the common question of fact central to both cases is Defendant's alleged desire to eliminate older employees and to control the timing of separating these employees from its work force. They further assert that this core question of Defendant's motivation is central to both cases. Subsidiary questions relate to the selection of employees for termination and the justifications for conducting the RIFs.

The Court finds that the Cavanaugh plaintiffs have shown a sufficiently strong nexus of fact or law between the two cases for permissive intervention. As the Tenth Circuit Court of Appeals has held, "[w]hen a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a

---

[3]*United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied sub nom. *Am. Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073 (1991) (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)).

[4]Fed. R. Civ. P. 24(b).

[5]Fed. R. Civ. P. 24(b).

[6]*United Nuclear*, 905 F.2d at 1427 (citing *Shump v. Balka*, 574 F.2d 1341, 1345 (10th Cir. 1978)).

protective order, no particularly strong nexus of fact or law need exist between the two suits."[7] The Cavanaugh plaintiffs will therefore be permitted to intervene in this action under Fed. R. Civ. P. 24(b).

Having determined that the Cavanaugh plaintiffs should be permitted to intervene in this action for the limited purpose of seeking to modify the protective order, the Court must next determine whether the existing protective order should be modified to allow Plaintiffs to exchange information designated as "confidential" with the Cavanaugh plaintiffs.

## B. Applicable Standard to Be Applied When Modification of Protective Order Sought by Intervenor

In the Tenth Circuit, the applicable standard to be applied when a non-party intervenor seeks to modify an existing protective order to obtain confidential discovery is set forth in *United Nuclear Corp. v. Cranford Insurance Co.*[8] In that case, the Tenth Circuit Court of Appeals affirmed the district court's order that granted intervenors permissive intervention and modified the blanket protective order to allow intervenors access to discovery for use in their collateral litigation.[9] In its decision affirming the lower court's modification of the protective order, the court reiterated that modification of a protective order, like its original entry, is within the trial court's discretion.[10] The court also described the competing considerations when an intervening party seeks to modify a protective order in order to obtain discovery:

> No doubt such an order makes the discovery process in a particular case operate more efficiently; the assurance of confidentiality may encourage disclosures that otherwise would

---

[7]*Id.* (citing *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987)).

[8]905 F.2d 1424, 1427 (10th Cir. 1990).

[9]*Id.* at 1426.

[10]*Id.*

4

> be resisted. Allowing modification of protective orders for the benefit of collateral litigants tends to undermine the order's potential for more efficient discovery. But when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration-saving time and effort in the collateral case by avoiding duplicative discovery.[11]

After a discussion of how other circuits have addressed requests to modify protective orders for the benefit of collateral litigants, the Tenth Circuit stated its agreement with the standard laid down by the Seventh Circuit in *Wilk v. American Medical Ass'n*.[12] In *Wilk*, the Seventh Circuit set out the following standard to be applied when modification of a protective order is sought by an intervening party:

> [W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.[13]

Applying the *Wilk* standard requires the court to make a three-step inquiry: the court must first determine whether modification of the protective order places private litigants in a position they would otherwise reach only after repetition of another's discovery. If the court finds in the affirmative on the first step, then the court next inquires whether modifying the protective order tangibly prejudices substantial rights of the party opposing modification. Finally, if the court finds that prejudice has been demonstrated, then the court determines whether the injury outweighs the benefit of any possible modification of the protective order.

---

[11]*Id.* at 1427-28.

[12]*See United Nuclear*, 905 F.2d at 1428 ("[w]e find ourselves in agreement with the standard laid down by the Seventh Circuit in *Wilk*").

[13]*Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir.1980) (internal citations omitted).

### C. Application of Wilk Standard For Modifying Protective Order for Benefit of Collateral Litigants

*1. Would modification of the protective order place the Cavanaugh plaintiffs in a position they would otherwise reach only after repetition of the discovery in this case?*

Under the three-step inquiry set forth by *Wilk* and adopted by the Tenth Circuit, the Court must first determine whether modification of the protective order would place the Cavanaugh plaintiffs in a position they would otherwise reach only after repetition of the discovery in this case.

The Cavanaugh plaintiffs claim that the information in this pattern and practice disparate impact case is also discoverable in the Cavanaugh litigation. They assert that, like Plaintiffs in this case, they are pursing representative opt-in age discrimination claims against Defendant for (a) a pattern and practice of age discrimination and (b) disparate impact age discrimination. Both the Cavanaugh plaintiffs and Plaintiffs are seeking to show that they are "similarly situated" for purposes of pursing class action status under 29 U.S.C. § 219(b). The Cavanaugh plaintiffs further argue that there is substantial overlap between their litigation and this litigation. They cite Defendant's "Mature Workforce" or "Aging Workforce" project, which they believe began in the fall of 2002 and continued until at least late 2003, as an example of the overlap of discovery sought by them and Plaintiffs in this action.

Defendant argues that discovery in this case is not relevant to the Cavanaugh claims and vice versa. It asserts that the Cavanaugh plaintiffs' motion to intervene fails to establish even a colorable claim of factual similarity between the two cases, but instead makes the conclusory statements that the information in this pattern and practice and disparate impact case is also discoverable and any violation would likely overlap the time frames set forth in both lawsuits. Defendant maintains that the time frames purportedly relevant

to this case and the Cavanaugh litigation do not overlap. This case concerns RIFs that span the relevant time frame of October 2001 through March 31, 2003.[14] The Cavanaugh litigation concerns RIFs between April 1, 2003 and May 31, 2004.

The Court finds that modification of the protective order in this case would likely place the Cavanaugh plaintiffs in a position they would otherwise reach only after repetition of discovery. Like Plaintiffs in this case, the Cavanaugh plaintiffs are currently pursing representative opt-in age discrimination claims against Defendant for a pattern and practice of age discrimination and disparate impact age discrimination. As the claims and allegations asserted against Defendant in both cases are very similar and will likely seek discovery of Defendant's company-wide policies, practices, and procedures, as well as discovery of Defendant's corporate management decision-making regarding the RIFs, the Court finds that the Cavanaugh plaintiffs would likely seek discovery repetitive of the discovery already produced by Defendant in this case. The fact that the specific RIFs at issue in the Cavanaugh litigation occurred during a different time frame than the RIFs at issue in this litigation does not necessarily make all discovery in this case irrelevant for purposes of the Cavanaugh litigation. Discovery relating to claims and allegations against Defendant for a pattern and practice of age discrimination and disparate impact age discrimination may exist outside the respective RIF time frames. Even if the pattern and practice and disparate impact discovery would be limited by the respective time frames of each case, the Court notes that the time frames for the RIFs at issue in this litigation and the Cavanaugh litigation are adjacent time periods. Such close proximity in time, along with the similar nature of the discovery likely to be sought to support pattern and practice and

---

[14]The Cavanaugh plaintiffs point out that a related case to this action, *Bolton v. Sprint United Mgmt. Co.*, D. Kan. Civ. A. No. 05-2361-JWL-JPO, involves the same time period and same claims as in the Cavanaugh litigation.

7

disparate impact claims, convinces the Court that modification of the protective order would prevent repetitive discovery. The Court therefore determines that the Cavanaugh plaintiffs have satisfied the first step of the three-step test, i.e. that modification of the protective order would place them in a position they would otherwise reach only after repetition of the discovery in this case.

> *2.     Would modifying the protective order tangibly prejudice substantial rights of Defendant?*

Because the Court finds that modification of the protective order would place the Cavanaugh plaintiffs in a position they would otherwise reach only after repetition of discovery in this case, the Court must next determine whether modifying the protective order tangibly prejudices substantial rights of Defendant.

Defendant argues that allowing the Cavanaugh plaintiffs to intervene and modify the Protective Order would delay this action and prejudice its rights. Defendant asserts that its proprietary information, its employees' confidential employment records, and information regarding plaintiffs' income would no longer be protected pursuant to the terms of the agreed upon Protective Order in this case. Defendant also claims that modification of the existing stipulated protective order would disrupt the negotiated agreement of the parties that has governed discovery for the past two years.

The Cavanaugh plaintiffs argue that Defendant would suffer no prejudice, much less any "tangible prejudice" to its "substantial rights" from permitting the modification requested. They claim the protective order in the Cavanaugh litigation is in most respects identical to the protective order in this case. So the only prejudice Defendant can show is that modifying the protective order will make it less burdensome for

8

the Cavanaugh plaintiffs to pursue their collateral litigation, which the Tenth Circuit has found does not constitute legitimate prejudice.

The Court finds that Defendant's concerns regarding any disclosure of its proprietary information, its employees' confidential employment records, and information regarding Plaintiffs' income can be sufficiently addressed by placing the Cavanaugh plaintiffs (and their counsel) under the restrictions on use and disclosure contained in the parties' existing protective order. As the Tenth Circuit has recognized, "any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing [i]ntervenors under the restrictions on use and disclosure contained in the original protective order."[15]

Defendant also claims that allowing the Cavanaugh plaintiffs to intervene would circumvent the rules of discovery and would frustrate judicial management of both cases. Defendant argues that the Cavanaugh plaintiffs have not made any showing that the information and documents they seek access to through this case would be discoverable in their own litigation and they have not explained to this Court why they should be permitted to intervene and unilaterally change an agreed-upon Protective Order, when they can obtain relevant discovery in their own case. Defendant further argues that the intervention the Cavanaugh plaintiffs seek will necessarily undermine the authority of the court presiding over the Cavanaugh litigation to control discovery in that case while needlessly adding additional complexity in this matter. If the Cavanaugh plaintiffs are permitted to intervene, they will achieve a mechanism to obtaining discovery that has been precluded in their own case. Likewise, each time this Court is called upon to consider a discovery dispute

---

[15]*United Nuclear*, 905 F.2d at 1428 (citations omitted).

in this case, the Court will necessarily be required to consider the impact of its ruling on the Cavanaugh case, which is pending before another court.

In *United Nuclear,* the Tenth Circuit cautioned that "the district court must refrain from issuing discovery orders applicable only to collateral litigation."[16] Federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding and collateral litigants have no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation.[17] The court further stated that questions of the discoverability in the collateral litigation of the materials discovered in the present litigation are for the collateral courts to decide.[18]

While fully cognizant of the limitation that it must refrain from issuing discovery orders applicable only to collateral litigation, the Court has not been made aware of any discovery limitations in the Cavanaugh litigation that would be subverted by allowing the Cavanaugh plaintiffs access to the three categories of material deemed to be "confidential" by the parties in this action - (1) information related to Plaintiffs' income, (2) Defendant's personnel records regarding non-parties; and (3) Defendant's proprietary and confidential economic information. Although Defendant states that "[i]f the Cavanaugh plaintiffs are permitted to intervene, they will achieve a mechanism to obtaining discovery that has been precluded by their own judge in their own case,"[19] Defendant fails to identify the discovery that has been

---

[16]*Id.*

[17]*Id.* (citing *Wilk*, 635 F.2d at 1300) (internal quotes omitted).

[18]*Id.* (citing *Superior Oil Co. v. Am. Petrofina Co.*, 785 F.2d 130, 130 (5th Cir. 1986)) (internal quotes omitted).

[19]Def.'s Mem. in Opp. (doc. 3339), p. 5.

precluded in the Cavanuagh litigation that the Cavanaugh plaintiffs would obtain by modification of the protective order in this case. Without a more specific identification of the precluded discovery that the Cavanaugh plaintiffs will be able to obtain through modification of the protective order, the Court cannot conclude that the Cavanaugh plaintiffs' purpose in seeking to intervene to modify the protective order is to subvert discovery limitations in their case.

The Court finds that in this case Defendant has not shown that modifying the protective order as requested by the Cavanaugh plaintiffs would tangibly prejudice substantial rights. The Court will therefore permit the Cavanaugh plaintiffs to intervene for the limited purpose of allowing Plaintiffs (and their counsel) to exchange information with the Cavanaugh plaintiffs (and their counsel) which has been produced by Defendant and under the premise that confidential information exchanged will be covered under the protections of the Protective Order previously entered in this case.

>    *3.  Does the injury to Defendant outweigh the benefit of any possible modification of the protective order?*

If Defendant demonstrates prejudice, then the Court has broad discretion in judging whether injury outweighs the benefits of any possible modification of the protective order. In this case, Defendant has not demonstrated that modifying the protective order would tangibly prejudice any substantial right. The Court therefore need not address the third and final inquiry in determining whether to modify a protective order to allow a intervening party access to confidential discovery, i.e., whether the injury to Defendant outweighs the benefit of any possible modification of the protective order.

**IT IS THEREFORE ORDERED** that the Motion to Intervene for the Limited Purpose of Seeking to Modify Protective Order (doc. 3270) filed by the Cavanaugh plaintiffs is granted. The

Cavanaugh plaintiffs are hereby granted leave to intervene in this action for the limited purpose of seeking to modify the Stipulated Protective Order previously entered in this litigation.

**IT IS FURTHER ORDERED** that the Stipulated Protective Order (doc. 52) is hereby amended to permit Plaintiffs in this case (and their counsel) to exchange materials designated as "confidential" by Defendant with the Cavanaugh plaintiffs (and their counsel). The Cavanaugh plaintiffs (and their counsel) shall be subject to the restrictions on use and disclosure contained in the Stipulated Protective Order entered in this case.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiffs' Supplemental Memorandum in Support of Cavanaugh Plaintiffs' Motion to Intervene for Limited Purpose of Seeking to Modify Protective Order and Motion to Modify Protective Order (doc. 3575) is denied.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 17th day of February, 2006.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:    All counsel