IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHIRLEY WILLIAMS, et al.,

      Plaintiffs,

v.                              Case No.  03-2200-JWL-DJW

SPRINT/UNITED MANAGEMENT CO.,

      Defendant.

### MEMORANDUM AND ORDER

Plaintiff Shirley Williams brings this lawsuit on behalf of herself and others similarly situated asserting that her age was a determining factor in Defendant's decision to terminate her employment during a reduction-in-force (RIF). This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and the parties are presently engaged in discovery concerning the merits of Plaintiffs' pattern and practice allegations.

In a Memorandum and Order dated July 1, 2006, and after a full evidentiary hearing on the issue, this Court held that sixty-five adverse impact/due diligence documents inadvertently disclosed by Defendant to Plaintiffs are protected from disclosure by the attorney-client privilege. The matter is currently before the Court on Plaintiffs' Motion for Reconsideration (doc. 4234). For the reasons stated below, Plaintiffs' Motion will be denied.

### Standard for a Motion to Reconsider

Pursuant to D. Kan. Rule 7.3, motions seeking reconsideration of non-dispositive orders must be based on "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."[1]

---

[1] The Tenth Circuit has adopted the same standard. *See, e.g., Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

A motion to reconsider is not a second chance for the losing party to ask the Court to revisit issues already addressed or to consider new arguments and facts that could have been presented originally.[2] Nor is a motion to reconsider to be used as "a second chance when a party has failed to present it strongest case in the first instance."[3] Reconsideration may, however, be appropriate "where the court has misapprehended the facts, a party's position, or the controlling law."[4]

To that end, Plaintiffs seek reconsideration on the following grounds:

I.  Reconsideration is necessary to correct clear error or prevent manifest injustice in that

  A.  The Court failed to consider the following arguments presented by Plaintiffs:

    1.  Portions of the adverse impact documents found to be attorney-client privileged contain only non-privileged underlying facts.

    2.  Many documents found by the Court to be protected by attorney-client privilege were created before Jill Ferrel's October 5, 2001 Memo.

    3.  Many documents found by the Court to be protected by attorney-client privilege had a business purpose independent of any legal purpose.

    4.  Defendant claims only work product protection in their privilege log for documents found by the Court to be protected by the attorney-client privilege.

    5.  Testimony regarding three of the adverse impact documents was not based on personal knowledge of the witness who testified about those documents.

  B.  There is insufficient evidence to support the Court's factual finding that

    1.  adverse impact documents ("the communications") were made in confidence;

    2.  adverse impact documents ("the communications") were sent to counsel.

  C.  The Court failed to apply the correct legal standard regarding attorney-client privilege.

II. Reconsideration is necessary due to availability of new evidence.

---

[2]*Servants*, 204 F.3d at 1012

[3]*Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 664 (D. Kan. 2004).

[4]*Id.*; *Servants*, 204 F.3d at 1012.

**Analysis**

I.  **Reconsideration in Order to Correct Clear Error or Prevent Manifest Injustice**

    A.  **Plaintiffs' Claim that the Court Failed to Address Selected Arguments**

        *1.  Plaintiffs' assertion that portions of the adverse impact documents found to be attorney-client privileged contain only non-privileged facts.*

Plaintiffs assert the July 1, 2006 Order does not address Plaintiffs' argument that a portion of each adverse impact document found by the Court to be protected from disclosure by the attorney-client privilege contains non-privileged data compilations gathered from non-privileged documents; thus, those portions of the privileged documents should be deemed discoverable regardless of whether other portions of the page are privileged.

As a preliminary matter, the Court notes this particular argument -- that selected portions of the inadvertently disclosed documents do not contain adverse impact analyses, but only underlying factual data -- is inappropriately made by Plaintiffs for the first time on reconsideration and will be denied for that reason.

With that said, however, the Court finds the July 1, 2006 Memorandum and Order adequately addresses the broader issue of attorney-client privileged communications to find that the information within the adverse impact documents -- whether extracted from the Master and RIF Lists or calculated utilizing a formula provided by counsel -- consists of a communication made in confidence for the purpose of obtaining legal advice:

> Defendant maintains it conducted a statistical analysis comparing the demographic data (gender, race and age) of employees targeted for lay off to the demographic data of those who would be retained. Defendant further maintains this "adverse impact" or "due diligence" analysis was performed at the specific request of its attorneys for the purpose of obtaining legal advice regarding the statistical impact on the various groups under the discrimination laws. Defendant maintains that sixty-one of the

inadvertently produced documents are such statistical analyses undertaken at the direction of attorneys. Accordingly, Defendant argues the "adverse impact" and "due diligence" documents and information inadvertently produced are protected from disclosure by the attorney-client privilege and thus must be returned.

Plaintiffs disagree, arguing the "adverse impact" and "due diligence" documents are not protected from disclosure by the attorney-client privilege because they are not analyses undertaken at the direction of attorneys but instead are merely data compilations independently generated and utilized by employees within Defendant's Human Resource Department.[5]

\* \* \* \* \*

Applying [the] legal standards to the facts presented, the Court concludes the adverse impact documents inadvertently disclosed by Defendant and submitted for *in camera* review by the Court are protected from disclosure by the attorney-client privilege. In other words, the evidence presented by Defendant sufficiently demonstrates that the adverse impact/due diligence documents were generated at the direction of counsel – pursuant to the Ferrel Memo – for the purpose of rendering legal advice and, after such generation, were then provided to counsel for analysis.[6]

\* \* \* \* \*

The Court finds Defendant's due diligence matrices and adverse impact spreadsheets were made at the direction of Defendant's Law Department in order to secure legal advice from counsel and were not mere compilations of non-privileged business data and underlying facts. In support of this finding, the Court relies on the October 5, 2001 Ferrel Memo submitted *in camera* and filed under seal, which specifically directs Defendant's HR Department to gather designated information so that its Law Department can perform adverse impact analyses in connection with Defendant's RIF. The evidence establishes that Defendant's HR personnel followed the specific methodology outlined by Ferrel in her October 5, 2001 memo in creating these documents. More specifically, the methodology outlined by the Ferrel Memo included data entry in various combinations utilizing a formula and format provided by the Law Department.[7]

\* \* \* \* \*

---

[5]July 1, 2006 Memorandum and Order at pp. 6-7 (doc. 4213).

[6]*Id.* at p. 12.

[7]*Id.* at p. 13.

4

> Simply put, the evidence demonstrates that the written communications here – the due diligence matrices and adverse impact spreadsheets – were made at the direction of the Law Department in order to secure legal advice from counsel and were not mere compilations of non-privileged business data and underlying facts [citations omitted]. Notably, Defendant has not made a claim of privilege for – and, in fact, has produced – the relevant, underlying data (e.g., Master List and RIF List) from which Plaintiffs may make their own adverse impact analysis using the "four-fifths rule" included within the EEOC Guidelines. And, even if – as a result of legal advice – an employee was added or deleted from the RIF List, Plaintiffs still are free to inquire of the actual decision makers as to the basis of their termination decisions.[8]

It makes no difference that portions of these attorney-client privileged written communications contain non-privileged data extracted from the Master List and the RIF List. First of all, there is no dispute that the Master and RIF Lists – and thus the entirety of the non-privileged data at issue – already have been produced to Plaintiffs. Moreover, the evidence shows the information at issue was extracted from the Master and RIF Lists and thereafter placed in the adverse impact analyses document in order to facilitate the giving of legal advice by counsel. As noted in the Court's July 1, 2006 Order, "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing."[9] More specifically, "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney."[10]

---

[8] *Id.* at pp. 15-16.

[9] *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (emphasis in original) (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962).

[10] *Id.* at 396.

### 2. *Many documents found by the Court to be protected by attorney-client privilege were created before Jill Ferrel's October 5, 2001 Memo*

Plaintiffs request reconsideration of the Court's finding on grounds that the Court did not discuss evidence submitted by Plaintiffs regarding creation dates for some of the documents at issue. More specifically, Plaintiffs argue the following evidence indisputably establishes some of the adverse impact documents were created before the October 5, 2001 Ferrel memorandum:

- the metadata reflects that some of the documents at issue were created prior to the October 5, 2001 Ferrel Memo;

- reconciling the "employee start date" information with the "years of service" information for each employee reflects that some of the documents were created prior to the October 5, 2001 Ferrel Memo; and

- privilege log entries reflect that many of the documents were created prior to the October 5, 2001 Ferrel Memo.

The Court is not persuaded by Plaintiffs' argument. As a preliminary matter, the adverse impact documents at issue were created as "tabs" or sub-documents of the same, larger electronic document, which also contained the Master List and the RIF List.[11] Thus, these three separate Excel worksheets (Master List, RIF List and Adverse Impact Matrix) were merely pages within one larger electronic document. Witnesses testified it was only after being directed by counsel to create the adverse impact analyses that HR personnel used the Master Lists and the RIF Lists to create the adverse impact documents.[12]

---

[11] Testimony of Scott Winkler, Sealed Transcript of Proceedings Held on 3/02/2006 at p. 26, lines 7-19 (doc. 3742); Testimony of Jim Kissinger, Sealed Transcript of Proceedings Held 3/10/2006 at p. 114, line 2 through 115, line 2 (doc. 3820).

[12] Testimony of Scott Winkler, Sealed Transcript of Proceedings Held on 3/02/2006 at p. 26, lines 7-19, p. 30, line 11 through p. 31, line 10, and p. 52 (doc. 3742); Testimony of Jim Kissinger, Sealed Transcript of Proceedings Held 3/10/2006 at p. 114, line 25 through 115, line 15 (doc. 3820); Testimony of Deborah Sprayberry, Sealed Transcript of Proceedings Held 3/10/2006 at p. 131 (doc. 3820).

Thus, although metadata, employee "start" dates and various privilege log entries reflect a pre-Ferrel memorandum creation date for the larger electronic document, such evidence does not persuade the Court that the actual adverse impact "sub-document" at issue was created prior to the Ferrel memo. Plaintiffs offer no evidence that the Master and RIF Lists were created at the same time as the adverse impact documents. Conversely, there is a great deal of evidence demonstrating that the Master List and the RIF List had numerous uses separate and apart from the adverse impact documents and thus were created before the adverse impact matrices.[13]

### 3. *Many documents found by the Court to be protected by attorney-client privilege had a business purpose independent of any legal purpose*.

In their Motion for Reconsideration, Plaintiffs also argue the Court failed to address their argument that many of the documents found by the Court to be protected by attorney-client privilege had a business purpose within the human resources department independent of any legal purpose. The Court disagrees, finding that the July 1, 2006 Memorandum and Order specifically addresses this issue. First of all, the Ferrel Memo is quite explicit about the legal purposes for which the adverse impact documents are being requested.[14] Moreover, there were several witnesses at the hearing who testified that the adverse impact documents were generated for the purpose of counsel's

---

[13]Testimony of Scott Winkler, Sealed Transcript of Proceedings Held on 3/02/2006 at pp. 26, 28-29, 30-31, 32-33, 36-37, 40-42, 44-45, 57-66 (doc. 3742); Excerpt from Eric Rice Deposition, Sealed Hearing Exhibit DDD at pp. 7-18; Testimony of Scott Winkler, Jim Kissinger, Deborah Sprayberry and Gina Eisler, Sealed Transcript of Proceedings Held 3/10/2006 at pp. 8-9, 57-59, 74, 114-115, 129-133, 160, 165-169 (doc. 3820); Sealed Hearing Exhibit GGG (binder containing privileged emails submitted to the Court for *in camera* review).

[14]The Ferrel Memo, Sealed Hearing Exhibit FFF.

rendering legal advice.[15]  Finally, the Court found that adverse impact documents ultimately were transmitted and/or delivered to Defendant's Legal Department for the purpose of rendering legal advice.[16]

Conversely, Plaintiffs offer no evidence that the adverse impact documents at issue were generated for any purpose other than rendering legal advice.  Instead, Plaintiffs offer testimony that Defendant sometimes give business decisions a preliminary "sore thumb" review and attempts, as a good business practice, to make sure that business decisions do not appear discriminatory. The Court finds that this evidence is immaterial to the issue presented: whether the adverse impact documents at issue were communications made in confidence for the purpose of obtaining legal advice.

### 4. *Defendant claims only work product protection in their privilege log for documents found by the Court to be protected by the attorney-client privilege*

Plaintiffs next claim the Court erred in finding all adverse impact documents protected from disclosure by the attorney-client privileged when the evidence presented by Plaintiffs showed that some of the documents were never listed on a privilege log and, out of those that were, some were designated by Defendant in the log to be protected only by the work product doctrine. Plaintiffs

---

[15]Testimony of Scott Winkler, Sealed Transcript of Proceedings Held on 3/02/2006 at pp. 28, 38-39, 42, 45, 52 (doc. 3742); Testimony of Scott Winkler, Jim Kissinger, Deborah Sprayberry, Sealed Transcript of Proceedings Held 3/10/2006 at pp. 57, 59, 73, 131, 165 (doc. 3820).

[16]At the hearing, Defendant submitted Exhibit GGG to the Court *in camera.*  More specifically, Exhibit GGG is a binder containing privileged e-mails establishing that the majority of the adverse impact documents were e-mailed directly to Defendant's counsel. Defendant presented further evidence at the hearing that adverse impact documents often were personally delivered during meetings with counsel on Defendant's campus.  Testimony of Scott Winkler, Jim Kissinger, Deborah Sprayberry, Sealed Transcript of Proceedings Held on 3/10/2006 at pp. 57, 73, 131-132, 165 (doc. 3820); Excerpt from Eric Rice Deposition, Sealed Hearing, Exhibit DDD at pp. 6-7.

make this claim of error with regard to two categories of adverse impact documents: first, those specific and identifiable adverse impact documents that were part of the inadvertent disclosures at issue; and second, those documents similar to the inadvertently produced adverse impact/due diligence documents that are currently being withheld by Defendant.

Although not specifically addressed in its July 1, 2006 Memorandum and Order, the Court notes that it did consider -- and ultimately reject -- Plaintiffs' claims here. The Court further notes, however, that the Court did not explain its conclusions on the issue. Thus, while the Court finds that there is no reason to grant reconsideration of this issue, the Court will explain its reasoning in an effort to be thorough.

The starting point is Fed. R. Civ. P. 26(b)(5), which sets forth the rule regarding notification when a claim of privilege is asserted:

> When a party withholds information that is otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.[17]

### a.     Inadvertently Disclosed Documents

As a preliminary matter, the Court notes that the Rule 26(b)(5) privilege notification requirements are not applicable to the inadvertently disclosed documents here because the documents at issue were not *withheld* pursuant to claim of privilege but, instead, were actually produced. Moreover, although privilege logs are the manner in which most litigants provide required information about allegedly privileged documents, Rule 26(b)(5) does not specifically require a privilege log. The rule requires only that the claim of privilege or protection be made expressly and

---

[17]Fed. R. Civ. P. 26(b)(5).

that it "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. or which a privilege is claimed withheld pursuant."[18]  Here, the adverse impact documents at issue were actually produced to Plaintiffs by Defendant.  Because the documents were inadvertently produced and then recalled on grounds of privilege, and because Plaintiffs were thus able to review the allegedly protected documents in their entirety, the Court finds that all of the disclosure requirements of Rule 26(b)(5) have been satisfied with regard to the inadvertently produced documents.

                                                b.        *Documents "Similar" to Inadvertently Produced Documents*

In its July 1, 2006 Memorandum and Order, and in conjunction with its finding that the inadvertently disclosed documents were protected from disclosure by the attorney-client privilege, the Court denied Plaintiffs' request for production of all documents similar to the inadvertently produced adverse impact/due diligence documents.[19]  Plaintiffs assert this decision was erroneous because Defendant asserts only work product protection – and not protection based on the attorney-client privilege – for many of the "document[s] similar to the inadvertently produced adverse impact/due diligence documents." Thus, Plaintiffs argue Defendant has waived the attorney-client privilege for these documents.  Although the Court acknowledges that there may be some adverse impact documents listed in the privilege log for which Defendant did not designate protection based on the attorney-client privilege, the Court finds -- given the circumstances presented -- a sanction of waiver is too harsh.

---

[18]*Id.*

[19]July 1, 2006 Memorandum and Order at p. 27 (doc. 4213).

10

It is true that Fed. R. Civ. P. 26(b)(5) requires a party to categorically describe the privilege asserted[20]. It is also true that failure to comply with Fed. R. Civ. P. 26(b)(5) may result in waiver of the attorney-client privilege and/or work-product protection.[21] Although this result is not mandated by the federal rules, the Advisory Committee contemplated the sanction: "[t]o withhold materials without [providing notice as described in Rule 26(b)(5) ] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege."[22] Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver.[23]

Here, the issue of whether adverse impact/due diligence documents are protected from disclosure has long been a highly disputed issue subject to literally hundreds of pages of briefing over the course of the last two years. Based on the circumstances presented, the Court finds a sanction of waiver too harsh; thus, Defendant is not deemed to have waived any protection for documents listed in its privilege log based on its designation of adverse impact/due diligence documents as protected by only work product and not attorney-client privilege.

---

[20] Fed. R. Civ. P. 26(b)(5).

[21] 8 Charles Alan Wright, Federal Practice and Procedure § 2016.1, at 228-29 (2d ed.1994).

[22] Fed. R. Civ. P. 26(b)(5) advisory committee's note (1993).

[23] *See First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361-63 (D.Kan.1995) (collecting cases), *rev'd on other grounds*, 101 F.3d 645 (10th Cir.1996).

11

### 5. *Testimony regarding three of the adverse impact documents was not based on personal knowledge of the witness who testified about those documents*

Plaintiffs next contend the Court erred in failing to address their argument that the testimony regarding three of the adverse impact documents was not based on the witnesses' personal knowledge of those documents. The Court rejects Plaintiffs' contention.

As the parties noted to the Court at the outset of this review process, the Court's decision regarding whether the sixty-one inadvertently disclosed adverse impact documents are protected from disclosure by the attorney-client privilege is a decision that would likely be applied to the additional 1000+ adverse impact documents *not* inadvertently disclosed.[24] The parties never requested, nor did the Court ever intend to require, that an evidentiary foundation be established for each and every document at issue. The purpose of the hearing was to establish whether Defendant could prove the elements of the attorney-client privilege for the adverse impact/due diligence documents.

The fact that some of the witnesses who testified may not personally have created or received the documents at issue does not equate to a lack of knowledge regarding the purpose of the documents. The Court considered the Ferrel Memo itself (which mirrors the documents at issue) and the testimony regarding other adverse impact documents in concluding that all of the adverse impact documents inadvertently disclosed were protected from disclosure by the attorney-client privilege. Simply put, Plaintiffs' argument here is without merit.

---

[24]Transcript of February 16, 2006 Hearing, (doc. 3629) at pp. 5-9.

### B. Plaintiffs' Claim of Insufficient Evidence to Support the Court's Factual Findings

#### 1. *Plaintiffs' claim of insufficient evidence to support the Court's finding that the adverse impact documents ("the communications") were made in confidence*

Plaintiffs assert the Court factually erred in finding that Defendant treated the adverse impact documents as confidential. First, Plaintiffs claim the Court's citation to pages 24 and 25 within Eric Rice's deposition transcript does not support the proposition for which it was cited – that the confidentiality of the adverse impact documents was protected by a password available only to legal counsel and human resources personnel. Upon review of the referenced citation, however, the Court notes the Memorandum and Order cites to pages 24 and 25 of Exhibit DDD, which is not the deposition transcript, but instead is a summary of the Eric Rice's deposition submitted as evidence at the hearing. Accordingly, the evidence cited by the Court fully supports the Court's finding that the confidentiality of the adverse impact documents was protected by a password available only to legal counsel and human resources personnel.

Next, Plaintiffs claim the confidential marks on most of the documents should not be taken into account because they appear in an Excel footer as opposed to the body of the document. The Court rejects this new argument – raised for the first time in conjunction with the pending motion – on grounds that it is not an appropriate argument for reconsideration. A motion to reconsider is not to be used as "a second chance when a party has failed to present it strongest case in the first instance."[25] With that said, the Court would reject the argument even if it was not new; in other words, such argument in and of itself does not negate the Court's original finding that most of the documents were marked confidential – regardless of whether the marking was in the footer.

---

[25] *Sonnino*, 221 F.R.D. at 664 (citations omitted).

Plaintiffs next claim the Court erred in its confidentiality finding given evidence presented that the adverse impact documents were received by two human resources employees who may have been part of the legal process but did not specifically "need" to receive them in order for counsel to give legal advice. The Court rejects this claim. The Court supported its finding of confidentiality with substantial evidence, including the use of a password available only to the legal and human resources departments, "confidential" markings, the Ferrel Memo and various witnesses who testified about the information's confidential nature.[26] Even if, as Plaintiffs argue, it was not categorically imperative for these two particular human resources managers working on the RIFs to transmit the privileged documents to counsel, this is not enough to reject the conclusion that these two individuals received the documents during the course of giving or receiving of legal advice. The facts presented by Plaintiffs are not enough to overcome the Court's finding, supported by evidence, that Defendant kept the documents confidential.

### 2.   *Plaintiffs' claim of insufficient evidence to support the Court's finding that the adverse impact documents ("the communications") were sent to counsel*

In this point, Plaintiffs assert the Court erred in specifically finding that every single adverse impact document was ultimately provided to counsel. Upon reconsideration and review of the hearing transcripts, the Court agrees and finds that there may not have been testimony to establish that each and every one of the sixty-one identical adverse impact documents was forwarded to counsel. For the reasons stated below, however, the Court finds adequate evidence to demonstrate that these adverse impact documents are protected from disclosure by the attorney-client privilege.

Almost identical to an issue thoroughly discussed in the Court's February 1, 2006

---

[26] July 1, 2006 Memorandum and Order at p. 17 (doc. 4213).

Memorandum and Order, the question presented here is the extent to which legal counsel must be involved in a communication in order to establish the elements required to invoke the attorney-client privilege. After a thorough discussion of the facts presented and the applicable law, this Court specifically held in the February 1, 2001 opinion that the essential elements of the attorney-client privilege do not necessarily require an attorney to have received the document at issue in order to maintain the privilege. "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[27]

Thus, the Court finds that, although there may not have been testimony to establish that each and every one of the adverse impact documents was forwarded to counsel, Defendant presented adequate evidence – as specifically described in this Court's July 1, 2006 Memorandum and Order – to demonstrate that these adverse impact documents reflect communications made in confidence for the purpose of obtaining legal advice from a lawyer.

### C. Plaintiffs' General Claim that the Court Failed to Apply the Correct Legal Standard regarding the Attorney-Client Privilege

The Court rejects Plaintiffs' general claim that the Court failed to recognize several legal principles of the attorney-client privilege. More specifically, the Court finds it explicitly and repeatedly considered, explained, and otherwise discussed (a) that the privilege protects only confidential communications made for the purpose of legal advice; (b) that the privilege protects communications, not the underlying facts; and (c) that Defendant has the burden of establishing all elements of the privilege.

The Court also rejects Plaintiffs claim that they are entitled to reconsideration of the Court's finding that Defendant's good faith defense does not waive the attorney-client privilege. Plaintiffs

---

[27]*United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

provide no authority to support their claim that an assertion of good faith by Defendant in its pleadings waives the attorney-client privilege. This claim is identical to the argument previously made by Plaintiffs, an argument the Court already has considered and rejected.

### II.     Plaintiffs' Claim that Reconsideration is Necessary Due to Availability of New Evidence

Plaintiffs' final argument in support of reconsideration is that they have new evidence to support their position. Although it is true that new evidence may be appropriate in a motion to reconsider, Plaintiffs' argument here must fail. First and foremost, there is no indication that the "new evidence" is actually new. Plaintiffs admittedly have had the email at issue since December 2005. The new evidence rule does not apply to evidence that was previously available, but not presented in the original briefing.[28]

Second, even if Plaintiffs had originally presented the email, the Court finds the context of the email in question refers to feedback by human resources regarding a manager's evaluation of employee performance. That Defendant attempted, one day prior to the day the Ferrel Memo was distributed, to make sure that a business decision did not appear discriminatory is immaterial to the actual issue presented: whether the actual adverse impact documents at issue were created at the direction of the legal department for the purpose of rendering legal advice.

### Conclusion

Based on the discussion set forth above, it is hereby ordered that Plaintiffs' Motion for Reconsideration (doc. 4234) is denied.

---

[28]*Sonnino*, 221 F.R.D. at 664 ("It is well settled that a motion to reconsider is not a second chance for the losing party to ask the Court to revisit issues already addressed or to consider new arguments and supporting facts that could have been presented originally.") (citations omitted).

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 13th day of September, 2006.

s/ David J. Waxse<br>
David J. Waxse<br>
United States Magistrate Judge

cc:   All counsel and *pro se* parties