IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHIRLEY WILLIAMS, et al.,

                  **Plaintiffs,**

                                    **CIVIL ACTION**

v.

                                    **No. 03-2200-JWL-DJW**

SPRINT/UNITED MANAGEMENT
COMPANY,

                  **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated, asserting that her age was a determining factor in Defendant's decision to terminate her employment during a reduction-in-force (RIF). This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and the parties are presently engaged in discovery concerning the merits of Plaintiffs' pattern and practice allegations. This matter is presently before the Court on Plaintiffs' Motion to Compel Defendant to Produce Attachments to E-Mails (doc. 4244) and Plaintiffs' Motion to Compel Defendant to Produce Transmittal E-Mails in Native Format (doc. 4245). As explained below, Plaintiffs' Motion to Compel Defendant to Produce Attachments to E-Mails is denied as moot and Plaintiffs' Motion to Compel Defendant to Produce Transmittal E-Mails in Native Format is denied.

## I.     History of the Discovery Dispute

The present motions before the Court are the culmination of a long-standing dispute between

the parties with regard to Defendant's production of e-mails that transmitted the RIF selection

spreadsheets.  Early in the case, Plaintiffs sought discovery of spreadsheets created and used by

Defendant in its process of determining which employees would have their employment terminated

during a series of RIFs occurring during the time period October 1, 2001 through March 31, 2003.

A series of discovery disputes arose with regard to these RIF selection spreadsheets, including, *inter*

*alia*, the format they were to be produced in, the redaction of social security numbers, and whether

certain sections of the spreadsheets contained privileged information.  Eventually, Defendant was

ordered to produce the non-privileged sections of these RIF spreadsheets in their native electronic

format.  As a result of the discovery disputes, Defendant's production of the RIF spreadsheets was

not a single discrete production of documents, but became a series of rolling productions that

changed in response to the Court's discovery rulings.

At some point during the course of discovery, Plaintiffs discovered that the RIF selection

spreadsheets created during Defendant's RIF selection process were primarily transmitted within the

organization by e-mail.  The individual creating the RIF selection spreadsheets would transmit the

spreadsheet as an attachment to an e-mail.  Plaintiffs thereafter requested that Defendant produce

these transmittal e-mails.

At the May 5, 2005 discovery conference, Plaintiffs raised the issue of Defendant's failure

to produce RIF candidate selection spreadsheets and other basic RIF documents, such as HR notes

and other documents regarding the RIF decisions.  The Court ordered Defendant to produce these

documents by June 1, 2005, or show cause why they were not able to do so.[1]

At the June 2, 2005 discovery conference, Plaintiffs requested that Defendant produce the

---

[1]*See* May 5, 2005 Transcript ("Tr.") p. 27.

e-mails that transmitted the RIF selection spreadsheets.  After objecting that Plaintiffs had not made

a formal request for cover e-mails, Defendant's counsel indicated that he did not know how to begin

the process of finding cover e-mails, but would begin by looking at e-mails adjacent to the

spreadsheets.[2]

At the June 9, 2005 hearing, the Court continued the prior Show Cause Order with regard to

spreadsheets in native format, HR minutes, and e-mails transmitting spreadsheets:

| | |
|---|---|
| THE COURT: | Okay, for today on this issue we'll leave the show cause that you're going to do the electronic spread sheets by [June] 24th and you're going to do, as I recall there was other documents other than minutes relating to the meetings. Wasn't that as part of what you were going to do? |
| DEFENDANT'S COUNSEL: | Yes, and this third thing would be the transmittal e-mails if we could locate those with the spread sheets.  Now with the Excel, names we may be able to track back through the E-mails and try to find that. |
| THE COURT: | Okay, those three things we'll leave the show cause in. . . .[3] |

The Order memorializing the Court's rulings from the June 9, 2005 discovery conference

reflected that the Court's previous Show Cause Order to Defendant remained on three categories of

documents: Electronic version of Excel and other spreadsheets, other documents (other than

Minutes) relating to the RIF meetings, and E-mails accompanying the spreadsheets.[4]

---

[2]*See* June 2, 2005 Tr. p. 32.

[3]*See* June 9, 2005 Tr. pp. 17-18.

[4]*See* June 16, 2005 Order (doc. 2953).

At the next discovery conference on June 16, 2005, Defendant acknowledged that it had agreed to produce all e-mails transmitting spreadsheets to the extent it could find them. It indicated that this required an investigation of how the transmittal e-mails were maintained and whether they were maintained together with their attachments. It stated that it understood its obligation under the rules to be produce them as it found them and referenced District Judge Lungstrum's earlier guidance from the April 26, 2005 hearing to "Play it like it lies."[5] The Court's corresponding June 22, 2005 Order directed Defendant to produce, *inter alia*, "all emails transmitting spreadsheets."[6] The Court's Order, however, did not specify the form in which Defendant was to produce the e-mails transmitting the spreadsheets. Defendant thereafter produced the transmittal e-mails to Plaintiffs as paper documents.

At the July 7, 2005 discovery conference, Plaintiffs reported that Defendant had produced the transmittal e-mails, but they were produced separate and apart from the actual spreadsheets they transmitted and were not produced electronically. Plaintiffs showed the Court the difficulty in manually matching the transmittal e-mails produced in hard copy to the spreadsheets they

---

[5]At the April 26, 2005 hearing, District Judge Lungstrum made the following comment with regard to the form of production of discovery:

> I think we have to keep in mind that from the defendant's perspective -- to the extent that you're asking for information that they have got to go chase down, it's not the defendant's fault for the purpose of this case that they don't keep their records in a form that's more easily discoverable, yet on the other hand, that's not an excuse not to give it up either if they have got it some place. I mean, it cuts both ways. I mean, we have to play it like it lies. *See* April 26, 2006 Tr. p. 39.

[6]*See* doc. 2964.

transmitted, which were produced separately in their native, electronic format.[7]

In Defendant's Second Supplemental Response To the Court's June 16, 2005 Order to Show Cause, filed on July 21, 2005,[8] Defendant advised the Court that it continued its efforts to match the transmittal e-mails with spreadsheets. It further advised that matching e-mails with spreadsheets was a time-consuming process involving resources who were also working to produce documents responsive other discovery requests, and that "[a]s those e-mails are identified and prepared, they will be produced in batches as completed."

At the July 21, 2005 discovery conference, Plaintiff again raised the issue of Defendant's separate production of the transmittal e-mails and the spreadsheets that they transmitted. Defendant denied Plaintiffs' accusation that it had purposely detached the transmittal e-mails from their attachments before they were produced to Plaintiffs. It reconfirmed what it had previously agreed to do, i.e., try to find e-mails that happen to be adjacent to the documents as they were originally collected. It further stated that it was making a good faith effort to at least find the e-mails that are adjacent to the existing spreadsheets so that it could get those to Plaintiffs.[9]

Plaintiffs reported to the Court for the August 18, 2005 discovery conference that they had not received any of the transmittal e-mails reproduced with the spreadsheets adjacent or attached. Defendant advised the Court that the transmittal e-mails were a work in process and it would produce everything it was able to locate that was responsive to Plaintiffs' request for the transmittal

---

[7]*See* July 7, 2005 Tr. ¶. 46-47.

[8]Doc. 3105.

[9]*See* July 21, 2005 Tr. pp. 14-15.

e-mails.  The Court's corresponding August 19, 2005 Order[10] ordered Defendant to "produce the

transmittal e-mails attached or adjacent to spreadsheets, previously ordered produced at the July 21,

2005 discovery conference" by August 26, 2005.

At the September 1, 2005 discovery conference, Plaintiffs stated that they received a disk

from Defendant containing several e-mails, but no attached or adjacent spreadsheets.[11]  Defendant

responded that it had produced the e-mails it was ordered to produce and it produced them in the way

they were maintained.[12]  It maintained that it did not purposely detach the transmittal e-mails from

their attachments; the e-mails became detached prior to the collection efforts that were undertaken

in order to collect the documents in the first place.[13]  Defendant admitted that it did not go back and

put the transmittal e-mails back together with their attachments, but produced them as they were

maintained.  Following this explanation, the Court questioned Defendant about how to link the

separately produced transmittal e-mails to the RIF spreadsheets they transmitted as attachments:

| | |
|---|---|
| THE COURT: | Well, how do we connect the e-mails to the spreadsheets they originally were with? |
| DEFENDANT'S COUNSEL: | You're going to have to go back and -- we've given them the electronic files, so they're going to have to go back and do exactly what we would have to do, which is go back and figure out what electronic files marry up with what documents. |
| THE COURT: | How do you figure out which e-mail to give |

---

[10]Doc. 3174.

[11]*See* Sept. 1, 2005 Tr. p. 52.

[12]*See* Sept. 1, 2005 Tr. p. 55.

[13]*See* Sept. 1, 2005 Tr. p. 54.

| | |
|---|---|
| | them without doing that? |
| DEFENDANT'S COUNSEL: | Judge, I candidly don't know the answer to it other than we pulled all the e-mails. There is a way to find an e-mail file maintained electronically. |
| THE COURT: | You were only going to send the e-mails that were attached or adjacent to spreadsheets. |
| DEFENDANT'S COUNSEL: | Right. |
| THE COURT: | There had to be a connection made as some point. |
| DEFENDANT'S COUNSEL: | We found which ones had spreadsheets attached to them. We did not go back to the next step to see if it was a spreadsheet produced because we were producing all spreadsheets. |
| THE COURT: | Okay. Well, it would seem to me there must be some documentation used to create this disk that's got these e-mails on it. |
| DEFENDANT'S COUNSEL: | All we did was look through the electronic files we maintained, Your Honor, and what we did was we looked for the document MSG file indication that would show it's a message, e-mail message. We pulled those to see which ones had attachments to them, pulled those to see if they were spreadsheets, and then we produced them because we had the time crunch, we had to produce these.[14] |

Paragraph 12 of the Order from the September 1, 2005 discovery conference clarified that

"the Court intended for Defendant to produce the transmittal e-mails in a way that Plaintiffs could

---

[14]*See* Aug. 26, 2005 Tr. pp. 54-56.

readily identify the spreadsheets to which the transmittal e-mails were attached."[15]  It further ordered

the parties to be prepared to discuss their respective proposals to resolve the problem of matching

up the transmittal e-mails with their respective spreadsheet attachments at the next discovery

conference.[16]

At the September 19, 2005 hearing, Defendant presented its proposal to provide a

Spreadsheet Report that would cross-reference the transmittal e-mails to the spreadsheets that had

been separately produced.[17]  In light of this proposal, Plaintiffs withdrew their request that Defendant

be ordered to produce the transmittal e-mails with the corresponding spreadsheets attached or

adjacent.[18]

The transmittal e-mail issue was discussed again at the October 6, 2005 discovery

conference:

| | |
|---|---|
| PLAINTIFFS' COUNSEL: | At the last hearing we talked about an index that would basically correlate the two. Our proposal given Issue No. 3, the metadata issue, that defendant is going to be reproducing these anyhow. Our proposal would be that there was no reason for defendant not to go ahead and when it reproduces Disc A that had these, say 75 spreadsheets on it to go ahead and put the E-mail that's adjacent to that spreadsheet right there on the disc, and we've sent an E-mail requesting that, so our request on No. 2 would be in conjunction with the reproduction of |

---

[15]*See* Sept. 6, 2005 Order (doc. 3203).

[16]*Id.*

[17] *See* Sept. 19, 2005 Tr. ¶. 12-13.

[18]*See* Sept. 19, 2005 Tr. ¶. 13-17.

electronic Excels we could avoid this whole process of matching up for at least all of this last batch which defendant found by searching E-mails. They found them connected to the E-mail, so it's our proposal on Issue No. 2 is to see if that could happen. Then we do need a timetable for the index for those that we can't have reproduced adjacent to one another.[19]

\*        \*        \*

DEFENDANT'S COUNSEL:

The electronic E-mail issue is a very complicated and I think confounding issue here because of the manner in which they were done. These E-mails were printed when they were located and then the file that was going to be produced that was responsive was separate so that on the disc they are getting the files.

Also in those E-mails there may be contained and I don't know if they have seen those, there are a number of icons that indicate that there's more than one and only one of these would be responsive. There are also in E-mail strings, and I think you've seen those, where we redacted out attorney-client communications of that type of thing and so for us to go back and revisit all 11,000 of those would take us months to do. They have the E-mails that they need that are in the context. We have shown them and given them a report. Now that we have this process done, the report generation starting today, because we're matching them, that's one of the reasons we produced them in fairly small numbers on disc. I think it will be a fairly easy way for them to get context, where did this come from, what date, does it identify what organization, all of those things will be readily available to them. It would be

---

[19]*See* Oct. 6, 2005 Tr. ¶. 8-9.

very, very difficult for us at this point to go
back and try to revisit all of this electronically.
It would take months.[20]

In their List of Issues for the November 17, 2005 discovery conference, Plaintiffs reported

that they received the transmittal e-mails with the Spreadsheet Report on November 3, 2005, and

they were in the process of reviewing the Spreadsheet Reports.  At the discovery conference,

Plaintiffs expressed their dissatisfaction with the Spreadsheet Reports prepared by Defendant.

Plaintiffs again requested that, at least on a going forward basis, Defendant produce the transmittal

e-mail in its native format along with its attached spreadsheet in its native format.[21] At that point,

Defendant's counsel stated, "Judge, as far as I know there's nothing left to go forward. These have

been produced. We have made our tender of these documents."[22]

Plaintiffs subsequently made efforts to use the Spreadsheet Reports to match up the

transmittal e-mails with their respective attachments.  Following these unsuccessful further attempts

to match up the documents, Plaintiffs filed the motions presenting pending before the Court.

**II.      Motion to Compel Defendant to Produce Attachments to E-Mails (doc. 4244)**

In the first of the two related motions before the Court, Plaintiffs seek an Order compelling

Defendant to produce the thousands of attachments to RIF-related transmittal e-mails that Defendant

has withheld as allegedly "nonresponsive."  They argue that Defendant still has not produced many

spreadsheets and other RIF-related materials that were attached to the e-mails which transmitted

RIF-related spreadsheets.

---

[20]*See* Oct. 6, 2005 Tr. pp. 12-13.

[21]*See* Nov. 17, 2005 Tr. p. 29.

[22]*See* Nov. 17, 2005 Tr. p. 36.

Defendant urges the Court to deny this motion because it is moot and superfluous of Plaintiffs' Motion to Compel Sprint to Produce Transmittal E-mails in Native Format. Defendant states that the specific attachments sought by Plaintiffs have already been produced, are of the type of document Plaintiffs earlier stated Defendant should no longer produce, or are non-responsive to any of Plaintiffs' discovery requests. Nevertheless, as an attempt to accommodate Plaintiffs, Defendant states that it is in the process of re-producing the 2500 attachments in .tif image format and expects to have that production completed by no later than September 15, 2006. Thus, to the extent this motion seeks production of the 2500 attachments, it will be moot as of September 15, or as soon as Defendant completes the production. Defendant further asserts that the rest of Plaintiffs' motion is superfluous of their motion seeking production of transmittal e-mails in native format because once Defendant produces, or in some cases reproduces, the 2500 attachments, the only remaining issue with respect to this motion will be Plaintiffs' request that the 2500 attachments be produced in their native format.

Based upon Defendant's representation to the Court that it will reproduce the 2500 transmittal e-mail attachments sought by Plaintiffs, the Court finds this portion of the motion to be moot. The remaining relief requested by Plaintiffs' appears superfluous of their Motion to Compel Defendant to Produce Transmittal E-mails in Native Format, which the Court will address below. The Court therefore denies the entire motion as moot.

### III.   Plaintiffs' Motion to Compel Defendant to Produce Transmittal E-Mails in Native Format (doc. 4245)

Plaintiffs' Motion to Compel Defendant to Produce Transmittal E-Mails in Native Format requests an order compelling Defendant to produce its RIF-related transmittal e-mails in native

format with all attachments in native format and attached to the transmittal e-mails. They argue that Defendant's Spreadsheet Reports fail to correlate hundreds of the hard copy e-mails to the appropriate corresponding spreadsheet and have proven to be very inaccurate. Plaintiffs thus request that Defendant be required to reproduce the transmittal e-mails electronically, in their native format, with the transmitted spreadsheets attached. They argue this will eliminate the complicated, confusing, incomplete, and inaccurate Spreadsheet Reports and put both parties on the same discovery playing field.

Defendant urges the Court to deny Plaintiffs' Motion to Compel Sprint to produce transmittal e- mails in native format. It argues that Plaintiffs agreed to the production of documents in this case in non-native format, and it has complied with that agreement. Indeed, Plaintiffs have specifically agreed to the production of transmittal e- mails in non-native format. Plaintiffs have thus waived any right to pursue discovery in native format. Second, Defendant claims that Plaintiffs have failed to explain why they need e-mails in native format. Defendant next asserts that production of e-mails in native format would unnecessarily place the attorney-client privilege and work product doctrines at risk. It may be technologically impossible to redact the actual text of e-mails while maintaining them in native format. Even assuming redaction of e- mails in native format is possible, Defendant contends that the process of re-reviewing and re-redacting e-mails and attachments would be unduly burdensome. Even if there were no privilege issues, Defendant argues that Plaintiffs' proposed production would unnecessarily place a monumental burden on Defendant in terms of the time and expense required to re-produce e-mails that have already been produced in non-native format and to re-produce attachments that have already been produced in native format.

Although Plaintiffs strongly argues otherwise, the Court finds that the current quagmire is

not the result of any deliberate conduct of Defendant in detaching the transmittal e-mails from their attachments so as to stymie Plaintiffs' access to that discovery.  During the course of the parties' transmittal e-mail discovery dispute, Defendant has explained how the RIF selection spreadsheets and other attachments ended up being collected and ultimately produced separately from their respective transmittal e-mails.  Defendant has also described the difficulties and obstacles that resulted from this separate production.  When Plaintiffs complained about the task of matching up the spreadsheets and other attachments to their separately produced transmittal e-mails, Defendant proposed the creation of Spreadsheet Reports that would match up the transmittal e-mails with their respective attachments.  Plaintiffs now argue that these Spreadsheet Reports fail to correlate hundreds of the hard copy e-mails to the appropriate corresponding attachments. They further complain that these Spreadsheet Reports have also proven to be very inaccurate.  The only solution in their view is to abandon the Spreadsheet Reports and order Defendant to produce the transmittal e-mails in native format with all attachments in native format and attached to the transmittal e-mails.

Federal Rule of Civil Procedure 34(b)(iii), as amended on December 1, 2006,  provides that "[u]nless the parties otherwise agree, or the court otherwise orders, . . . a party need not produce the same electronically stored information in more than one form."  In this case, Defendant has already produced the transmittal e-mails, as well as all the attachments to those e-mails.  Defendant has further created Spreadsheet Reports to correlate the transmittal e-mails to the attachments they transmitted.  The Court therefore finds that under Rule 34(b)(iii), Defendant need not re-produce the its RIF-related transmittal e-mails together with their attachments in native format, as requested by Plaintiffs.

The Court recognizes that Defendant's separate production of the transmittal e-mails from

-13-

their attachments resulted in Plaintiffs being required to expend considerable efforts to match the transmittal e-mails back up with the spreadsheets and other documents they transmitted.  Plaintiffs' request that the Court order Defendant to produce all its RIF-related transmittal e-mails in native format with all attachments in their native format and attached to the transmittal e-mails, however, is problematic.  Although Plaintiffs present their request as a simple solution to the problem, their proposed solution, however, raises a number of issues.  Defendant raises legitimate concerns about producing the transmittal e-mails with their attachments in their native format, including the whether production in native format would permit the redaction or removal of privileged information in the transmittal e-mail or the attachment.  This argument is convincing in that many of the attachments are spreadsheets that the Court has found the adverse impact portion to be privileged.  Plaintiffs' suggestion of producing the transmittal e-mails with their attachments in native format would not allow for the redaction or removal of the privileged adverse impact portion of these spreadsheets.

Moreover, even assuming that Defendant could produce the transmittal e-mails together with their attachments in native format with the privileged information redacted, Plaintiffs have not sufficiently explained why they need the transmittal e-mails in their native format.  Previously, this Court has ordered Defendant to produce the Excel RIF spreadsheets in native format, but in that instance Plaintiffs provided valid reasons for the spreadsheets to be produced in their native format. Namely, that the contents of the spreadsheet cells could not otherwise be viewed as the cells contained formulas.  Also, in many instances, the column width of the cells prevented viewing of the entire content of the cells.  Here, other than arguing that ordering Defendant to reproduce the transmittal e-mails together with their attachments in native format would be more helpful to Plaintiffs in matching up the transmittal e-mails with their respective attachments, Plaintiffs fail to

-14-

provide any other reason why they need the transmittal e-mails produced in their native format.  For these reasons, the Court denies Plaintiffs' request for Defendant to produce all its RIF-related transmittal e-mails in native format with all attachments in native format and attached to the transmittal e-mails.

The Court is aware that matching up the transmittal e-mails with their respective attachments is an arduous and time-consuming task for Plaintiffs.  However, the Spreadsheet Reports prepared by Defendant appear to provide sufficient information for Plaintiffs to match up the transmittal e-mails with their attachments.  The Court has reviewed these Spreadsheet Reports, which are attached as Exhibits 1 through 59 attached to Plaintiffs' Motion to Compel Defendant to Produce Attachments to E-Mails (doc. 4244).  These Spreadsheet Report have the following information for each transmittal e-mail: a document identification number, attachment identification number, subject of email, name of person sending the e-mail, names of recipients of the email, and the date the e-mail was sent.  The next line on the Spreadsheet Report provides information on the attachment to the transmittal e-mail, including the title or filename of the attachment, the subject, and the hash code.  The Court finds that, based on the information provided on these Spreadsheet Reports, such as the date of the e-mail and the hash code of the attachment, Plaintiffs have sufficient information to be able to search the documents and thereby match up the e-mails with their corresponding attachment(s).

Plaintiffs' complaints that Defendant's Spreadsheet Reports fail to correlate hundreds of the hard copy e-mails to the appropriate corresponding spreadsheet and contain many inaccuracies do not convince the Court that the Spreadsheet Reports should be abandoned.  Defendant maintains that the few problems identified by Plaintiffs with the Reports were quickly rectified and that Plaintiffs

have made no complaints at all about the functionality of the Spreadsheet Report for months. Defendant states that it will work diligently to resolve any additional specific problems identified by Plaintiffs.  The Court thus is satisfied that the Spreadsheet Reports should not be abandoned due to concerns with inaccuracies.  If Plaintiffs continue to have concerns regarding the accuracy of the Spreadsheet Reports, they should report in writing to Defendant any material discrepancies they find in the Spreadsheet Reports that prevent them from locating either the transmittal e-mail or the attachment.  Defendant shall, in a timely manner, investigate the discrepancies reported by Plaintiffs and report back to Plaintiffs the results of its investigation with the goal of resolving discrepancies in the Spreadsheet Reports.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Defendant to Produce Attachments to E-Mails (doc. 4244) is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Defendant to Produce Transmittal E-Mails in Native Format (doc. 4245) is denied.

**IT IS FURTHER ORDERED** each party is to bear their own expenses in relation to these motions.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 12th day of December, 2006.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel