IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Shirley Williams et al.,

        **Plaintiffs,**

v.                                    Case No. 03-2200-JWL

Sprint/United Management Company,

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated asserting that her age was a determining factor in defendant's decision to terminate her employment during a reduction-in-force (RIF). This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

This matter is presently before the court on plaintiffs' motion to review (doc. 4427) and objections to the magistrate judge's November 6, 2006 order in which the magistrate judge granted defendant's motion for protective order requesting the return of one document on the grounds that the document is a privileged attorney-client communication and that defendant has not waived the privilege in any respect. In their motion, plaintiffs contend that both conclusions are erroneous and urge that the document is not a privileged attorney-client communication and that defendant waived what claim to privilege it had with respect to the document. As will be explained, the motion is granted in part and denied in part. The motion is denied with respect to the magistrate judge's conclusion that the document is a privileged attorney-client

communication and is granted with respect to the magistrate judge's conclusion that defendant has not waived the privilege. In other words, the court concludes that the document is privileged but that defendant waived the privilege with respect to the document. As will also be explained, the court remands to the magistrate judge the limited issue of whether plaintiffs are entitled to an unredacted copy of the document.

**I.      Background**

The following facts are undisputed by the parties. In May 2005, defendant produced documents to plaintiffs and, in the course of that production, decided to withhold a document bearing Bates-stamp number 54873 and entitled "Criteria for HR Review of Preliminary Performance Management Systems Results" (hereinafter the "Criteria Document"). The Criteria Document is a one-page document providing step-by-step instructions to defendant's Human Resources personnel concerning the review of certain preliminary results indicating that defendant's "Alpha" performance review rating system had an adverse impact on one or more protected classes. On July 28, 2005, defendant provided a privilege log (the first log to identify the Criteria Document) identifying the Criteria Document as protected from disclosure by virtue of the work product doctrine; defendant did not assert in this log protection based on the attorney-client privilege. Subsequent logs similarly asserted that the Criteria Document was subject to protection based solely on the work product doctrine. On each log, the date and author of the Criteria Document was listed as "unknown."

During a discovery/status conference held before the magistrate judge on September 1,

2005, plaintiffs presented defendant and the magistrate judge with a list of the Bates numbers of 426 documents identified on defendant's most recent privilege log for which plaintiffs believed that defendant had no legitimate claim of protection. The magistrate judge construed the list as a motion to compel and ordered defendant, by September 15, 2005, to explain to plaintiffs the basis upon which defendant was claiming protection for each of the 426 documents. Thereafter, defendant requested and received an extension of time up to and including October 3, 2005 to respond to plaintiffs' motion to compel.

In preparing defendant's response, one of defendant's lawyers, Patrick Hulla, reviewed a hard copy of each of the 426 documents, one of which was the Criteria Document. Mr. Hulla is an experienced lawyer who, at that time, had been intimately involved with this litigation from its inception. According to Mr. Hulla, he could not ascertain from the face of the Criteria Document or the privilege log entry for the document whether the document in its entirety was protected from disclosure by the attorney-client privilege or the work product doctrine, based in large part on the fact that he did not know who authored the document (which, in turn, was due in part to the fact that defendant, up until this point, apparently did not realize that the Criteria Document was initially distributed to Human Resources' employees with an attached cover memorandum from Jill Ferrel, one of defendant's in-house counsel, indicating that she had authored the document and that the attached Criteria Document was an attorney-client privileged document). Thus, Mr. Hulla determined that only paragraphs 9 and 10 of the Criteria Document were protected from disclosure based on the work product doctrine. Accordingly, Mr. Hulla, in responding to plaintiffs' motion to compel, stated that defendant would produce a redacted

version of the Criteria Document.

During the parties' October 6, 2005 discovery/status conference with the magistrate judge, defendant produced to plaintiffs the Criteria Document, with paragraphs 9 and 10 redacted, along with 25 other documents included in plaintiffs' list of 426 documents that defendant had concluded were not protected from disclosure. The following day, plaintiffs sent via fax to defendant a detailed list of the documents defendant had produced at the October 6, 2005 status conference and specifically requested that defendant tender to the court an unredacted copy of the Criteria Document. Defendant declined to provide the document for in camera review and did not contend at that time that the Criteria Document had been inadvertently produced.

On October 21, 2005, during the deposition of Gene Lampe, one of defendant's Human Resources employees, plaintiffs' counsel inquired about the contents of the Criteria Document. At that point, another lawyer for defendant, Philip Dupont, contended that the document had been inadvertently produced. Thereafter, Mr. Dupont investigated the origin of the document, including analyzing the document's metadata, and determined that it had been authored by Ms. Ferrel. Although the record is not entirely clear, it appears that defendant, at this time, connected the Criteria Document to Ms. Ferrel's cover memorandum.[1] On October 27, 2005, defendant's

---

[1] In fact, Ms. Ferrel's cover memorandum and the Criteria Document appear in sequential order on defendant's privilege logs. That is, Ms. Ferrel's cover memorandum bears Bates-stamp number 54872 and is identified immediately prior to the Criteria Document, which bears Bates-stamp number 54873. This indicates that the documents had been maintained together but, for whatever reason, defendant did not understand the link between the documents.

4

counsel sent a letter to plaintiffs requesting the immediate return of the Criteria Document. Plaintiffs' counsel refused to return the document, contending that the disclosure was not inadvertent. In November 2005, defendant filed a motion for protective order seeking the return of the document.

In his November 6, 2006 memorandum and order, the magistrate judge granted defendant's motion for protective order, directed plaintiffs to return the Criteria Document and prohibited plaintiffs from using the document in any manner. Specifically, the magistrate judge concluded that the Criteria Document constitutes a privileged attorney-client communication and that defendant's "inadvertent disclosure" of the Criteria Document was insufficient to constitute a waiver of the privilege.

## II. Applicable Standard

Magistrate judges may issue orders as to non-dispositive pretrial matters and district courts review such orders under a "clearly erroneous or contrary to law" standard of review. *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard applies to factual findings, *see* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069, at 355 (2d ed. 1997) (and cases cited therein), and requires that the district court affirm unless it is left with the "definite and firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395

(1948)). By contrast, the "contrary to law" standard permits "plenary review as to matters of law." *See* Wright, Miller & Marcus, *supra*, § 3069, at 355; *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3rd Cir. 1992); *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp .2d 980, 983 (S.D. Cal. 1999) ("contrary to law" standard permits independent review of purely legal determinations by a magistrate judge); *Weekoty v. United States*, 30 F. Supp. 2d 1343, 1344 (D.N.M. 1998) (when reviewing legal determinations made by magistrate judge, standard of review is de novo).

### III.     Whether the Document Constitutes a Privileged Attorney-Client Communication

In their motion to review, plaintiffs first contend that the magistrate judge erred in concluding that the Criteria Document is a privileged attorney-client communication. According to plaintiffs, the Criteria Document is simply a "policy or procedure" of defendant that human resources follows in the ordinary course of its human resources' functions. As plaintiffs candidly concede, however, their argument concerning whether the Criteria Document is privileged is made without the benefit of having seen Ms. Ferrel's cover memorandum to which the Criteria Document was initially attached. The cover memorandum has never been produced by defendant and has been submitted to the court (as it was to the magistrate judge) for in camera review. As the magistrate judge correctly concluded, that cover memorandum, as well as other evidence such as metadata, establishes that the Criteria Document was authored by Ms. Ferrel, defendant's in-house counsel. In addition, the cover memorandum advises that the Criteria Document is a privileged attorney-client communication. The contents of the cover

memorandum reflect that the Criteria Document is not intended to be an official "policy or procedure" of defendant (as suggested by plaintiffs) but is intended to offer legal advice concerning the review process described in the Criteria Document. Without hesitation, the court concludes that the magistrate judge did not err when he held that the Criteria Document constitutes a privileged attorney-client communication. *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (confidential communications between lawyer and client are privileged when those communications relate to legal advice or strategy); *accord Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995) (memorandum drafted by in-house counsel concerning proposed guidelines for implementation of RIF was privileged communication where memorandum was treated as confidential and contained legal advice for corporate restructuring).

### IV.   Whether Defendant Waived the Privilege

Plaintiffs assert that the magistrate judge erred in concluding that defendant "inadvertently" produced the document and that its inadvertent disclosure did not constitute a waiver of the privilege. Plaintiffs urge that the undisputed facts demonstrate that no "inadvertent" production occurred with respect to the Criteria Document; rather, defendant deliberately produced the document after redacting paragraphs 9 and 10 and concluding that the remainder of the document was not privileged or otherwise protected. According to plaintiffs, defendant's deliberate production of the Criteria Document is sufficient to constitute a waiver of the privilege. In response, defendant argues that its disclosure of the document was inadvertent and that the magistrate judge correctly applied the appropriate test in determining

that defendant's inadvertent production did not constitute a waiver of the privilege.

As an initial matter, the magistrate judge's November 6, 2006 memorandum and order appears to assume that defendant's production of the document was inadvertent and proceeds to apply the five-factor test generally used to determine whether an inadvertent disclosure constitutes a waiver of the privilege. In other words, the magistrate judge did not address the extent, if any, to which defendant's purposeful production of the Criteria Document might render the five-factor "inadvertent disclosure" test inapplicable. Significantly, each of the cases relied upon by the magistrate judge in support of his application of the five-factor test involved truly accidental and unknowing production of privileged materials, usually in the context of voluminous discovery responses. *See Wallace v. Beech Aircraft Corp.*, 179 F.R.D. 313, 314 (D. Kan. 1998) (applying five-factor test for inadvertent disclosure where defendant produced a "substantial quantity" of documents to plaintiff for review, including two privileged documents that defendant had overlooked due to their inclusion within what appeared to be routine funding request forms); *Zapata v. IBP, Inc.*, 175 F.R.D. 574, 576-77 (D. Kan. 1998) (applying five-factor test for inadvertent disclosure where defendant's expert produced over one thousand documents during his deposition, including a copy of the opposing party's expert report containing handwritten notes of defendant's counsel, unbeknownst to defendant's counsel); *Monarch Cement Co. v. Lone Star Indus., Inc.*, 132 F.R.D. 558, 560 (D. Kan. 1990) (applying five-factor test for inadvertent disclosure where plaintiff produced 118 personnel files, one of which included 8 pages of privileged material buried at the back of the file and overlooked by counsel).

In contrast, the facts here demonstrate that defendant's counsel specifically reviewed the

Criteria Document and knowingly and intentionally produced that document after determining that paragraphs 9 and 10 should be redacted and that the remainder of the document should be produced to plaintiffs. According to defendant, its disclosure is nonetheless "inadvertent" because the disclosure was based on a mistake of counsel, who reviewed the document outside the context of Ms. Ferrel's cover memorandum and, without the benefit of that memorandum, did not realize that the document was authored by defendant's in-house counsel and could not otherwise ascertain from the face of the document that it was entitled to protection from disclosure.[2] There is a distinction, however, between an "inadvertent" disclosure and a disclosure that is "advertent and intended where the person making discovery was merely unaware of the legal consequences or nature of the document produced." *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 303 (D. Utah 2002).

For example, in *Transonic Systems, Inc. v. Non-Invasive Medical Technologies Corp.*, 192 F.R.D. 710 (D. Utah 2000), the plaintiff, in connection with a particular document production that included 450 pages of documents, produced a document prepared by and

---

[2]Although defendant suggests that its disclosure was "inadvertent" because it was based on the one-time mistake and uninformed belief of the lawyer who ultimately decided to produce the document in October 2005, other circumstances reflect that defendant, for months prior to the October 2005 production, did not believe that the Criteria Document was protected by the attorney-client privilege. Beginning in July 2005, defendant consistently identified the Criteria Document in its privilege logs as being protected from disclosure based only on the work product doctrine; defendant never asserted in its logs that the Criteria Document was protected from disclosure by the attorney-client privilege. This, in turn, suggests that when defendant initially reviewed and withheld the document from production in May 2005 that it did so based solely on the work product doctrine.

9

containing comments from plaintiff's in-house counsel. *Id*. at 711-12. The document was clearly labeled "Highly Confidential Attorneys' Eyes Only." *Id*. at 712. Rejecting the plaintiff's argument that the disclosure was inadvertent, and concluding that the privilege had been waived, the court explained:

> The facts of this case require a conclusion that when the subject document was produced, its content was known and it was produced with [plaintiff's] counsel being aware of what it was and to what it related. . . . [W]hat was not appreciated at the time of production was the legal significance or the document. This was not a document inadvertently included in vast materials. The document was Bates stamped and voluntarily produced. The production was not an unintentional act. Poorly judged disclosure is not inadvertent. Therefore, this court concludes that disclosure of the document in question was not inadvertent, but mistaken, if at all, only as to whether it was privileged, and that therefore [plaintiff] is not entitled to return of the document.

*Id.* at 715-16 (internal citation omitted). Similarly, in *Koch Materials Co. v. Shore Slurry Seal, Inc*., 208 F.R.D. 109, 112 (D.N.J. 2002), the plaintiff, in the course of producing more than six thousand documents, knowingly produced several handwritten unsigned documents without realizing that the documents were authored by in-house counsel and without attempting to determine the author of the documents. The court concluded that the circumstances justified a finding of waiver. *See id.* at 119.

Here, it is undisputed that defendant's counsel intended to provide a redacted version of the Criteria Document to plaintiffs' counsel, albeit based on counsel's admittedly uninformed belief that the document was not privileged. In light of these circumstances, the magistrate judge's conclusion that disclosure of the Criteria Document was "inadvertent" is erroneous. Without question, defendant's disclosure was intentional and voluntary and constitutes a waiver

10

of the privilege. *See Wunderlich-Malec Systems, Inc. v. Eisenmann Corp.*, 2006 WL 3370700, at *4-5 (N.D. Ill. Nov. 17, 2006) (disclosure was not inadvertent but voluntary–and thus privilege was waived–where defendant never actually intended prior to production to keep documents out of plaintiff's hands but only intended to do so as an "afterthought"); *see also Zapata*, 175 F.R.D. at 576 (an "inadvertent" disclosure is one that "was not intended by [the party's] attorneys").

Having concluded that defendant's voluntary disclosure of the Criteria Document is sufficient to waive the attorney-client privilege with respect to that document, the court necessarily concludes that defendant has also waived its claim that the work product doctrine protects the Criteria Document from disclosure. *See In re Quest Comm. Intern. Inc.*, 450 F.3d 1179, 1185-86 (10th Cir. 2006) (voluntary production of work-product and/or privileged material during discovery waives both attorney-client privilege and work-product protection). One issue, however, remains for resolution and the court will remand it to the magistrate judge–whether plaintiff is entitled to an unredacted version of the Criteria Document. Clearly, paragraphs 9 and 10 constitute privileged attorney-client communications (because the entirety of the document is privileged) and the privilege was not waived by defendant's disclosure because it redacted those paragraphs prior to disclosure. However, plaintiffs contend that defendant otherwise waived the privilege by failing to designate protection based on the attorney-client privilege in its privilege logs and, instead, asserting only work product protection. The magistrate judge did not address this argument in his order and, thus, the court leaves it for the magistrate judge to decide whether defendant waived the privilege with respect to paragraphs 9 and 10 by failing

11

to assert that privilege in its logs. If the magistrate judge determines that defendant waived the privilege with respect to paragraphs 9 and 10, he must then decide the merits of defendant's asserted work-product protection claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for review (doc. 4427) is granted in part and denied in part. If plaintiffs have already returned the redacted Criteria Document to defendant, defendant shall provide another copy of the redacted Criteria Document to plaintiffs within 5 days of the date of this order. Otherwise, plaintiffs are entitled to retain the redacted Criteria Document. The court remands to the magistrate judge the limited issue of whether plaintiffs are entitled to an unredacted copy of the Criteria Document.

**IT IS SO ORDERED.**

Dated this 5th day of January, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge