### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**SHIRLEY WILLIAMS, et al.,**

       **Plaintiffs,**

**v.**

**SPRINT/UNITED MANAGEMENT COMPANY,**

       **Defendant.**

**CIVIL ACTION**

**No. 03-2200-JWL-DJW**

### MEMORANDUM AND ORDER

On November 16, 2006, Chief District Judge John W. Lungstrum remanded this matter for factual findings concerning and an explanation of the reasons for the denial of Plaintiffs' motion for sanctions (doc. 4423). The Court held a telephone status conference on November 20, 2006, and ordered the parties to submit further briefing on the issue. Defendant accordingly filed its Proposed Findings of Fact in Support of April 25, 2006 Order Denying Plaintiffs' Motion for Sanctions (doc. 4436). Plaintiffs thereafter filed their Response to Defendant's Proposed Facts and Motion for Findings of Fact Related to Denial of Plaintiffs' Motion for Sanctions (doc. 4459). As explained in greater detail below, the Magistrate Judge provides the following explanation why he denied Plaintiffs' motion to the extent it sought to impose sanctions upon Defendant for its alleged failure to produce all spreadsheet materials in native format, its failure to timely produce the spreadsheet materials that were produced, and its conduct in re-producing spreadsheet materials in non-native format that had already been produced in native format.

**I.    Procedural History**

On February 15, 2006, Plaintiffs filed an omnibus motion seeking to amend the scheduling order, to compel Defendant to produce RIF spreadsheets and e-mails in native format, to permit Plaintiffs access to Defendant's computer system, and for sanctions against Defendant. Plaintiffs requested that sanctions be imposed on Defendant for its alleged failure to produce "spreadsheet materials" in native format, its failure to timely produce other spreadsheet materials, and its production of duplicate spreadsheet materials in non-native format that had already been produced in native format. Plaintiffs' sanction request sought "whatever sanction the Court deems appropriate against Defendant Sprint for its conduct in response to Judge Lungstrum's August 12, 2005 Order -- primarily the failure to produce spreadsheet materials in native format and the re-production of more than 200,000 pages of spreadsheet materials (in non-native format) that had already been produced in native format," along with "whatever sanction the Court deems appropriate against Defendant Sprint for failing to timely produce spreadsheet materials as required by Judge Waxse's May 5, 2005 Show Cause Order and other Show Cause Orders."

Plaintiffs' motion, along with twelve other pending discovery motions, was resolved in open court at the April 20, 2006 discovery conference and the ruling on the motion was memorialized in paragraph 8 of an Order dated April 25, 2006 (doc. 3896). The Magistrate Judge denied without prejudice Plaintiffs' motion to compel for lack of specificity as to the documents sought. He also found sanctions were not appropriate and denied the motion to the extent it sought sanctions, advising the parties that "I think the best approach so far is to avoid those when we can."

2

On May 9, 2006, Plaintiffs filed a Motion for Review and Objections to Portions of Paragraph 8 of Magistrate's Order of April 25, 2006 (doc. 4102). On June 30, 2006, Judge Lungstrum issued a Memorandum and Order (doc. 4212) retaining Plaintiffs' motion for review under advisement and remanding the underlying motion to compel discovery to the Magistrate Judge based on the lack of a sufficient record. The Memorandum and Order directed the Magistrate Judge to render factual findings sufficient to enable the District Judge to perform a meaningful review of the decision on the motion to compel and for sanctions.

On July 10, 2006, an order was issued in response to the remand. That Order memorialized the substance of the April 20, 2005 hearing where the Magistrate Judge ruled on the omnibus motion to compel and for sanctions. In particular, the order set forth the nature of the verbal exchange that lead to the denial of sanctions. That exchange involved the Magistrate Judge specifically inquiring whether Defendant had produced the RIF spreadsheets and e-mails in native format, which he understood to be the primary basis of Plaintiffs' motion to compel and request for sanctions. Based on Defendant's representation in open court that it had produced, at the time of the pleading, all decision-making type RIF spreadsheets in native format of which it was aware, the Magistrate Judge found that Defendant had met its obligation to produce RIF spreadsheets in native format, unless Plaintiffs had a specific issue with a specific spreadsheet or email that they believed Defendant had not produced in native format. As the Magistrate Judge found that Defendant had met its obligation to produce RIF spreadsheets in native format, the Magistrate Judge denied Plaintiffs' related request for sanctions.

On July 24, 2006, Plaintiffs filed a motion to reconsider or clarify the July 10, 2006 order by making specific factual findings regarding Plaintiffs' motion for sanctions. After the motion to reconsider was denied on September 13, 2006, Plaintiffs filed a motion for review (doc. 4334) with the District Judge appealing the Magistrate Judge's denial of Plaintiffs' motion for sanctions. In their motion, Plaintiffs specifically requested that Judge Lungstrum sanction Defendant based on its "highly prejudicial sluggish conduct, non-native format production, and duplication in response to this Court's August 12, 2005 Order," and "inordinate and prejudicial delay in failing to timely produce spreadsheets as required by Judge Waxse's May 5, 2005 Show Cause Order and other Show Cause Orders."

On November 16, 2006, District Judge Lungstrum again remanded the matter to the Magistrate Judge for factual findings concerning and an explanation of the reasons for the denial of Plaintiffs' motion for sanctions (doc. 4423). In accordance with this directive, the Magistrate Judge provides the following more detailed explanation of the denial of Plaintiffs' motion to the extent it requested the imposition of sanctions against Defendant.

**II.    Legal Standards Under Which a Court May Impose Discovery Sanctions**

A court has both express power, under the Federal Rules of Civil Procedure, and inherent power to impose sanctions for bad faith conduct during discovery.[1] Rule 37 provides two frameworks for the imposition of sanctions. First, under Rule 37(a) and (b), a party may move for an order to compel discovery. If that motion is granted and a party refuses or fails to comply with the court's order, the court may issue a wide range of sanctions under Rule

---

[1]*See* Fed. R. Civ. P. 37; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

37(b). Second, subsection (d) provides for a less common scenario when sanctions may be imposed even though no prior court order has been issued. The court may enter an order for sanctions under Rule 37(d), for example, if a party fails to attend a deposition or respond to discovery requests. Rule 37(d) also allows the court to award attorney's fees and expenses.

The court may also impose sanctions based on its inherent authority. Federal courts possess inherent powers necessary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[2] A court's inherent power "is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[3]

The imposition of sanctions for a party who violates discovery orders, as well as the choice of an appropriate sanction, is a matter committed to the sound discretion of the court.[4] District of Kansas Rule 11.1(c) provides that "[i]n considering the imposition of sanctions, the court may consider whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[5] Fed. R. Civ. P. 37(b)(2) also requires that any sanction be just and that the sanction be specifically related to the particular claim which was at issue in the order to provide discovery. In selecting a proper sanction for delayed production of requested materials, the district court should consider the reasons the

---

[2]*Chambers*, 501 U.S. at 43 (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)).

[3]*Link*, 370 U.S. at 630-31; *see also Roadway Express,* 447 U.S. at 765.

[4]*Myers v. Colgate-Palmolive Co.,* 102 F. Supp. 2d 1208, 1222 (D. Kan. 2000); *see also* D. Kan. Rule 11.1(c).

[5]D. Kan. Rule 11.1(c).

party delayed producing requested materials, including whether the party acted in bad faith, the extent of prejudice to the defendant as a result of the delay, and the feasibility of curing any prejudice.[6]

**III.    Reasons for Denial of Plaintiffs' Motion for Sanctions**

Judge Lungstrum's remand indicates the need for factual findings regarding three separate discovery abuses alleged by Plaintiffs: (1) Defendant's failure to produce all "spreadsheet materials" in native format, (2) Defendant's failure to timely produce spreadsheet materials that were produced, and (3) Defendant's re-production of spreadsheet materials in non-native format that had already been produced in native format. The Magistrate Judge will address each alleged discovery abuse separately.

**A.    Failure to Produce Spreadsheet Materials in Native Format**

Plaintiffs' motion for sanctions states that it is primarily based on Defendant's failure to produce "spreadsheet materials" responsive to Judge Lungstrum's August 12, 2005 Memorandum and Order in native format. Plaintiffs argue that Defendant should be sanctioned for its decision to produce the RIF selection spreadsheets, ordered to be produced by Judge Lungstrum's August 12th Memorandum and Order, as .tif images rather than in their native format. They contend that although Judge Lungstrum's August 12th Memorandum and Order did not specify that Defendant produce the spreadsheet materials in native format, the Magistrate Judge's discovery conference rulings required Defendant to produce these materials in native format.

---

[6]*Goeken v. Wal-Mart Stores, Inc.*, No. 99-4191-SAC, 2002 WL 1334863, at *1 (D. Kan. May 23, 2002) (citing *United States v. Russell*, 109 F.3d 1503, 1511 (10th Cir.1997)).

According to Defendant's proposed findings of fact, at the beginning of this case, the parties voluntarily reached an agreement that Defendant would produce responsive documents, including spreadsheet materials, in .tif format only. Pursuant to that agreement, Defendant states that its counsel established its own internal database and production protocol designed for the production of documents in .tif format and produced a significant amount of data in .tif format for a year and a half. More than a year after the provisional certification of the case, Plaintiffs changed their minds and requested that the RIF selection spreadsheets be produced in native format. According to Defendant, the original agreement that documents would be produced in .tif format was thus amended on May 19, 2005, such that RIF selection spreadsheets would be produced in native format. In June 2005, Defendant began tendering RIF spreadsheets as previously ordered by the Magistrate Judge in native format. On August 12, 2005, Judge Lungstrum issued his Memorandum and Order in which he ordered Defendant to produce all RIF-related spreadsheets (not just the RIF selection spreadsheets) and other materials. In response to that order, Defendant produced responsive documents in .tif format. Defendant asserts that it reasonably believed in good faith that the August 12th Memorandum and Order did not modify the parties' original agreement that Defendant produce documents as .tif images. When it was later ordered to produce the spreadsheets in native format, Defendant states that it complied with that order within six weeks.

As indicated in response to the Magistrate Judge's inquiry at the April 20, 2006 discovery conference, Defendant represented that it had, at the time of the motion for sanctions, produced all decision-making type RIF spreadsheets in native format of which it was aware. Upon hearing that Defendant had produced all available spreadsheets in native format, the

Magistrate Judge found that Defendant met its obligation to produce the RIF spreadsheets in native format.

To the extent Plaintiffs seek sanctions based on Defendant's decision to initially produce the spreadsheet materials responsive to Judge Lungstrum's August 12, 2005 Memorandum and Order as non-native .tif images rather than in their native format, the Magistrate Judge finds that Defendant's production as .tif images does not constitute sanctionable conduct. Several circumstances lead the Magistrate Judge to this finding. First, none of Plaintiffs' original discovery requests for the RIF spreadsheets specified that the spreadsheets should be produced in their native format rather than as .tif images, which was the parties' original agreement. It was only after Defendant began producing the RIF selection spreadsheets as .tif images in response to the Magistrate Judge's May 5, 2005 Show Cause Order that Plaintiffs requested that Defendant re-produce the previously-produced spreadsheets in their native Excel format. Second, the August 12th Memorandum and Order did not specify that Defendant produce the documents in native format. Third, Plaintiffs were aware of the logistical problems Defendant was experiencing attempting to simultaneously produce documents responsive to Judge Lungstrum's August 12th Memorandum and Order and the Magistrate Judge's orders. Fourth, Defendant advised Plaintiffs that it did not have all of the spreadsheets in their native format, but some spreadsheets were only maintained in hard copy or .tif format. Fifth, the timing of the Magistrate Judge's prior and subsequent discovery conference rulings created ambiguity whether the Magistrate Judge's order that the RIF selection spreadsheets be produced in their native format applied to Judge Lungstrum's August 12th Memorandum and Order to produce all RIF-related spreadsheets. Finally, Defendant

subsequently produced all the spreadsheets it had in native format. Given these circumstances, the Magistrate Judge found that Defendant should not be sanctioned for initially producing the spreadsheets in .tif format rather than native format.

### B.     Failure to timely produce spreadsheet materials

#### *1. Production in response to the Magistrate Judge's Orders*

Plaintiffs also request that the Magistrate Judge impose sanctions on Defendant for their failure to timely produce spreadsheet materials as required by Judge Waxse's May 5, 2005 Show Cause Order and other Show Cause Orders. Defendant argues that Plaintiffs have not provided any evidence that it intentionally or negligently delayed production of any documents or otherwise acted in bad faith, nor that they have suffered prejudice from any delay. Defendant further argues that Plaintiffs bear a portion of the responsibility for the discovery delays in this case, by changing their minds about whether they wanted materials in .tif or native format and by failing to provide the bates numbers of particular .tif spreadsheets they desired in native format in response to Defendant's offer to produce such documents.

At almost every discovery conference, the Magistrate Judge heard from Plaintiffs that it was taking Defendant too long to produce the spreadsheets and inquired of Defendant why it was taking so long. The Magistrate Judge agrees with Plaintiffs that it did take Defendant a long time to produce the spreadsheets at issue. However, as Plaintiffs neglect to mention, Defendant provided at almost every discovery conference some explanation why the spreadsheets could not be produced as previously anticipated. At the February 2, 2006 discovery conference, the Magistrate Judge expressly held that Defendant had provided an

9

adequate explanation of why it had not completed production of all spreadsheets in their native electronic format previously produced to Plaintiffs in non-native format.

Having conducted numerous discovery conferences where the parties provided detailed explanations of their problems, the Magistrate Judge finds that Defendant's delays were neither willful nor motivated by a desire to obtain a tactical advantage, but instead were caused by the unique circumstances of the case. Those circumstances include Plaintiffs' lack of specificity in its initial discovery requests, Plaintiffs' subsequent alterations to those discovery requests, the manner in which Defendant collected and maintained documents, as well as the way it structured and coordinated its production efforts responsive to multiple discovery requests and court orders. Based on these circumstances, the Magistrate Judge declined to impose sanctions on Defendant.

### 2. *Production in response to Judge Lungstrum's August 12, 2005 Memorandum and Order*

Plaintiffs also seek sanctions based on Defendant's failure to timely produce the spreadsheets in response to Judge Lungstrum's August 12, 2005 Memorandum and Order. The docket, however, reflects that Defendant timely requested and was granted extensions of time to provide its final certification that all responsive documents had been produced and that it had fully and completely complied with its obligations under the Order. The last two extensions were unopposed by Plaintiffs. For Plaintiffs to now argue that Defendant's production was untimely is not well taken in light of these facts.

Plaintiffs make much of the fact that Defendant produced over two-thirds of the documents during the last week of the four-month period it took to respond to the August 12, 2005 Memorandum and Order. While the Magistrate Judge understands Plaintiffs' frustration

10

with Defendant producing a large number of documents in the last week it had to complete the production of documents responsive to Judge Lungstrum's August 12, 2005 Memorandum and Order, the Magistrate Judge does not find Defendant's disproportionately large production of documents in the last week constitutes sanctionable conduct.

### C. Re-producing spreadsheet materials in non-native format that had already been produced in native format

Plaintiffs also seek sanctions based on Defendant's re-producing more than 200,000 pages of spreadsheet materials (in non-native format) that had already been produced in native format. They claim that of the 381,706 pages Defendant produced, more than 200,000 were duplicates. Defendant argues that there is no evidence that it intentionally or negligently re-produced documents in bad faith or otherwise acted in any manner inconsistent with a good faith effort to produce documents in response to discovery requests and court orders. It further argues that duplication is inevitable in a document-intensive case such as this, and there is no evidence that duplication here is outside what would be expected under the circumstances of this case. Finally, Defendant explains that production of some of the same documents in non-native format after they had already been produced in native format may have been the result of the fact that it was engaged in a good faith attempt to complete two document productions during the same time period. The completion of its production of the RIF selection spreadsheets in native format overlapped in time and scope with its non-native response to the Judge Lungstrum's broader August 12, 2005 Memorandum and Order. In order to eliminate re-production of some spreadsheets, Defendant argues that it would have had to remove the already-produced RIF selection spreadsheets from the August 12, 2005 production, which would have only resulted in further delays.

11

With regard to the reproduction of spreadsheet materials in non-native format that had already been produced in native format, the Magistrate Judge finds there is no evidence that Defendant intentionally or negligently re-produced duplicate documents in bad faith or otherwise acted in any manner inconsistent with a good faith effort to produce documents in response to all the discovery orders and Plaintiffs' discovery requests.  As pointed out by Defendant, a certain amount of duplication is inevitable in a large document-intensive case such as this one.  Moreover, Plaintiffs' motion for sanctions was not the first time the Magistrate Judge heard Plaintiffs' complaints regarding Defendant's production of documents that were duplicates.  When Plaintiffs raised the duplicate production issue at the December 15, 2005 discovery conference, Defendant's counsel stated that he "would not be surprised if there was duplication on some of these spreadsheets."[7]   Defendant explained then that its goal was to respond completely to Judge Lungstrum's August 12, 2005 Order where it was to certify that it had produced all spreadsheets, not just human resources, and not just restricted the way it earlier indicated it would produce them.  Because of its production of everything, Defendant warned Plaintiffs that it was "very likely that there are duplicates of some of the other spreadsheets that have been produced earlier in this case."[8]

Plaintiffs have provided no precedent for imposing sanctions based upon a party's production of duplicate documents.  The Magistrate Judge finds that mere production of duplicate documents, without any evidence of bad faith or improper motive, does not constitute sanctionable conduct.  Plaintiffs were aware that Defendant was producing documents in

---

[7]*See* Dec. 15, 2005 Tr. p. 54.

[8]*See* Dec. 15, 2005 Tr. p. 55.

12

response to multiple requests and court orders. They should have therefore expected a certain amount of duplication. Furthermore, the Magistrate Judge finds that Plaintiffs' own actions in making repeated requests that documents be reproduced in different formats also contributed to the duplicate production. For these reasons, the Magistrate Judge finds that sanctions against Defendant were not appropriate.

RESPECTFULLY SUBMITTED,

Dated in Kansas City, Kansas on this 23rd day of January, 2007.

s/ David J. Waxse<br>
David J. Waxse<br>
United States Magistrate Judge

cc:     All counsel