# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Shirley Williams et al.,**

        **Plaintiffs,**

**v.**                                                      **Case No. 03-2200-JWL**

**Sprint/United Management Company,**

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated asserting that her age was a determining factor in defendant's decision to terminate her employment during a reduction-in-force. This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b). This matter is presently before the court on plaintiff's motion to reconsider and/or clarify (doc. 4495) the court's December 8, 2006 memorandum and order denying that portion of plaintiffs' motions to review challenging whether defendant had waived the attorney-client privilege by asserting its "good faith" compliance with the ADEA. For the reasons set forth below, the motion is denied.[1]

In its December 8, 2006 memorandum and order, the court concluded that defendant has not waived the attorney-client privilege by asserting its good faith compliance with the ADEA.

---

[1]Plaintiffs also move the court to reconsider a second order issued by the court on December 8, 2006 (an order denying plaintiffs' motion to review the magistrate judge's order granting defendant's motion for protective order prohibiting discovery relating to adverse impact analyses) to the extent that order is based on conclusions reached in the court's first order issued on December 8, 2006. For the reasons stated herein, then, plaintiffs' motion to reconsider the court's second order of December 8, 2006 is also denied.

Specifically, the court concluded that defendant has not waived the privilege by referencing "disparate impact" review or "legal review" in its anti-discrimination policies (policies upon which defendant intends to rely to demonstrate its good faith compliance); that defendant has not waived the privilege by its reliance on the due diligence review conducted by human resources (a review that the court found to be distinct from the review process conducted by defendant's legal department); and that defendant has not waived the privilege by its witnesses' testimony concerning reliance on counsel's advice as to whether any RIF selection decisions violated or appeared to violate anti-discrimination laws.  Plaintiffs now move the court to reconsider its memorandum and order, contending that the court "did not address certain facts and arguments" presented by plaintiffs and that the order contains "other errors which must be corrected to prevent manifest injustice."

As will be explained, the motion to reconsider is denied and the record is closed with respect to the underlying motions to review and, more specifically, the waiver issue.  The court, in rendering its December 8, 2006 memorandum and order, thoroughly examined all the evidence and arguments submitted by the parties and carefully reviewed the transcript of the full evidentiary hearing conducted before the magistrate judge.  At no time during the pendency of the motions to review did plaintiffs suggest that they desired to submit evidence beyond what was before the court or that the record before the court was somehow insufficient to permit the court to resolve the waiver issue.  The court takes this opportunity, however, to clarify that the scope of the court's December 8, 2006 memorandum and order is fairly limited, contrary to what plaintiffs apparently perceive as the scope of the court's order.  In that regard, the limited issue

2

before the court (and the only issue resolved by the court in its December 8, 2006 memorandum and order) was whether defendant had waived the attorney-client privilege with respect to "adverse impact" documents by asserting its good faith compliance with the ADEA–in other words, the court resolved only whether the adverse impact documents remained privileged despite defendant's assertion that it complied in good faith with the ADEA. While that ruling certainly has implications in the discovery context, the court did not resolve issues concerning the parties' discovery obligations with respect to non-privileged documents and inquiries (those issues were expressly left to the magistrate judge for resolution in the first instance upon motion by one of the parties) and did not resolve broad issues concerning the admissibility of evidence at trial. Thus, to the extent plaintiffs express concern in their motion about these subjects, those concerns are premature and not pertinent to the court's December 8, 2006 order.

*The Court's Failure to Address All Deposition Excerpts and Written Discovery Responses*

In its December 8, 2006 memorandum and order, the court concluded that defendant's intention to introduce evidence of human resources' due diligence review of selection decisions does not implicate the adverse impact analyses or any other privileged communication and that defendant has not waived the privilege by its reliance on the separate, initial due diligence review conducted by human resources. In so concluding, the court rejected plaintiffs' argument that defendant's objections, on the basis of attorney-client privilege, to matters concerning the due diligence review demonstrates that the HR due diligence review is inextricably intertwined with the review conducted by the legal department. Plaintiffs now move for reconsideration of

3

this portion of the court's order on the grounds that the court did not discuss (and, therefore, according to plaintiffs, presumably did not consider) all of the deposition excerpts and written discovery responses provided by plaintiffs purportedly demonstrating, by virtue of defendant's privilege objections, that the two review processes are inextricably intertwined.

The court assures plaintiffs that it, in fact, carefully considered all of the deposition excerpts and written discovery responses submitted by plaintiffs concerning the issue of whether defendant's objections demonstrated that the two review processes are intertwined. With respect to the deposition excerpts, the court did not specifically address in its order each example provided by plaintiffs; rather, the court, after reviewing each example, selected various highlights to address in explaining the court's conclusions, much like plaintiffs highlighted the deposition excerpts of Marvin Motley and John Shannon (excerpts that the court did specifically address).[2] In any event, none of the examples provided by plaintiffs changes the court's position

---

[2]As the court noted in its December 8, 2006 memorandum and order, John Shannon testified that he utilized the adverse impact analyses in performing his own due diligence review of selection decisions, that he was not authorized to do so, and that his conduct was contrary to corporate policy. In explaining that defendant was not asserting the attorney-client privilege with respect to adverse impact analyses conducted by Mr. Shannon, then, the court noted that "defendant has produced documents relevant to Mr. Shannon's 'own' adverse impact analyses." In their motion to reconsider, plaintiffs assert that, in fact, none of the materials with regard to Mr. Shannon's own review have been produced by defendant. The court's December 8, 2006 order, however, did not purport to resolve whether non-privileged documents had been produced or whether defendant had met its discovery obligations in that regard; the sole issue before the court was whether defendant had waived the privilege by asserting its good faith compliance with the ADEA. Any issues concerning document production, then, should be advanced before the magistrate judge (appropriately, plaintiffs indicate that they have filed with the magistrate judge a motion to compel these documents).

that the deponents–because of either the nature of plaintiffs' questions or defendant's practice of shielding questions with privilege objections–were not sufficiently focused on the separate, initial due diligence review performed by human resources to permit this court to conclude, as urged by plaintiffs, that defendant's refusal to permit these witnesses to answer deposition questions concerning any "due diligence" review demonstrates that the HR due diligence review is inextricably intertwined with the review conducted by the legal department.

Similarly, while the court did not discuss the one written discovery response submitted by plaintiffs in support of their argument that defendant's privilege objection to "due diligence" inquiries necessarily demonstrates that the HR due diligence review is inextricably intertwined with the review conducted by the legal department, the court examined that response and readily concluded, consistent with its review of the deposition excerpts, that defendant's response did not mandate a finding that the two review processes are intertwined. In Request No. 45 of plaintiffs' Ninth Request for Production of Documents, plaintiffs sought "all documents that refer to, reflect, describe or contain the results of *any due diligence review* conducted by HR personnel of the demographic data to ensure that the decisions avoid the appearance of impropriety regarding employees' races, genders, and/or ages, as described by Sprint on p.5, ¶ 1, third sentence of Doc. 2787" (emphasis added). Sprint asserted a host of objections in response to the request, including an objection that the request "seeks documents subject to the attorney-client privilege and the attorney work-product doctrine." The court cannot ascertain, based solely on the written request and response, whether Sprint is suggesting that no separate and non-privileged review occurred or whether some portion of what human resources'

5

employees would call "any due diligence review" included work done at the direction of counsel. While this may be an example of Sprint improperly lodging a privilege objection, the court specifically left the door open to revisiting the waiver issue if Sprint presses its objections to discovery concerning the separate due diligence conducted by HR. Because the court has left the door open depending on the course that defendant elects to take, reconsideration of the court's order is not warranted at this juncture.[3]

*Defendant's Continued Objections to Matters Concerning Due Diligence*

The court's December 8, 2006 ruling that defendant's reliance on the "separate" due diligence conducted by human resources has not waived the privilege (or, stated another way, that human resources' due diligence was not inextricably intertwined with the adverse impact review conducted by the legal department) was expressly premised on defendant's representation that it would not lodge privilege objections to questions concerning that due diligence. Plaintiffs now move the court to reconsider its order in part because, according to plaintiffs, defendant,

---

[3]Plaintiffs also highlight in their motion to reconsider defendant's privilege logs which allegedly show that defendant has withheld hundreds of "due diligence" documents based on the attorney-client privilege. These logs were not presented to the court prior to the submission of the motion to reconsider and, thus, the court need not consider those logs at this time. Similarly, plaintiffs criticize the court for failing to specifically address the deposition testimony of Deb Sprayberry and, instead, focusing solely on Ms. Sprayberry's testimony at the evidentiary hearing before Judge Waxse. Ms. Sprayberry's deposition testimony, however, was not submitted to the court in connection with the waiver issue and the court is hard-pressed to find error in failing to discuss that testimony under the circumstances. In any event, because the testimony was submitted in connection with a separate motion to review that the court had before it during the same time frame, the court did, in fact, review that testimony to the extent it provided insight into the waiver issue.

since the court's order, has continued to object to matters that concern purely "due diligence" reviews as privileged material.  However, a motion to reconsider is clearly not the appropriate procedural vehicle to raise this argument.  While the court's order left open the possibility that it might  need to revisit the waiver issue if defendant continued to press its privilege objections with respect to matters concerning human resources' due diligence review, the court's order made clear that it would revisit the issue only after defendant's objections were presented to the magistrate judge for resolution.  Simply put, plaintiffs' complaints to this court concerning defendant's continued objections are premature.

*HR Personnel Utilizing Adverse Impact Analyses in their Own Due Diligence Reviews*

In its December 8, 2006 memorandum and order, the court concluded that defendant's intention to introduce evidence of human resources' due diligence review of selection decisions does not implicate the adverse impact analyses because the record, as presented to the court, demonstrated that human resources conducted a separate, initial due diligence review of selection decisions (consisting primarily of reviewing candidate selection worksheets) that did not utilize the adverse impact analyses in any fashion.  Plaintiffs move the court to reconsider this portion of its order, urging that certain witnesses testified that the due diligence conducted by Human Resources did involve reviewing the adverse impact analyses such that the two review processes are inextricably intertwined.  While plaintiffs previously presented (and the court rejected) this argument, plaintiffs contend that the court did not consider all of the evidence they presented to support their argument.

7

Contrary to plaintiffs' argument, the court considered all the evidence presented by plaintiffs on this issue. The court, for example, quite thoroughly examined and discussed Marvin Motley's testimony and, although plaintiffs disagree with the court's interpretation of that testimony, plaintiffs cannot seriously dispute that the court considered Mr. Motley's testimony in its entirety. While plaintiffs highlight that another employee, Jon Binder, testified that HR "looked" at the adverse impact spreadsheet before sending it on to the legal department, this testimony is not inconsistent with the court's conclusion that the adverse impact analyses were not utilized by HR in connection with the separate due diligence review performed by HR. Plaintiffs also make much of the "best stats" e-mail exchange involving HR employee Gene Lampe and the deposition testimony of Sharon Louk, contending that this evidence clearly indicates that HR was utilizing the adverse impact analyses. But plaintiffs are conflating two separate issues–the issue of HR personnel exchanging adverse impact analyses exclusively among other HR personnel for the purpose of achieving "better stats" and the issue of whether, apart from this activity, HR otherwise performed a separate due diligence review (upon which defendant intends to rely to demonstrate its good faith compliance with the ADEA) that did not involve the adverse impact analyses.

As the court held in its November 9, 2006 order in large part denying plaintiffs' motion to review, the fact that certain adverse impact documents were never sent to counsel and were exchanged exclusively among HR personnel for the purpose of manipulating the decisional units to achieve better statistics is not fatal to defendant's claim of privilege and the court affirmed the magistrate judge's decision that such documents are nonetheless protected by the attorney-client

8

privilege because the documents were made for the purpose of obtaining legal advice.  This issue is entirely distinct from the issue of whether HR conducted a separate non-privileged due diligence review that did not involve use of the adverse impact analyses.  In other words, while the evidence highlighted by plaintiffs in their motion to reconsider indicates that HR on occasion used the adverse impact analyses, the evidence does not indicate that HR did so in connection with its own initial "sore thumb" due diligence review.

*Redaction*

In its December 8, 2006 memorandum and order, the court concluded that, for purposes of trial, all references to "disparate impact" and coordination or counseling with the legal department will be redacted from the Workforce Reduction Guidelines.  In their motion to reconsider, plaintiffs essentially assert that this portion of the court's order is unfair and that they are "uncomfortable" with the court's approach.  Significantly, nearly every argument made by plaintiffs in their motion to reconsider concerning the redaction of the Workforce Reduction Guidelines was either made by plaintiffs in their December 5, 2006 submission to the court (and addressed by the court in its order) or could have been made by plaintiffs in their December 5, 2006 submission to the court.  These arguments, then, are not proper on a motion to reconsider. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (a motion for reconsideration is not appropriate vehicle to revisit issues already addressed or advance arguments that could have been raised previously).  While plaintiffs express concern over whether defendant will be permitted to redact numerous other documents (and appear to fault

the court for failing to address these other documents in its order), plaintiffs overlook the limited holding of the court's December 8, 2006 order–that redaction of the Workforce Reduction Guidelines will be permitted.

Moreover, contrary to plaintiffs' suggestion, the court expressly addressed the other documents submitted by plaintiffs that plaintiffs contended amounted to "written policies and mandatory guidelines."  After reviewing those documents, the court stated that it could not "conclude that any other documents before it constitute the type of 'policy' on which defendant intends to rely to support its good faith defense."  For purposes of plaintiffs' motion to review, then, the court disregarded these other documents, most of which appeared to be stray e-mails referencing "adverse impact" or the need for "legal review" of selection decisions, as the focus of the issue before the court was defendant's reliance on its anti-discrimination policies.  The court, then, had no need to resolve whether any of these documents should be redacted and that issue can be resolved at a later date, assuming the documents are otherwise admissible at trial.

*Pattern and Practice Issues*

Next, plaintiffs contend that the court's memorandum and order is erroneous because it precludes plaintiffs from using evidence (namely, evidence concerning defendant's review of selection decisions for adverse impact) that would assist plaintiffs in proving a pattern and practice of discrimination.  According to plaintiffs, the adverse impact evidence is itself "strong evidence" of a pattern and practice of age discrimination.  This argument is rejected as it is made for the first time on plaintiffs' motion to reconsider.  *See Servants of Paraclete v. Does*, 204 F.3d

10

1005, 1012 (10th Cir. 2000).  In any event, even assuming that evidence of defendant's adverse impact review would be helpful to plaintiffs' case, plaintiffs have not articulated why that, in and of itself, would justify breaching the attorney-client privilege or triggering a waiver of the privilege.

*Crime/Fraud Exception*

Plaintiffs also criticize the court for failing to address in its order the crime/fraud exception to defendant's assertion of the attorney-client privilege.  Curiously, the crime/fraud issue is one that has never been raised by plaintiffs; the court, sua sponte, raised the issue of the applicability of the crime/fraud exception during the November 16, 2006 telephone conference with the parties.  The court was satisfied with defense counsel's responses during that discussion and plaintiffs never raised the issue at any point after the November 16, 2006 conference.  In such circumstances, no issue existed with respect to the crime/fraud exception for the court to address in its December 8, 2006 order.

*Request for In-Person Hearing*

Finally, plaintiffs request an in-person hearing "where these issues can be discussed and where the evidence can be viewed," including video tapes of certain depositions.  Plaintiffs have not previously requested an in-person hearing or oral argument generally concerning their motions to review or specifically concerning the waiver issue and it is inappropriate to make such a request only after the court has denied plaintiffs' motions to review.  Moreover, nothing

11

presented in their motion to reconsider warrants an in-person hearing or oral argument.  Both parties have taken advantage of every opportunity provided to them (and there were many) to submit exhaustive briefing and a full evidentiary record, all of which the court has considered. In such circumstances, the court is confident that oral argument would not assist the court in resolving the issues before it and would not alter the court's conclusions in any manner.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion to reconsider and/or clarify (doc. 4495) is denied.

**IT IS SO ORDERED.**

Dated this 31st day of January, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge