## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHIRLEY WILLIAMS, et al.,

        Plaintiffs,

v.                                         Case No. 03-2200-JWL-DJW

SPRINT/UNITED MANAGEMENT CO.,

        Defendant.

### MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel Defendant's Witnesses to Respond to Deposition Questions (doc. 4362). More specifically, Plaintiffs seek an Order requiring eleven of Defendants' witnesses to reappear for deposition and

- respond to specific questions to which Defendant's counsel previously directed such witnesses not to answer on grounds of privilege; and

- respond to all other questions inquiring into Defendant's RIF-related adverse impact analyses (other than privileged legal advice the witness received).

### Procedural Background

This is not the first time the parties have sought Court intervention in order to resolve a discovery dispute regarding the privileged nature of deposition questions inquiring into the issue of adverse impact analyses. On November 4, 2005, Defendant filed a Motion for Protective Order[1] requesting the Court issue an order precluding Plaintiffs from continued questioning of deponents regarding Defendant's RIF-related adverse impact analyses, which Defendant claims is protected from disclosure by privilege. Given the adverse impact issue in Defendant's Motion for Protective Order was identical to the adverse impact issue presented in various other motions that had been

---

[1]Doc. 3417.

previously filed, the Court deferred ruling on the Motion for Protective Order until the Court had ruled on whether the adverse impact documents were protected from disclosure by privilege.

This Court ultimately resolved this issue in favor of protection by the attorney-client privilege for the adverse impact documents at issue.[2]  In light of these rulings, this Court granted Defendant's Motion for Protective Order regarding deposition questions "to the extent any of plaintiffs' deposition questions require defendant or its agents to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice."[3]  Plaintiffs filed a motion for review this decision with Judge Lungstrum and, on the same day, also filed the instant Motion to Compel Defendant's witnesses to respond to adverse impact deposition questions.

On December 8, 2006, Judge Lungstrum denied Plaintiffs' Motion for Review.  In so doing, he specifically stated as follows:

> The magistrate judge expressly held that plaintiffs could not pose questions that would "require Defendant or its agents to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice" but that plaintiffs could pose questions "regarding underlying facts and data compilations associated with adverse impact analyses (e.g., Master List and RIF List) or information regarding adverse impact analyses that was not generated at the direction of counsel for the purpose of seeking legal advice."

> Significantly, the magistrate judge did not have presented to him by either party any specific examples of potential deposition questions or any specific examples of defendant's objections to specific questions propounded in a deposition. Not surprisingly, then, the magistrate judge did not attempt to speculate as to what questions might be appropriate in the context of a deposition. Again, the appropriate vehicle for plaintiffs to obtain specific guidance is one which they have already utilized through the filing of their motion to compel responses to deposition

---

[2]Docs. 4213 (original) and 4315 (on reconsideration)

[3]Doc. 4343.

questions.[4]

## **Discussion**

Based on this Court's previous ruling regarding adverse impact analyses deposition questions in general, as well as the directive in Judge Lungstrum's December 8, 2006 Memorandum and Order, the Court finds , as a preliminary matter, that the portion of the pending Motion that seeks to compel Defendant to respond to any prospective question "inquiring into Defendant's RIF-related adverse impact analyses (other than privileged legal advice the witness received)" must be denied . This is because, as Judge Lungstrum states, such a request requires this Court to "attempt to speculate as to what questions might be appropriate in the context of a deposition."

With regard to that portion of the pending Motion that seeks to compel Defendant to respond to specific questions, the Court will utilize the following legal standard for the deposition questions posed and the privilege objections lodged:

> Privilege objections to deposition questions will be <u>sustained</u> to the extent a deposition question requires Defendant or its agents to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.

> Privileged objections to deposition questions will be <u>overruled</u> to the extent a deposition question inquire into only underlying facts and data compilations associated with adverse impact analyses (e.g., Master List and RIF List) or information – not confidential – regarding adverse impact analyses that was not generated at the direction of counsel for the purpose of seeking legal advice.

---

[4]Doc. 4462 at p.7.

1.      **BURDEN OF PROOF**

The Federal Rules of Civil Procedure specifically limit the scope of discovery to matters that are "not privileged."[5]  As in this case, a claim of privilege may be made by objection to a question asked at a deposition.[6]  When a party objects and thereafter withholds information otherwise discoverable by claiming privilege, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."[7]  It is the party objecting to discovery on grounds of privilege that has the burden to establish the privilege.[8]

Thus, for each of the attorney-client privilege objections lodged by Defendant during the depositions at issue here, Defendant must provide the necessary information to enable Plaintiffs – and the Court – to assess the applicability of the privilege.  In other words, Defendant bears the burden of providing sufficient facts to demonstrate that the referenced deposition questions require Defendant or its agents to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.

---

[5]Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party") (emphasis added).

[6]*McHan v. Grandbouche*, 99 F.R.D. 260, 268 (D. Kan. 1983).

[7]Fed. R. Civ. P. 26(b)(5).

[8]*In re Universal Serv. Fund Tel. Billing Practices Lit.*, 232 F.R.D. 669, 671 (D. Kan. 2005) (citing *Berroth v. Kansas Farm Bureau Mut. Ins. Co.*, 205 F.R.D. 586, 589 (D. Kan. 2002) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995))).

4

2.      **SPECIFIC DEPOSITION QUESTIONS AND OBJECTIONS**

   a.      <u>**Deposition of David Bottoms**</u>

Q:      Do you know what adverse impact is?

   *Defendant's counsel objects and instructs the witness that "[i]f you can answer that question without revealing that legal advice, that is to say if you have an understanding of what adverse impact is that came to you without HR or legal, then you can answer the question."*

Q:      I'm not asking you, Mr. Bottoms, so that we're clear, for anything that a lawyer said to you. I'm just asking whether or not you understand what adverse impact is.

   *Defendant's counsel objects and instructs the witness that "if that information came to you through any other source other than Sprint legal or HR, because that's the only way it would come through HR is because it came from legal in the first place, then you can answer the question."*

   A:      I would not have any basis of understanding what adverse impact is unless it came through my legal or HR organization.

Q:      Did you get an understanding of what adverse impact was through the HR organization?

   *Defendant's counsel lodges the "same objection" and instructs the witness not to answer*

Defendant argues the questions at issue here seek privileged information and that its counsel justifiably instructed the witness not to answer the questions posed based on the privileged nature of the responsive information.  In support of this argument, Defendant contends that

   •      communications originating from the Legal Department regarding confidential RIF-related adverse impact analyses generated for the purpose of rendering legal advice are privileged; and

   •      the witness testified that he "would not have any basis of understanding what adverse impact is unless it came through my legal or HR organization."

The Court is not persuaded by Defendant's argument.  Even if it is true that communications originating from the Legal Department are privileged if they consist of confidential, adverse impact

analyses generated for the purpose of rendering legal advice, this fact does nothing to establish that the actual adverse impact information communicated from Legal (and possibly through Human Resources) to Mr. Bottoms was (1) confidential in nature; and (2) generated for the purpose of rendering legal advice.  In other words, Defendant fails to establish that the entire range of the witness' adverse impact analyses knowledge (1) originated from the Legal Department; (2) was kept in confidence; and (3) was generated for the purpose of rendering legal advice.  Information regarding adverse impact analyses gleaned by the witness that originated from the Legal Department that was *not* kept confidential and was *not* generated for the purpose of rendering legal advice does *not* satisfy the requirements necessary to invoke the attorney-client privilege. For example, this witness may have learned about concepts related to "adverse impact" analysis through the Human Resources organization in a general training session, through a Human Resources handbook, or a myriad of other channels that do not relate to legal advice.  Defendant bears the burden to establish that all responsive information from the witness is protected from disclosure by the attorney-client privilege.  It is not, as Defendant argues, the duty of Plaintiffs' counsel to rephrase the question at issue to exclude those circumstances where the answers are privileged.

To that end, Defendant's counsel could very well have carried its burden by conducting a comprehensive voir dire examination of the deponent with regard to the entire range of his or her knowledge with respect to adverse impact analyses.  Although, with regard to the deposition questions before the Court, Defendant's counsel appears to have conducted some form of voir dire examination of the witness, counsel failed to inquire into the privileged nature of the entire range of responsive information from the witness.  In order to successfully conduct a voir dire examination of the witness on this issue, counsel should have taken the voir dire examination one step further by

asking whether all information known by the witness and responsive to the deposition questions (1) originated from the Legal Department; (2) was kept in confidence; and (3) was generated for the purpose of rendering legal advice.  Without this information, it is impossible to know whether or not counsel justifiably instructed the witness not to answer any portion of the questions posed based on the privileged nature of responsive information.

Based on this discussion, the Court finds that Defendant has failed to establish that the deposition questions posed to witness David Bottoms require Defendant to reveal confidential adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.  Accordingly, the privilege objections lodged by Defendant are overruled to the extent that the witness must answer the questions posed if he has an understanding of the term "adverse impact" outside of any communication that (1) originated from the Legal Department; (2) was kept in confidence; and (3) was generated for the purpose of rendering legal advice.  Again, Defendant, as the party lodging the objection, bears the burden to establish that the privilege exists.

### b.        Deposition of Deb Sprayberry

Q:     Did you ever share the results of any adverse impact analysis on age done in connection with a RIF event with line management?

*Defendant's counsel: "This question is impinging on the attorney/client privilege, and I'm going to instruct the witness not to answer these questions to the extent in any way, directly or indirectly, divulges any communication either to lawyers or from lawyers, including any legal advice on what to do. I think the Court's rulings have support for that; so I'm going to instruct you not to answer any questions with respect to adverse impact."*

* * * * * * * *

*"I have talked to the witness and any information with respect to adverse impact would be information obtained from discussions with attorneys at Sprint and, therefore, it is our position that that is attorney/client privilege, and so I am instructing this witness not to answer any questions with respect to adverse impact. To the extent any impact ratio analysis questions are directed at trying to back door the adverse impact, I will be compelled to instruct the witness not to answer. So at this point, I am instructing this witness to not answer the pending question that you had with respect to adverse impact, and I will be instructing her not to answer any questions based upon the statement I just made."*

\* \* \* \* \* \* \*

Q:    But you did receive data about the demographics of the work force?

*Defendant's counsel: " I'm going to object to the form of the question. It's impinging on the attorney/client privilege, and I'm going to instruct the witness not to answer."*

Defendant argues the two questions at issue here seek privileged information and that, again, its counsel justifiably instructed the witness not to answer the questions posed based on the privileged nature of the responsive information.  In support of this argument, Defendant states (1) Ms. Sprayberry  previously testified that she was aware of two different review processes – one that was conducted prior to legal review [which would not be privileged] and one that was conducted by the legal department [which would be privileged]; and (2) Plaintiffs' counsel failed to phrase his question about "the results of any adverse impact analysis" so as to exclude analyses conducted at the direction of the legal department or so as to exclude directions issued by the legal department.  For example, counsel could have asked if Ms. Sprayberry had received demographic information for reasons other than the preparation of adverse impact analyses at the direction of counsel.

Based on the discussion set forth in the previous section, the Court finds Defendant has failed to establish that the range of all information responsive to the two deposition questions posed and known by Ms. Sprayberry (1) originated from the Legal Department; (2) was kept in confidence;

and (3) was generated for the purpose of rendering legal advice.  In fact, the argument presented by Defendant in its brief and set forth above strongly suggests that there may be responsive information known by Ms. Sprayberry as a result of the Human Resources independent demographic review, as opposed to the review directed by the Legal Department.

In objecting to the entire question as posed, Defendant bears the burden to establish that all responsive information from the witness is protected from disclosure by the attorney-client privilege. Again, it is not, as Defendant argues, the duty of Plaintiffs' counsel to rephrase the question at issue to exclude those circumstances where the answers are privileged.  Defendant's counsel should have conducted a voir dire examination of the deponent asking whether information known by the witness and responsive to the two deposition questions (1) originated from the Legal Department; (2) was kept in confidence; and (3) was generated for the purpose of rendering legal advice.  Without this information, it is impossible to know whether or not counsel justifiably instructed the witness not to answer any portion of the questions posed based on the privileged nature of responsive information. Accordingly, the privilege objections lodged by Defendant here are overruled to the extent that Ms. Sprayberry must provide any and all responsive information to these questions that do not specifically reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.

        **c.**     **Deposition of Gene Betts**

Q:     Did anyone ever explain to you what adverse impact was, not legal, anyone?

*Defendant's Counsel: "I can just tell you that's the only way he would know, and that clearly seeks legal advice, legal information."*

Q:     Listen to my question carefully. Did anyone other than someone in the legal department ever explain to you adverse impact and what it was?

> *"That still reflects legal advice, because the only way that person would know to pass that information off is through legal advice. And Judge Waxse has said the fact that there is no lawyer present, which is now the context of your hypothetical question, is not an issue."*

To the extent counsel for Defendant's responses to these deposition questions can be construed as objections, both are overruled.   Defendant bears the burden of establishing that the attorney-client privilege exists. Here, that means Defendant must establish that these two deposition questions require Defendant or its agents to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.   Defendant has failed, in both the deposition proceedings as well as the briefing submitted in conjunction with this motion, to voir dire Mr. Betts or provide any facts to support its conclusory assertion by counsel that these two deposition questions require Mr. Betts to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.

### d.   Deposition of John Shannon

During his deposition, Defendant's witness John Shannon was instructed not to answer questions about (1) the data information process and whether someone would be included in the termination analysis if that person had found another position at Sprint; (2) whether or not adverse impact analysis was required under the RIF guidelines; (3) whether or not an adverse impact analysis was done for particular pools; (4) whether or not Mr. Shannon was familiar with Sprint's policies and procedures for doing disparate impact analysis on RIFs since 1991 – even if the knowledge was independent of Sprint's Legal Department; (5) the date that the statistics and calculations were put together for a specific adverse impact analysis; (6) the document or computer program Mr. Shannon used to run adverse impact, as well as what year Mr. Shannon first used the document or program; (7) what Mr. Shannon meant in a document he authored which referenced "if the ratio exceeds 80

10

percent"; and (8) what tool Mr. Shannon used when he was doing an adverse impact analysis that was admittedly on his own and did not have any involvement or direction from Sprint's Legal Department.

Prior to instructing Mr. Shannon not to answer these questions, counsel for Defendant lodged various objections based on the attorney-client privilege on grounds that the questions called for

- analysis done at the direction of counsel;
- advice of counsel;
- communications from counsel;
- legal advice; and
- direction from legal counsel.

On several occasions, counsel for Defendant provided limiting instructions to Mr. Shannon, including that Mr. Shannon should answer if the response did not include information reflecting communications from counsel; or should not answer to the extent the response calls for legal advice or direction from legal counsel.  Defendant argues that the questions at issue here seek privileged information and counsel justifiably instructed the witness not to answer the questions posed based on the privileged nature of the responsive information.  In support of this argument, Defendant asserts that because communications from the Legal Department regarding confidential RIF-related adverse impact analyses generated for the purpose of rendering legal advice are privileged and because Mr. Shannon's knowledge with respect to the questions asked all were learned either directly or indirectly from the Legal Department, then Mr. Shannon's knowledge with respect to the questions asked are all protected from disclosure by the attorney-client privilege.

The Court finds Defendant's reasoning is flawed. As a preliminary matter, counsel for Defendant failed to develop any facts during the deposition (or in the pleadings) to establish that Mr. Shannon's knowledge with respect to the questions asked all were learned either directly or

indirectly from the Legal Department.  Moreover, even if Mr. Shannon had learned all of the responsive information he possessed from the Legal Department, this fact is not determinative of whether such knowledge is protected from disclosure by the attorney-client privilege.  In order to establish  privilege, Defendant must prove that responsive information possessed by Mr. Shannon (1) was kept in confidence; and (2) was generated for the purpose of rendering legal advice. Responsive information gleaned by Mr. Shannon from the Legal Department that was *not* kept confidential and was *not* generated for the purpose of rendering legal advice does *not* satisfy the requirements necessary to invoke the attorney-client privilege. In objecting to the entire question as posed, Defendant bears the burden to establish that all responsive information from the witness is protected from disclosure by the attorney-client privilege.  Again, it is not the duty of Plaintiffs' counsel to rephrase the question at issue to exclude those circumstances where the answers are privileged.

As discussed above, Defendant's counsel could have carried its burden by conducting a voir dire examination of Mr. Shannon with regard to the entire range of his  knowledge with respect to the questions posed.  Although counsel for Defendant on several occasions provided limiting instructions directing the witness not to answer to the extent the responsive information was learned from legal counsel, the Court finds this instruction is insufficient to satisfy the requirements of Fed. R. Civ. P. 26(b)(5), which requires that

> [w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Based on this discussion, the Court finds that Defendant has failed to establish that the

deposition questions posed to witness John Shannon require Defendant, without exception, to reveal confidential adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.  Accordingly, the privilege objections lodged by Defendant are overruled to the extent that Mr. Shannon must answer the questions posed unless Defendant can establish through voir dire examination of the witness or otherwise that responsive information possessed by Mr. Shannon (1) came from the Legal Department; (2) was kept in confidence; and (3) was generated for the purpose of rendering legal advice.

To that end, and taking into account the frequency of privilege objections lodged and subsequent disputes arising between counsel during Mr. Shannon's deposition regarding the propriety of the privilege objections, as well as Mr. Shannon's concessions regarding the "frolic" adverse impact review, the Court will direct the Special Master to preside over the continuation of Mr. Shannon's deposition for the purpose of ruling on any and all adverse impact analysis privilege objections lodged.  The Special Master shall rule on all such privilege objections in accordance with the legal standards set forth in this Memorandum and Order.

### e.   Deposition Excerpts of Fred Harris and Deb Sprayberry

At the deposition of Defendant's witness Fred Harris, Defendant's counsel  asserted the privilege on a document presented to the witness and instructed the witness not to speak to it.  At the deposition of Defendant's witness Deb Sprayberry, Defendant's counsel instructed Ms. Sprayberry not to answer questions about handwritten notations made on documents on grounds that the notations were privileged.  Although it appears from the dialogue between counsel at these depositions that there is a dispute regarding whether or not the underlying documents – or handwritten notations on the documents – may or may not be protected from disclosure by privilege,

the parties did not present this dispute to the Court for resolution.  Because the parties fail to present any discovery dispute regarding questions posed or objections lodged outside the context of the referenced documents, and because the privileged nature of the documents is not an issue currently before the Court, the Court will make no ruling with regard to questions posed or objections lodged during the depositions of Fred Harris and Deb Sprayberry.

      **f.**    **Depositions of Richard Blanc, Katherine Downey, Jon Binder, Linda Gamso, Vicki Kolb, and Leon Lang**

The deposition questions at issue with regard to Richard Blanc, Katherine Downey, Jon Binder, Linda Gamso, Vicki Kolb, and Leon Lang are set forth in Appendix 1 at the end of this opinion.  Based on the discussion set forth in Section 2(a) regarding deposition questions posed to David Bottoms, the Court finds that Defendant has failed to establish that the deposition questions posed to witnesses Blanc, Downey, Binder, Gamso, Kolb and Lang require Defendant to reveal confidential adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.  As noted above, Fed. R. Civ. P. 26(b)(5) provides that when a party objects and thereafter withholds information otherwise discoverable by claiming privilege, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."[9]

Here, Defendant has failed to provide the necessary information to enable Plaintiffs – and the Court – to assess applicability of the privilege.  In other words, Defendant has failed to  provide sufficient facts to demonstrate that the referenced deposition questions require witnesses Blanc,

---

[9]Fed. R. Civ. P. 26(b)(5).

Downey, Binder, Gamso, Kolb or Lang to reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice. Accordingly, the privilege objections lodged by Defendant to the Blanc, Downey, Binder, Gamso, Kolb and Lang deposition questions presented are overruled to the extent that these witnesses must answer the questions posed unless Defendant can demonstrate – through voir dire examination of the witness or otherwise – that the responsive information (1) originated from the Legal Department; (2) was kept in confidence; and (3) was generated for the purpose of rendering legal advice.

**3.     EXISTING AND FUTURE DISCOVERY DISPUTES REGARDING THE PRIVILEGED NATURE OF ADVERSE IMPACT ANALYSES DEPOSITION QUESTIONS**

In addition to requesting that the eleven witnesses reappear for deposition and respond to specific questions to which Defendant's counsel previously objected, Plaintiffs advise they may seek Court intervention to resolve additional disputes regarding the privileged nature of adverse impact analyses deposition questions. Given the precise legal standard necessary to resolve these deposition disputes has been set forth by the Court in this Memorandum and Order, the Court finds it appropriate to refer all existing and future discovery disputes on this issue to the Special Master for resolution. Thus, Plaintiff's Sealed Motion for Relief (doc. 4535) and any other motion filed after October 13, 2006 seeking relief related to deposition questions and/or privilege objections dealing with the topic of adverse impact analyses shall be referred to the Special Master for decision.

**4.     SUMMARY OF RULING**

Based on the discussion above, Plaintiffs' Motion to Compel is granted in part and denied in part as follows:

(1)     That portion of the Motion that seeks to compel Defendant to respond to any

15

prospective question "inquiring into Defendant's RIF-related adverse impact analyses (other than privileged legal advice the witness received)" is <u>denied</u> on grounds that it requires this Court to speculate as to what questions might be appropriate in the context of a deposition;

(2)    That portion of the Motion that seeks to compel eleven of Defendants' witnesses to reappear for deposition and respond to specific questions to which Defendant's counsel previously directed such witnesses not to answer on grounds of privilege is <u>granted</u> and

    (a)    the privilege objections previously lodged by Defendant in these eleven depositions are overruled to the extent that the witnesses must provide any and all responsive information that does not reveal confidential RIF-related adverse impact analyses generated at the direction of counsel for the purpose of rendering legal advice.

    (b)    Defendant, as the objecting party, shall bear the burden to establish – through voir dire examination of the witness or otherwise – that responsive information possessed by the witnesses (i) originated from the Legal Department; (ii) was kept in confidence; and (iii) was generated for the purpose of rendering legal advice;

It is further ordered that the Special Master shall preside over the continuation of Mr. Shannon's deposition for the purpose of ruling on objections lodged that deal with the privileged nature of testimony regarding adverse impact analyses. The Special Master shall rule on all such privilege objections in accordance with the legal standards set forth in this Memorandum and Order.

It is further ordered that the August 30, 2006 Amended Order Appointing Special Master (doc. 4298) shall be further amended to authorize referral to the Special Master all existing and potential discovery disputes that have arisen or may arise during depositions regarding applicability of privilege to testimony regarding adverse impact analyses. Thus, Plaintiff's Sealed Motion for Relief (doc. 4535) and any other motion filed after October 13, 2007 seeking relief related to

deposition questions and/or privilege objections dealing with whether adverse impact analyses testimony is protected from disclosure by privilege shall be referred to the Special Master for decision. The Special Master shall rule on all such privilege objections in accordance with the legal standards set forth in this Memorandum and Order.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 7th day of February, 2007.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:    All counsel and *pro se* parties

17

## APPENDIX 1

**Deposition Excerpts of Richard Blanc**

Q:    Do you remember the term adverse impact being used in the context of RIF selection guidelines?

   A:    I have heard the term.

Q:    What is your understanding of what the term means, if you have one?

   *Defendant's counsel: "His only understanding would come through advice of counsel which could come through HR, and so I object and instruct the witness not to answer on the basis of privilege."*

Q:    Absent anything you have heard from attorneys, do you know what adverse impact means?

   *Defendant's counsel: "Can you [Mr. Blanc] answer whether or not you have an understanding of what adverse impact is without basing that answer on discussions with either HR or legal?"*

   A:    No, I can't.

* * * * * * * *

Q:    Did you know in the fall of 2001 that the selections of employees to be reduced had an adverse impact on people over 40 in your department?

   *Defendant's counsel: "That question, because – the only way he would have that information, once again, would call for the communication of legal advice, and so I object on the basis of privilege and instruct the witness not to answer."*

**Deposition Excerpts of Katherine Downey**

Q:    When did you learn the 80 percent rule? Was that at Xerox?

   A:    Yes, it would have been at Xerox.

Q:    And is Exhibit 1892, is that the 80 percent rule being applied that you learned at Xerox?

   *Defendant's counsel: "I'm going to object to the form of the question, again, and I instruct not to answer."*

* * * * * * * *

18

Q:      All right, so does the 80 percent rule as it's allowed out in Exhibit 1892 differ any way from that in terms of the math and the way it's calculated from the way you learned it at Xerox prior to ever coming to work for Sprint?

*Defendant's counsel: "Object to the question.  Instruct not to answer; grounds, attorney-client privilege."*

Q:      And was what you were doing at Xerox, simply applying the published EEOC guideline?

*Defendant's counsel: "Object to the form of the question. It again puts her in the position of very possibly waiving her former employer's privilege and I object and I'll instruct her not to answer to the extent that it involves any discussions with Xerox counsel."*

Q:      Let's go at it this way because I really don't want to trample on what he's saying. If you are doing it differently at Xerox for any reason, whether it's counsel or otherwise, I don't want to know about it and I'll stop asking you questions, but if what you did at Xerox was simply follow the EEOC guideline in the public domain, that's what I'm asking you about. Was the rule you were applying word for word, letter for letter, the application of the EEOC public domain guideline when you were at Xerox?

*Defendant's counsel: "I will allow you to answer that question only if it was done totally independent of Xerox's counsel and any advice that they may have had or direction."*

A:      We had an organization. It was called the Affirmative Action Department.  They did all the calculations. They did it via spreadsheets. They followed the EEOC guidelines and I didn't have to be concerned about it because it was done for me.

**Deposition Excerpts of Jon Binder**

Q:      And the last hash mark, "Discuss individual employee circumstances resulting from legal review with execs." Do you know what that was about.

*Defendant's counsel: "I'm going to object on the basis of attorney-client privilege. I think that question may possibly call for him to disclose any understanding he has. That bullet point clearly deals with legal review. And instruct the witness not to answer unless you have some understanding, outside of information that came directly or indirectly to you from the legal department. objects and instructs the witness not to answer."*

\* \* \* \* \* \* \* \* \* \*

Q:      All right. And when you get an e-mail from John St. Angelo, and it says, among other action

19

items, is to discuss individual employee circumstances resulting from legal review, did you have any understanding -- I'm just asking as a "yes" or "no," did you have any understanding as to what he meant by that legal review?

*Defendant's counsel: "And that's where I'll interject that same objection. You can answer that if you have an understanding, other – coming from some other source as to what your understanding was."*

* * * * * * * * * *

Q:    What is disparate impact?

*Defendant's counsel: "Object to the extent that any – if your only knowledge of that has come from -- directly or indirectly from Sprint's legal department. If you have an understanding, outside of that, you can testify to it."*

* * * * * * * * * *

Q:    Do you know whether there is a mathematical formula involved in [the sore thumb] process?
*Defendant's counsel: "I'm going to object to the extent that it calls for him to reveal information protected by the attorney-client privilege. Instruct him not to answer if that knowledge would have come directly or indirectly from his work at Sprint or Sprint's legal department."*

* * * * * * * * * *

Q:    Part of that review would be reviewing in advance for disparate impact analysis, correct?

*Defendant's counsel: "I'm going to object. Instruct him not to answer any more questions about disparate impact analysis."*

Q:    Was there an adverse impact study done on annual evaluations?

*Defendant's counsel: "Object on the basis of attorney-client privilege, and instruct you not to answer."*

## Deposition Excerpts of Linda Gamso

Q:    Let me ask you this. Do you recall ever receiving any specific training offered by Sprint or anyone else with respect to discrimination or disparate impact during the period of time 2000 through 2002?

*Defendant's counsel: "I'm going to object to that question to the extent it would invade the attorney-client privilege with respect to any communication or training*

*communicated by or from the Law Department or any attorneys representing Sprint.
If you can answer that question without, you know, separate from any discussion that
you had with the lawyers you may answer the question. If you cannot do so then I'm
going to instruct the witness not to answer on the basis of the attorney-client
privilege."*

    A: Training is a broad term. We had guidance in our discussions from HR, our
Human Resources organization, about discrimination.

Q:    All right, do you know what disparate impact means?

*Defendant's counsel: "Same objection."*

A:    No.

Q:    Do you recall receiving any sort of training, whether it be verbal training or materials given
to you that describe what the term disparate impact means?

*Defendant's counsel: "Same objection. I'll instruct the witness not to answer the
question to the extent that it would invade the attorney-client privilege based upon
any communications from or through counsel. If you can answer the question without
disclosing that conversation, you may do so."*

A:    No.

## Deposition Excerpts of Vicki Kolb

Q:    Did you ever do a due diligence review of the 10 percent population, the bottom 10 percent
list?

*Defendant's counsel: "If you could answer that question without revealing legal
advice, go ahead."*

A:    And I cannot.

Q:    I'm not asking you for legal advice, I'm just asking whether you ever did a due diligence
review of the bottom 10 percent list?

*Defendant's counsel: "And that's the same instruction."*

A:    No.

Q:    Did you ever participate in a due diligence review for the bottom 10 percent?

21

A:      Participation with legal.

Q:      Did legal do a due diligence review of the bottom 10 percent?

*Defendant's counsel: "The only way she would know that is if there was communication from legal so you're instructed not to answer that question."*

A:      No comment.

* * * * * * * *

Q:      Did you ever see the results of any impact analysis with regard to any RIF event that occurred in Michael Seitz's business unit?

*Defendant's counsel: "Hang on, that question necessarily calls for communications from Legal so I'm instructing you not to answer the question."*

Q:      Do you know how to do an impact ratio analysis?

*Defendant's counsel: "Again the only way she would know that is if it came from Legal.  I'm instructing the witness not to answer."*

* * * * * * * *

Q:      Did you communicate any adverse impact information to Loren Sprouse or his organization?

*Defendant's counsel: "Object if you're just talking generally but if you're talking about from this document."* Instruct the witness not to answer.

**Deposition Excerpts of Leon Lang**

Q:      Well, what did you understand adverse impact was to be used for?

*Defendant's counsel: "Well, I object. Don't answer the question. That would be privileged."*