IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHIRLEY WILLIAMS, et al.,

          Plaintiffs,

                                         CIVIL ACTION

v.

                                         No. 03-2200-JWL-DJW

SPRINT/UNITED MANAGEMENT
COMPANY,

          Defendant.

## MEMORANDUM AND ORDER

Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated, asserting that her age was a determining factor in Defendant's decision to terminate her employment during a reduction-in-force (RIF).  This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and the parties are presently engaged in discovery concerning the merits of Plaintiffs' pattern and practice allegations.

This matter is presently before the Court on Plaintiffs' Motion to Compel Defendant to Produce Documents with Original Bates Numbers (doc. 4246).  Plaintiffs request that Defendant re-produce the following documents with their original bates numbers:  (1) documents bearing the new bates numbers 201807 through 202605, and (2) documents that Defendant included on its privilege log but later determined had been previously produced in the litigation.  Defendant opposes the motion, arguing that the mental impressions of its in-house counsel will be revealed if it is required to produce these documents with their original bates numbers.  For the reasons set forth below, the motion is granted.

## I.    History of the Discovery Dispute

On January 23, 2006, Defendant served Plaintiffs with a privilege log with respect to the August 12, 2005 production ordered by District Judge Lungstrum.  Listed on Defendant's privilege log were documents contained in the files of Defendant's in-house counsel marked as "Work Product - from legal department files."  Defendant identified these documents on its privilege log by the beginning and ending bates numbers of the legal files.

After receiving Defendant's privilege log, Plaintiffs challenged Defendant's inclusion of the legal file documents on the log, primarily because the privilege log entries for these files were left blank.   When Plaintiffs requested more information, Defendant's counsel conceded that some of the individual documents contained in the legal file may not be privileged and offered to determine which legal file documents had already been produced to Plaintiffs from other sources, such as from a Human Resources file or a manager's file.  They also offered to produce any legal file documents that had not already been produced from another source, though without identifying the in-house attorney from whose file the document originated.

On February 27, 2006, Defendant provided Plaintiffs with a supplemental privilege log specific to the legal file documents.  This supplemental privilege log included more information for the legal file documents listed.

On April 27, 2006, Defendant produced to Plaintiffs a disk of the legal file documents that had not already been produced from other sources.  Prior to producing  these documents, Defendant re-issued bates numbers, different from those numbers by which the documents were identified on the privilege log.   The documents were re-numbered as bates numbers 201807 through 202605.

On May 30, 2006, Defendant faxed Plaintiffs an eleven-page list of bates number ranges

reflecting documents appearing on its second supplemental August 12, 2005 privilege log which had been produced in the litigation from other sources.  Defendant's fax stated "[w]e are maintaining these documents on the privileged log because they were located in lawyers' files inside of [Defendant's] legal department."[1]

Plaintiffs raised the issue of Defendant's April 27 production of the non-privileged documents listed on the privilege log with their new bates numbers at the June 1, 2006 discovery conference.  They requested that the Court order Defendant to produce the documents with their original bates numbers.  The Magistrate Judge advised Defendant that it needed to include the original bates numbers when it produces documents once claimed as privileged, stating as follows:

> It makes sense if you're talking about producing things that were on a privilege log but shouldn't have been, they have to have the same number that was on the privilege log. Because it doesn't make sense to send a group of documents that you can't figure out how it relates to the privilege log. So if that hasn't been done, it needs to be done. And why don't we say get it done by the next status conference. And it may be something that's already done.[2]

Defendant responded that it was concerned that Plaintiffs were trying to find out what documents were located in the attorney legal files.  It argued that identification of the documents contained in an attorney's file constitutes the mental impressions of the attorney.

Plaintiffs also requested that the Court order Defendant to produce all the documents it identified by bates number ranges on its May 30 eleven-page correspondence with their original bates numbers.  This listing identified documents that Defendant had included on its privilege log but later determined had been previously produced in the litigation.  Plaintiffs reported that

---

[1]Pls. Mot. to Compel (doc. 4246), Ex. 10.

[2]June 1, 2006 Discovery Conference Transcript ("Tr."), p. 47-48.

Defendant's list failed to provide any bates number of any documents that correlated back to the privilege log.

After further discussion, the Magistrate Judge deferred the matter until Defendant could provide more explanation.  The parties discussed the issue again at their June 22, 2006 meet and confer session, which ended with Defendant refusing to produce the documents with their original bates numbers or provide any corresponding index identifying the bates numbers where the specific documents were previously produced.  Plaintiffs thereafter filed the present Motion to Compel.

## II.    Law Regarding Work Product Protection for Attorney's Mental Impressions

The work product doctrine, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects against disclosure of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."[3]  As the Supreme Court stated in its oft-cited *Hickman v. Taylor* opinion, the work product doctrine recognizes that:

> It is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . .[4]

The work product doctrine, however, "is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product

---

[3]Fed. R. Civ. P. 26(b)(3).

[4]*Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947).

-4-

or facts contained within work product."[5]

Courts have generally recognized a difference between discovery of documents prepared in anticipation of litigation setting forth factual information and discovery of documents prepared in anticipation of litigation setting forth the mental impressions, conclusions, opinions, or legal theories of an attorney.[6]  Documents containing factual information prepared in anticipation of litigation are generally referred to by the courts as "fact work product" and documents containing the mental impressions of an attorney are generally referred to as "opinion work product."[7]

Disclosure of fact work product may only be obtained by a third party who satisfies the "substantial need/undue burden test" by demonstrating a substantial need for the material and an inability to develop the information otherwise without undue hardship.[8]  In contrast, there is no universally accepted standard regarding the level of protection accorded to opinion work product. The Supreme Court has indicated, however, that opinion work product is normally afforded a greater protection than other kinds of work product.[9]

The party asserting a work product privilege as a bar to discovery must prove the doctrine

---

[5]*Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

[6]*Frontier Refining, Inc. v. Gorman-Rupp Co.,* 136 F.3d 695, 704 n. 12 (10th Cir.1998).

[7]*Simmons Foods, Inc. v. Willis,* 196 F.R.D. 610, 612 (D. Kan. 2000).

[8]*Id.*

[9]*Hickman*, 329 U.S. at 511;  *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (work product revealing an attorney's mental processes cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship).

is applicable.[10]  A mere allegation that the work product doctrine applies is insufficient.[11]  The party

asserting the privilege must establish all elements of the asserted immunity/privilege.[12]

## III.    Discussion and Analysis

Defendant justifies its production of documents with bates numbers different from those on

its privilege log on the grounds that production of the documents with their original bates numbers

will reveal the mental impressions of its counsel, which are protected opinion work product.  It

argues that production with different bates numbers is necessary to protect the identities, and thus

the mental impressions, of the in-house attorneys who selected the documents for inclusion in their

work files.  These documents were identified, selected, and compiled by Defendant's in-house

attorneys in anticipation of litigation both during the reductions in force and during the course of

this litigation.  Defendant claims that the documents reveal who these attorneys have gone to for

information, and what issues they believe are important in this litigation.  Permitting Plaintiffs'

counsel to make the link between the legal file documents listed on the privilege log and the

particular in-house attorneys who identified, selected, and compiled those documents will

necessarily reveal the mental impressions of these attorneys.

Plaintiffs argue that Defendant has made no factual showing in support of its contentions,

much less a showing sufficient to sustain its burden on this issue. They further argue that

Defendant's explanation does not factually hold water given that the privilege log provided does not

identify the specific in-house attorneys.  According to Plaintiffs, under Defendant's newly-contrived

---

[10] *Resolution Trust Corp.*, 73 F.3d at 266.

[11] *Id.*

[12] *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000).

logic and argument, Defendant's privilege log itself should be deemed privileged because it provides much information on what specific in-house attorneys were working on what matters and when.

Plaintiffs further claim that Defendant is now using its own self-created problem of logging these documents on the privilege log instead of producing them as an excuse to avoid its discovery obligations. They argue that Defendant did not meet its discovery obligations to originally produce these documents. Instead, it improperly withheld them from discovery, listing them as privileged and only ultimately admitting they were not privileged after challenged by Plaintiffs' counsel.

As the Court previously stated at the June 1, 2006 discovery conference when this issue was first raised, if Defendant is producing documents that were incorrectly included on a privilege log, then it has to produce them with the same bates numbers it used on the privilege log. Defendant's own actions in logging these non-privileged documents on the privilege log created this problem in the first instance. It should not now be able to avoid producing these documents with their original bates numbers because of its action of including them on the privilege log as part of in-house counsel's legal files. Defendant's production of these non-privileged documents with new bates numbers prevents Plaintiffs from being able to determine what documents, previously included on Defendant's privilege log, are now being produced.

Defendant has not convinced the Court that production of the non-privileged documents with their original bates numbers would reveal the mental impressions of its in-house counsel. Defendant cites three cases from other jurisdictions in support of its contention that an attorney's selection of unprivileged documents is protected work product.[13] The cases cited by Defendant however are

---

[13]*Shelton v. American Motors Corp.*, 805 F.2d 1323, 1326 (8th Cir. 1986); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982); *Sporck v. Peil*, 759 F.2d 312, 315-316 (3d Cir. 1985).

inconsistent with the District of Kansas cases holding that mere selection and grouping of information does not transform discoverable documents into work product.[14]

In *Bohannon v. Honda Motor Co. Ltd.*, the plaintiff made a similar claim that counsel's selection of documents constituted opinion work product.[15]  Magistrate Judge Rushfelt, noting that neither plaintiff nor his attorney generated, grouped, or synthesized the documents, found that disclosure of the documents would not disclose the mental processes of counsel.[16]  The *Bohannon* opinion compared the Third Circuit's holding in *Sporck v Beil*[17] with the First Circuit's later contrary holding in *In re San Juan Dupont Plaza Hotel Fire Litigation*.[18]  In concluding that the First Circuit's decision in *San Juan* was the sounder rule, the Court agreed that *Sporck* was "flawed because it assumes that the revelatory nature of the sought-after information is, in itself, sufficient

---

[14]*Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs*, 183 F. Supp. 2d 1280, 1291 (D. Kan. 2001) (requiring defendant to disclose the list of public documents consulted in the compilation of two protected reports did not permit an unfair "peek" into defendant's legal mind);  *Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 539-40) (D. Kan. 1989) (rejecting  argument that counsel's gathering and selection of third-party documents constitutes opinion work product);  *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, 164 F.R.D. 250, 252-53 (D. Kan. 1996) (collecting and organizing discoverable documents in a notebook did not make the notebook protected work product.");  *American Cas. Co. of Reading, Pa. v. Healthcare Indem., Inc.*, No. CIV.A. 00-2301-DJW, 2001 WL 1718275, at *3 (D. Kan. May 21, 2001) (rejecting defendant's claim that selection and grouping of the documents within the claims file accords the entire claims file work product protection); *but, see, Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 683 (D. Kan. 1986) (holding selection and compilation of documents used to refresh witness's memory were protected by work product doctrine pursuant to Fed. R. Evid. 612).

[15]127 F.R.D. 536, 539 (D. Kan. 1989).

[16]*Id.*

[17]759 F.2d 312, 319 (3d Cir.1985).

[18]859 F.2d 1007, 1018 (1st Cir. 1988).

-8-

to cloak the information with the heightened protection of opinion work product.[19]  That is simply not the case; much depends on whether the fruits of the screening would soon be revealed in any event . . .".[20]

In *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*,[21] the plaintiff sought to compel the defendant to produce a bound notebook of documents reviewed and relied upon by a witness before the third session of his deposition.[22]  The court, noting that the defendant had previously produced all the documents contained in the notebook, found that the defendant had not supported its claim of work product under Fed. R. Civ. P. 26(b)(3), i.e., the material must be documents and tangible things, prepared in anticipation of litigation or for trial, and prepared by or for another party or for that other party's representative.[23]  It held that collecting and organizing discoverable documents in a notebook did not make the notebook protected work product.[24]

In *Raytheon Aircraft Co. v. U.S. Army Corps of Engineers*,[25] the court noted that there are conflicting authorities on whether the selection and compilation of documents warrants work product protection.[26]  Upon analyzing the two privileged reports at issue, the *Raytheon* court

---

[19]*Bohannon*, 127 F.R.D. at 539.

[20]*Id.* at 539 (citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988).

[21]164 F.R.D. 250 (D. Kan. 1996).

[22]*Id.* at 252-53.

[23]*Id.* at 253.

[24]*Id.*

[25]183 F. Supp. 2d 1280 (D. Kan. 2001).

[26]*Id.* at 1290-91.

concluded that the dissemination of a list of public documents that the reports were based upon would not reveal anything the work product doctrine sought keep sacrosanct and did not permit an unfair "peek" into the defendant's legal mind.[27]  It further held that disclosing the documents underlying the two reports would not compromise counsel's protected mental impressions.[28]

These decisions reiterate the general rule in this district that the mere selecting and grouping of information does not transform discoverable documents into work product.  Defendant has not persuaded the Court to depart from this general rule.  Defendant has not established that the mental impressions of its in-house counsel will be revealed if it is required to produce non-privileged documents with their original bates numbers.  The parties agree that the documents previously listed on Defendant's privilege log are not privileged or protected from disclosure as work product.  Even assuming that Plaintiffs may be able to extrapolate backwards from the original bates numbers to Defendant's privilege log and ascertain which particular attorney file contained the document, this does not create work product protection to preclude the production of the non-privileged documents with their original bates numbers.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Defendant to Produce Documents with Original Bates Numbers (doc. 4246) is granted.  **Within 10 days of the date of this Memorandum and Order**, Defendant shall re-produce the following documents **with their original bates numbers**: (1) documents bearing the new bates numbers of 201807 through 202605, and (2) documents identified by Defendant on its May 30, 2006 eleven-page listing of bates numbers ranges appearing on the privilege log but produced in the litigation from other sources.

---

[27]*Id*. at 1291.

[28]*Id.*

**IT IS FURTHER ORDERED** that although the Court overrules Defendant's work product objection, the Court finds the objection to be substantially justified under Fed. R. Civ. P. 37(a)(4)(A) so that the parties shall bear their own costs incurred with making the motion.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 27th day of February, 2007.


s/ David J. Waxse
David J. Waxse
United States Magistrate Judge


cc:     All counsel

-11-