**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SHIRLEY WILLIAMS, et al.                      )
                            Plaintiffs,        )
         vs.                                   )          Case No. 03-2200-JWL
                                               )
SPRINT/UNITED MANAGEMENT COMPANY,  )
                            Defendant.         )

## ORDER OF FINAL APPROVAL OF SETTLEMENT

This matter is before the Court in connection with the Joint Motion for Final Approval of Settlement filed by the parties, and the Court herewith enters its Order of Final Approval of Settlement for the reasons stated here.

## I.    BACKGROUND

The proposed settlement provides $57 million dollars in monetary relief to the 1,697 member collective action previously certified under the Age Discrimination in Employment Act ("ADEA"). On May 30, 2007, this Court granted preliminary confirmation of the proposed settlement and appointed a settlement administrator. Specifically, the Court found, based on the parties' joint filing, the Court's knowledge of the record, and the hearing with the parties, that the terms of the Master Full and Final Settlement Agreement of All Claims ("Settlement Agreement") appeared to be "reasonable, adequate, fair, and consistent with relevant state and federal law and warrants notice thereof being given to the individual Plaintiffs." As a result, the Court approved the Settlement Agreement preliminarily and approved the form of Notice and Individual Releases to be sent to all Named Plaintiffs and Opt-In Plaintiffs. The Court's Order also stayed all further litigation in this matter as of May 1, 2007 pending confirmation of the Settlement, approved of procedures regarding the sending of the Notice, and approved of the procedures for any Plaintiff to object and/or withdraw

according to the terms of the Settlement Agreement.

The Settlement Administrator subsequently sent a Court-approved Notice of the proposed settlement to the ADEA Opt-In Plaintiffs.  Among other things, the Notice advised the Opt-In Plaintiffs of the settlement terms and the monetary share for each particular Opt-In Plaintiff.  It also instructed them of their right to withdraw and/or object to the settlement and provided the specific date for the final hearing on this settlement.

As of the date of the hearing on the Motion for Final Approval, 1,555 of the 1,686 Opt-In Plaintiffs have sent in signed Releases agreeing to the settlement terms.  There were seven notices of withdrawal executed by Opt-In Plaintiffs, but each of those withdrawal notices were accompanied by other executed documents that indicated the Opt-In Plaintiff wanted to participate in the settlement. Each of these seven Opt-In Plaintiffs has signed statements voiding their withdrawal and indicating that each did not intend to withdraw but instead wishes to remain in the settlement.  As such, no Opt-In Plaintiff has effectively withdrawn from this settlement.  Only two Opt-In Plaintiffs have submitted objections to the settlement but, as set forth on the record at the Final Confirmation Hearing and as incorporated herein, those objections are overruled.

There has been no evidence provided to the Court that suggests that the settlement is anything other than the result of arm's length negotiations between the parties after extensive litigation, including extensive discovery of Sprint's policies, practices and statistical data, and other exchanges of information and discussions.

A hearing to consider final approval of the proposed collective action settlement was held on September 10, 2007.  Based upon the Court's observation of this litigation and the filing of the parties, including the Settlement Agreement, the Motion for Final Approval and Exhibits, the

2

objections by Opt-In Plaintiffs Philip Bodine and Ruby Harvey-Burgin, and the parties' other filings, the Court grants final approval to the Settlement Agreement.  This Order, which incorporates the findings and conclusions made by the Court on May 30, 2007, explains the findings and reasoning that support the determination that the settlement is fair, adequate and reasonable and consistent with relevant law.  The Court also finds and hold that the releases signed by the Plaintiffs and Opt-In Plaintiffs are in compliance with applicable law, including the Older Workers Benefits Protection Act, 29 U.S. C. § 626(f).

## II.   STANDARD OF REVIEW

In assessing the fairness of this settlement, this Court utilizes the "universal standard" of "fairness, adequacy and reasonableness." Binker v. Commonwealth of Pennsylvania, 977 F.2d 738, 747-48 (3d Cir. 1992)(ADEA case).  A proposed class action settlement [under Rule 23] should be approved as long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." Ingram v. Coca-Cola Co., 200 F.R.D. 685 (N.D. Ga. 2001)(Title VII class settlement).

In addition to examining the collusion issue, some of the relevant factors the Court may consider in determining whether a settlement is fair, adequate, and reasonable have been enumerated as follows:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Bennet v. Behring Corp., 737 F. 2d 982, 986 (11th Cir. 1984).

The Tenth Circuit expressed these factors in a similar fashion in Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188-89 (10th Cir. 2002):

(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

## III.    FINDINGS AND CONCLUSIONS

Applying the pertinent factors to this settlement and considering the only two objections, the Court finds that this settlement was fairly and honestly negotiated and is fair, adequate, and reasonable.

### A.    The Proposed Settlement Was Fairly And Honestly Negotiated

No Plaintiff or Opt-In Plaintiff has complained that the proposed settlement was not fairly and honestly negotiated. Indeed, counsel aggressively litigated this case for more than four years. Several hundred depositions were taken or defended, more than 1,000,000 pages of documents were exchanged, and large databases of employment-related information were produced. The Court appointed David J. Waxse, United States Magistrate Judge, and Special Master John Phillips to decide numerous and contentious discovery disputes that arose during the case. At the time a settlement was reached, significant discovery had been conducted and expert reports had been exchanged. The parties were cognizant of the strengths and weaknesses of their respective cases and were preparing for briefing of significant motions relating to pattern and practice and collective action claims. The settlement was negotiated at arm's length over a protracted period of time. The settlement was fairly and honestly negotiated.

### B.    The Proposed Settlement Is Fair, Adequate, And Reasonable

#### (1)    Likelihood of Success at Trial and Range of Potential Recovery

4

The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement.  That is, the benefit this settlement provides to the Opt-In Plaintiffs should be compared with the likely recovery for the collective action group at trial.  This question concerns three factors which are closely related: (1) the likelihood of success at trial; (2) the range of possible recovery; and (3) the point on or below the range of possible recovery at which a settlement is fair, reasonable, and adequate. "This standard often justifies approving settlements that are substantial compromises of the relief that could be obtained through litigation." Ingram, 200 F.R.D at 689.

In their filings with the Court, the parties have set forth several of the relative risks facing both Plaintiffs and Defendant that they assessed prior to reaching this settlement.  Both parties had risks to evaluate.  The next phase in the litigation would have involved significant disputes regarding the strength and validity of each side's statistical evidence and the propriety of allowing this action to continue to proceed collectively.  Plaintiffs produced expert reports identifying statistical evidence of discrimination, while Defendant produced expert reports attacking the assumptions utilized by Plaintiffs' experts and offering a competing model of analysis that produced no statistical evidence of discrimination.  Even if the Court were to conclude that Plaintiffs had produced sufficient evidence to avoid decertification and survive summary judgment on the question of pattern and practice liability, there were risks that Plaintiffs could lose the jury trial on that issue, followed in any event by the risk that some unknown number of Opt-In Plaintiffs would lose their Stage II hearings and receive no compensation at all.  See Teamsters v. United States, 431 U.S. 324, 344 (1977) (noting that employer may challenge any particular individual's entitlement to recovery in Stage II proceeding).  In short, the Court finds that serious questions remained to be resolved, which

placed the ultimate outcome of the litigation in doubt.

### (2)   The Complexity, Expense and Duration of Further Litigation

The litigation and settlement of this case resulted in the collective action group obtaining a significant benefit. "[C]ases such as this typically take years, if not decades, to resolve to judgment." <u>Ingram</u>, 200 F.R.D. at 690-91 (citing cases and expert testimony and noting that "a credible projection for litigating this case through class certification and Stage I and Stage II trials, not to mention multiple opportunities for appeal, is ten years from the date of filing."). As in <u>Ingram</u>, "each phase of litigation would entail substantial expert costs, attorney time, travel and deposition costs, and other expenses. Trial on the merits would require consideration of complex dueling statistical models. In short, the likely alternative to settlement now is lengthy, burdensome, and expensive litigation." <u>Id.</u> at 691. The benefit of obtaining relief now, rather than years from now, makes approval of this settlement in the best interests of the collective action group. <u>See id.</u>

### (3)   The Stage of Litigation at Which the Settlement was Reached

As noted above, this case did not settle until both sides had engaged in significant discovery over a four-year period and had developed important issues. The parties actively pursued numerous discovery-related motions and issues. At the time a settlement was reached, the parties were cognizant of the strengths and weaknesses of their respective cases and had the ability to make a reasoned judgment about the merits of the case during settlement negotiations.

### (4)   The Substance and Amount of Opposition to the Settlement

Opposition to this settlement is virtually non-existent. Over 90% of the Opt-In Plaintiffs affirmatively demonstrated their assent to the settlement by returning signed releases endorsing it. All but two of the other 10% of the Opt-In Plaintiffs have agreed to the settlement by forbearing

their rights to withdraw or object, effectively electing to retain the benefits of the settlement.  Only two Opt-In Plaintiffs objected to the settlement.  Those objections were based not on whether the settlement itself is appropriate but on whether the objectors' portions of the settlement was appropriately calculated.  While the number of objectors is "not controlling," <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977), a relatively small number of objectors can be taken as "some indication that the class members as a group did not think the settlement was unfair."  <u>Kincade v. General Tire & Rubber Co.</u>, 635 F.2d 501, 506 n.4 (5th Cir. 1981).  This concept applies with particular force here.

### (5)    The Judgment of Experienced Counsel

In a case where experienced counsel represent the class, the Court "absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel," and the "trial court is entitled to rely upon the judgment of experienced counsel for the parties." <u>Cotton</u>, 559 F.2d at 1330.  Indeed, "[t]he endorsement of the parties' counsel is entitled to significant weight." <u>UAW v. General Motors Corp.</u>, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006).

Both parties were represented by counsel with considerable experience in employment law and complex litigation, including class actions.  Given the qualifications of Plaintiffs' and Sprint's counsel, which include substantial experience in class action and other complex litigation and employment discrimination cases, the Court has confidence in their collective judgment that the benefits of this settlement outweigh the delay and risk of proceeding to trial.

### C.    <u>Overruling of Two Objections</u>

The only two objections to the settlement are from Opt-In Plaintiffs Philip Bodine and Ruby

7

Harvey-Burgin. Mr. Bodine appeared through counsel at the Final Confirmation Hearing and Ms. Harvey-Burgin appeared pro se at the Final Confirmation Hearing. For the reasons stated in full on the record and incorporated herein, the court overrules those objections on the merits with the exception that the court orders plaintiffs' counsel to reimburse Ms. Harvey-Burgin's demonstrable, out-of-pocket travel and lodging expenses associated with her deposition.

### D.    Approval of Qualified Settlement Fund

Pursuant to the Settlement Agreement, Sprint directly or through the Settlement Administrator, will establish an escrow fund for the purpose of satisfying the portion of its obligations to Plaintiffs. The Court approves the establishment of the escrow account under the Settlement Agreement as a qualified settlement fund (QSF) pursuant to Internal Revenue Code section 468B and the Treasury Regulations promulgated thereunder. See 26 U.S.C. § 468B; 26 C.F.R. § 1.468B-1. Nothing in the escrow agreement shall alter any of Sprint's obligations under the Settlement Agreement, including its obligations to (i) the named Plaintiffs and the Opt-In Plaintiffs, or (ii) Plaintiffs' counsel.

### E.    Notice Was Adequate

The Notice was initially mailed to the last known address of each Opt-In Plaintiff. For those mailings that were returned marked "undeliverable," a search of Internet and other on-line databases for alternate addresses for each returned Notice was done, and Notice was re-mailed to each of the newly-obtained addresses. The distribution and timing of notice in this case complies with Rule 23. Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir. 1999); Grunin v. Int'l House of Pancakes, 513 F.2d 114, 120-21 (8th Cir. 1975).

The content of the Notice also fully complied with due process requirements. It identified

all Plaintiffs, described the nature of the action, including the age claims, and explained the procedure for making objections to or withdrawing from the Settlement.  It provided specifics regarding the date, time, and place of the Final Confirmation Hearing, and informed the Opt-In Plaintiffs that they may enter an appearance either personally or through counsel.  The Notice also informed Plaintiffs how they could make inquiry about the Settlement to enable them to make fully informed decisions regarding the Settlement.  The Notice advised the Opt-In Plaintiffs that if they did not withdraw, the Agreement would be binding upon them.  The Notice further informed the Opt-In Plaintiffs about the payment of Plaintiffs' attorneys' fees and costs and about the payments to the Named Plaintiffs.

The content of the Notice in this case complies with Rule 23's requirements in class actions.  Petrovic, 200 F.3d at 1153; Grunin, 513 F.2d at 120-21.   The information and detail provided by the Class Notice in this case go well beyond the summary information required by Rule 23(e).  The Notice contains a fair recital of the subject matter and proposed terms of the Settlement.  The Notice was adequate, comprehensive and timely, and afforded Opt-In Plaintiffs the information necessary to make an informed and intelligent decision whether to participate in the Settlement.  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950); Petrovic, 200 F.3d 1140 at 1153; Grunin, 513 F.2d at 120-21.

Finally, Opt-In Plaintiffs had at least thirty (30) days from the date of the last mailing of Notice to them to submit withdrawal requests or to comment upon or object to the Settlement.  This process has been sufficient to give the Opt-In Plaintiffs the time and reasonable opportunity to comment on and take part in the Settlement.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370 (9th Cir. 1993).

**F.     Approval Of Slight Modifications To Correct Eight Matrix Errors**

There are only slight modifications to Exhibit 3 to the Settlement Agreement to correct calculation/administrative errors in the original distributions to eight (8) Opt-In Plaintiffs.  The Court approves those corrections and the amended Exhibit 3.  The Court approves these corrections in the following specifics:

> (a)     The Court approves the specific, corrected amounts for each of the eight (8) Opt-In Plaintiffs for whom matrix calculation corrections were necessary after the Court's preliminary approval order;
>
> (b)     The Court approves the amendment of the settlement payments to be made by Defendant Sprint as provided for in the Master Full and Final Settlement Agreement to reflect an increase to the "Payment to Plaintiffs" amount as set forth in paragraph 4.a., with such increase being in the amount of $87,481.98;[1] and,
>
> (c)     The Court approves the amendment of the settlement payments to be made by Defendant Sprint as provided for in the Master Full and Final Settlement Agreement to reflect a decrease in the amount set forth in paragraph 4.b. "Payment of Attorneys' Fees, Costs, and Expenses", with such decrease being in the amount of $87,481.98.[2]

The eight (8) corrections noted herein have no impact on the overall Settlement Agreement or the amounts of settlement disbursement to any of the other 1678 Opt-In Plaintiffs.  There is no additional net amount being paid by Defendant Sprint, and the attorneys' fee and expenses sought by Plaintiffs' counsel will be reduced <u>below</u> that which was set forth in the Notice.  As such, the Court finds that no further notice to the Opt-In Plaintiffs is required regarding these slight corrections, other than the previously-filed public pleading and the Court's Final Approval Order,

---

[1]Thus, the new, increased total amount to be paid by Sprint to the Opt-In Plaintiffs and Plaintiffs pursuant to paragraphs 4.a. and 5.a. is $36,064,981.98.

[2]Thus, the new, decreased amount to be paid by Sprint to Plaintiffs' counsel in attorneys' fees and expenses pursuant to paragraph 4.b. of the Settlement Agreement is $20,935,018.02.

since such changes are de minimus and do not affect the interests of any other Opt-In Plaintiffs.

G.    **Approval Of Agreement Regarding Non-Effect On Pensions**

During settlement administration, and after some of the Opt-In Plaintiffs sought assurance from their counsel that participation in the settlement and signing the waiver and release would not interfere with the retirement benefits they were receiving, the Parties advised the Court that they had agreed that nothing in the Master Full and Final Settlement Agreement or any of the Releases executed pursuant to this Settlement Agreement is intended to modify any rights that exist under the Sprint Retirement Pension Plan, the Sprint Nextel 401(k) Plan, and, if applicable, any similar pension plan sponsored by Embarq, as those plans may be amended from time to time, in which plaintiffs are, or may become, vested beneficiaries.  Accordingly, the Parties requested that language to this effect be included in the Court's Final Approval Order confirming the Master Full and Final Settlement Agreement.

H.    **Approval Of Plaintiffs' Counsel's Fees And Expenses**

Plaintiffs' counsel separately submitted their Motion for Order Directing Payment of Attorneys' Fees and Litigation Expenses (doc. 4659).  Defendant has not objected to the allocation of fees and expenses to Plaintiffs' counsel, as set forth in the Master Full and Final Settlement Agreement and does not object to the reduction of those fees to fund distributions to be made to correct the eight (8) errors made in the initial distribution list contained in that Agreement.  There have been no objections filed by any of the Opt-In Plaintiffs to the award of Plaintiffs' counsel's fees and expenses.  The Court finds that the fee contracts providing for payment of a thirty-five percent (35%) contingent attorneys' fee and reimbursement of advanced litigation expenses are fair and reasonable in this matter.  The Court further finds it appropriate under the common fund doctrine

to assess such thirty-five percent (35%) contingent attorneys' fee and the *pro-rata* reimbursement of advanced litigation expenses against the total recovery allocable to those Opt-In Plaintiffs who did not expressly contract for payment and reimbursement.  The Court also approves reimbursement of Plaintiffs' counsel's total litigation expenses in the amount of $1,650,000.00.  At the Final Confirmation Hearing, the Court questioned whether it would be appropriate to reimburse the expenses of Opt-In Plaintiffs who traveled some distance for their depositions.  Plaintiffs' counsel have agreed to pay out of their attorneys' fees the demonstrable out-of-pocket travel and lodging expenses of those Opt-In Plaintiffs who traveled more than 100 miles to provide deposition testimony.  The Court accordingly approves and direct the payment of Plaintiffs' counsel's fees of $19,285,018.02 and expenses of $1,6500,000.00 pursuant to the Settlement Agreement as modified by the parties' agreement as it pertains to the individuals referenced in paragraph E above, and as modified by the agreement of Plaintiffs' counsel  to pay the demonstrable out-of-pocket travel and lodging expenses of the Opt-In Plaintiffs who traveled more than 100 miles to provide deposition testimony in this case.

## IV.   CONCLUSION

After a thorough review of the terms of the settlement, the parties' submissions in support of the settlement, the two objections, and the factors to be considered by the Court in evaluating the fairness of such a settlement, the Court concludes that the proposed class settlement entered into between the Plaintiffs and Sprint is fair, reasonable, and adequate.  The Court concludes that the settlement was reached after good faith, arm's length negotiations and in the absence of collusion. The Court also concludes that there are substantial economic benefits of the settlement to the Opt-In Plaintiffs in this Collective Action.  The Court also finds and concludes that the settlement is

reasonable and adequate in light of the prospects and possibilities relating to Plaintiffs' success in obtaining the relief prayed for as compared to the economic benefits of the settlement, the relative strength of the claims, and the cost and uncertainty of further litigation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' joint motion for final approval of settlement (doc. 4658) is **granted** and the Settlement Agreement is approved as modified.

**IT IS FURTHER ORDERED THAT** the Court hereby enters judgment dismissing with prejudice the pattern or practice and disparate impact claims of all Named Plaintiffs and Opt-In Plaintiffs, as well as any individual disparate treatment claims, all as asserted in this case.

**IT IS FURTHER ORDERED THAT** the mailing of notice of the Settlement to the Opt-In Plaintiffs in this Collective Action as set forth in the Affidavit of the Settlement Administrator constitutes the best notice practical under the circumstances, and that such notice comports with due process and is due and sufficient notice for all purposes to all persons entitled thereto.

**IT IS FURTHER ORDERED THAT** the objections of Opt-In Plaintiffs Philip Bodine and Ruby Harvey-Burgin are overruled.

**IT IS FURTHER ORDERED THAT** nothing in the Master Full and Final Settlement Agreement or any of the Releases executed pursuant to this Settlement is intended to modify any

13

rights that exist under the Sprint Retirement Pension Plan, the Sprint Nextel 401(k) Plan, and, if applicable, any similar pension plan sponsored by Embarq, as those plans may be amended from time to time, in which plaintiffs are, or may become, vested beneficiaries.

**IT IS FURTHER ORDERED THAT** the parties are directed to consummate and fully perform the Settlement in accordance with the terms of the Master Full and Final Settlement Agreement as modified.

**IT IS FURTHER ORDERED THAT** plaintiffs' motion for order directing payment of attorneys' fees and expenses (doc. 4659) is **granted**.  Plaintiffs' counsel's attorneys' fees and expenses are reasonable, and said fees and expenses should be paid as set forth in the Master Full and Final Settlement Agreement, as modified.  Out of those attorneys' fees, counsel are to pay the demonstrable, out-of-pocket travel and lodging expenses of those Opt-In Plaintiffs who traveled more than 100 miles to provide deposition testimony in this case.

**IT IS FURTHER ORDERED THAT** this Order is a Final Order and that there are no participants in this collective action with standing to pursue any appeal.

**IT IS FURTHER ORDERED THAT** pursuant to the terms of the Settlement Agreement and this Court's May 30, 2007 Order, should any reviewing Court on direct appeal and/or on writ of certiorari to the Supreme Court of the United States invalidate the Settlement Agreement or require its modification, the Settlement Agreement and any documents associated with it shall be

null and void, inadmissible, and unusable in any Court proceeding regarding any issue whatsoever, and shall not be considered a binding Settlement Agreement, unless Plaintiffs and Defendant each expressly and voluntarily approve in writing any such required modification by any reviewing Court.

**IT IS FURTHER ORDERED THAT** the Court shall retain jurisdiction regarding administration of the settlement.  The parties are to submit a 90-day Status Report with regard to the effectuation and implementation of the Settlement Agreement and Settlement Administration.

**IT IS SO ORDERED** this 11th  day of September, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge